IN THE COURT OF APPEALS
OF THE STATE OF OREGON

———————

| | |
|---|---|
| BENJAMIN BARBER, | Washington County Circuit Court Case No. 18CV21272 |
| Plaintiff-Appellant, | |
| v. | CA A168163 |
| JAY LEATHERWOOD, | |
| Plaintiff, | |
| PAT GARRETT, Washington County Sheriff | |
| Defendant-Respondent | |

———————

APPELLANT'S OPENING BRIEF

———————

Appeal from the Judgment of the Circuit Court
for Washington County
Honorable Andrew Erwin, Circuit Court Judge

———————

| | |
|---|---|
| JASON WEBER #054109<br>O'Connor Weber LLC<br>1500 SW First Avenue, Suite 1090<br>Portland, OR 97201<br>(503) 226-0923<br>jason@oconnorweber.com<br>Attorney for Plaintiff-Appellant | ELLEN ROSENBLUM #753239<br>Attorney General<br>BENJAMIN GUTMAN #160599<br>Solicitor General<br>ELMER M DICKENS, JR. #980484<br>1162 Court Street NE<br>Salem, OR 97301<br>(503) 378-4402<br>elmer_dickens@co.washington.or.us<br>Attorneys for Defendant-Respondent |

_____Filed 01/19

# Table of Contents

Section A.................................................................................................1

STATEMENT OF THE CASE ..................................................................1

    Nature of the Proceeding ................................................................1

    Nature of the Judgment...................................................................1

    Jurisdiction.......................................................................................1

    Notice of Appeal..............................................................................2

    Summary of Historical and Procedural Facts.............................2

    Significant Motions ........................................................................5

CONCLUSION.........................................................................................5

    Section B begins on the next page.................................................8

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

# Table of Authorities

## Cases

*State v. Balfour*,
    311 Or 434, 814 P2d 1069 (1991) ....................................................1, 5

## Constitution Provisions and Statutes

ORS 163.305 .............................................................................................3

ORS 163.472 ..........................................................................................2, 4

ORS 34.710 ..............................................................................................1

## Other Authorities

ORCP 71 .................................................................................................5

ORAP 5.90 ...........................................................................................1, 5

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

# APPELLANT'S OPENING BRIEF

--------------

## Section A

## STATEMENT OF THE CASE

### Nature of the Proceeding

This brief is filed pursuant to ORAP 5.90 and *State v. Balfour*, 311 Or 434, 814 P2d 1069 (1991).  Appellant, plaintiff, below and hereafter, appeals from a trial court judgment dismissing his state habeas petition for failure to state a claim.  Plaintiff filed a *pro se* petition for habeas relief and the court dismissed the petition without prejudice for failure to state a claim.  A copy of the *pro se* petition is attached at ER-1.

### Nature of the Judgment

The habeas trial court dismissed the petition for failure to state a claim.  A copy of the general judgment dismissing the petition without prejudice is attached at ER-56.

### Jurisdiction

This court has jurisdiction under ORS 34.710.

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

## Notice of Appeal

Judgment was entered in the Washington County Circuit Court on May 31, 2018.  Plaintiff timely filed Notice of Appeal on June 19, 2018 (this is the date on the certificate of service filed with the *pro se* notice of appeal).

## Summary of Historical and Procedural Facts

Plaintiff initiated this proceeding by filing a *pro se* petition for habeas relief (ER-1-6), a "motion to joinder plaintiff" with "a party named Jay David Leatherwood" (ER-7), and a "Memorandum in support of Habeas Corpus."  ER-9-55.  The first paragraph[1] of the petition provides:

"Comes now the petitioners, pro-se, to petition this court to grant a write of Habeas Corpus, for they are imprisoned by virtue of an unconstitutional statute ORS 163.472[2] and seek relief from the Court to Order sheriff Pat Garrett to release them from custody and confinement."  ER-1.

---

[1] Because the petition and memorandum are attached in their entirety undersigned counsel does not restate all of the issues raised therein.

[2] That statute provides:

"(1) A person commits the crime of unlawful dissemination of an intimate image if:

(a) The person, with the intent to harass, humiliate or injure another person, knowingly causes to be disclosed through an Internet website an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct;

(b) The person knows or reasonably should have known that the other person does not consent to the disclosure;

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

(c) The other person is harassed, humiliated or injured by the disclosure; and

(d) A reasonable person would be harassed, humiliated or injured by the disclosure.

"(2)(a) Except as provided in paragraph (b) of this subsection, unlawful dissemination of an intimate image is a Class A misdemeanor.

"(b) Unlawful dissemination of an intimate image is a Class C felony if the person has a prior conviction under this section at the time of the offense.

"(3) As used in this section:

"(a) 'Disclose' includes, but is not limited to, transfer, publish, distribute, exhibit, advertise and offer.

"(b) 'Image' includes, but is not limited to, a photograph, film, videotape, recording, digital picture and other visual reproduction, regardless of the manner in which the image is stored.

"(c) 'Information content provider' has the meaning given that term in 47 U.S.C. 230(f).

"(d) 'Interactive computer service' has the meaning given that term in 47 U.S.C. 230(f).

"(e) 'Intimate parts' means uncovered human genitals, pubic areas or female nipples.

"(f) 'Sexual conduct' means sexual intercourse or oral or anal sexual intercourse, as those terms are defined in ORS 163.305, or masturbation.

"(4) This section does not apply to:

"(a) Activity by law enforcement agencies investigating and prosecuting criminal offenses;

"(b) Legitimate medical, scientific or educational activities;

"(c) Legal proceedings, when disclosure is consistent with common practice in civil proceedings or necessary for the proper functioning of the criminal justice system;

"(d) The reporting of unlawful conduct to a law enforcement agency;

"(e) Disclosures that serve a lawful public interest;

"(f) Disclosures of images:

Page 3 – APPELLANT'S OPENING BRIEF

The petition was filed on May 24, 2018. ER-57 (case register). On that same day the court issued an order dismissing the petition. ER-57. The court issued a judgment of general dismissal on May 31, 2018. ER-56. The judgment provided in part, "The petition failed to state a claim upon which habeas corpus relief may be granted." ER-56. The judgment of dismissal was without prejudice. ER-56.

On the first page of the petition it appears that the court used a black marker to write: "DENIED Defendant fails to state a claim upon which he is eligible for habeas corpus relief. And he files nearly identical paperwork as filed in 18CV1498 and 17CV44670 (appealed)[3] undermining any argument that he doesn't have an alternative remedy available!" ER-1.

---

"(A) Depicting the other person voluntarily displaying, in a public area, the other person's intimate parts or engaging in sexual conduct; or

"(B) Originally created for a commercial purpose with the consent of the other person; or

"(g) The provider of an interactive computer service for an image of intimate parts provided by an information content provider."

ORS 163.472.

[3] This is post-conviction appeal, case no. A167498. On August 13, 2018, while the case was on appeal undersigned counsel filed a joint motion, pursuant to ORCP 71, to set aside the judgment previously entered because, *inter alia*, at the time the judgment was entered petitioner was not represented by conflict free counsel. On November 9, 2018, the trial court granted the joint motion by setting

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

**Significant Motions**

No significant motions have been filed in this Habeas Corpus appeal.

**CONCLUSION**

Counsel submits Section A in compliance with all the applicable requirements articulated in ORAP 5.90 and *State v. Balfour*, 311 Or at 451-52. Counsel has thoroughly reviewed the record and has discussed this case with plaintiff. *See* ORAP 5.90(1)(a)(iii). Counsel has not identified any arguably meritorious issues on appeal.

Counsel has supplied client with copies of the trial court file. In addition, counsel has provided plaintiff with applicable appellate court rules and has provided plaintiff a reasonable opportunity to "raise any issue" in a Section B portion of the brief. 311 Or at 452. Plaintiff has provided counsel with "Section B" brief, which is attached below.

///

///

///

aside its prior judgment. On December 10, 2018, upon learning that the trial court had set aside its judgment, undersigned counsel provided notice to this court that the appeal was probably moot. On December 24, 2018, the Appellate Commissioner issued an Order of Dismissal because he concluded that the appeal was moot.

Page 5 – APPELLANT'S OPENING BRIEF

DATED January 25, 2019.

Respectfully Submitted,

/s/ Jason Weber

_____

Jason Weber, OSB No. 054109
O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201
(503) 226-0923
jason@oconnorweber.com
Attorney for Plaintiff-Appellant
Benjamin Barber

O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201

# EXCERPT OF RECORD INDEX

Amended Petition for Writ of Habeas Corpus .......................................ER 1-7

Motion to Joinder Plaintiff.....................................................................ER - 8

Memorandum in Support of Habeas Corpus  ........................................ER 9-55

General Judgment of Dismissal ..............................................................ER - 56

OECI Case Register of Actions ..............................................................ER 57-58

O'Connor Weber LLC
1500 SW First Ave, Suite 1090
Portland, OR 97201

*P. THAT HE DOESNT HAVE AN ALTERNATIVE REMEDY AVAILABLE?*

**IN the Circuit Court of Oregon for Washington County**

Benjamin Barber

Jay Leatherwood

Vs

Pat Garrett

Case no

Writ of Habeas Corpus

ORAL Hearing Required

18CV21272

Andrew R. Erwin
Circuit Court Judge

**FILED**
**OREGON JUDICIAL DEPT**
**WASHINGTON COUNTY**
May 24, 2018
3:10 PM

18CV21272
PTHC
Petition — Writ of Habeas Corpus
9293310

**1**

Comes now the petitioners, pro-se, to petition this Court to grant a writ of Habeas Corpus, for they are imprisoned by virtue of an unconstitutional statute ORS 163.472 and seek relief from the the Court to order sheriff Pat Garrett to release them from custody and confinement.

**2**

The statute ORS 34.330 does not apply because the statute ORS 43.220 is controling that "Any judicial record may be impeached, and the presumption arising therefrom overcome by evidence of a want of jurisdiction, collusion between parties, or fraud in the party offering the record" specifically that congress completely preempted the statute with 17 USC § 301 and 47 USC § 230, and the probable cause affadavit had purjered the situs of the Crime.

**3**

ORS 163.472 Also targets content and Viewpoint of speech "any content or viewpoint based restriction of speech is presumptively invalid, and the government bears the burden to rebut the presumption" United States v Playboy (2000)

(Left margin, vertical text):
DEFENDANT FAILS TO STATE A CLAIM UPON WHICH HE IS ELIGIBLE FOR THE HABEAS CORPUS RELIEF. AND HE FILES NEARLY IDENTICAL PAPERWORK AS 2CV446 TO APPEARD UNDERMINING ANY ARGUMENT.

**DENIED**

FILED IN 18CV11967

PAGE 1

3

Petitioners imprisonment is by virtue of a judgement and sentence imposed by the washington County Circuit Court in the following cases:

(i) The state of oregon vs Benjamin Jay Barber Case no 16CR46339 on November 9th 2016

(ii) The state of Oregon vs Jay David Leatherwood Case no 16 CR 50631 on October 26th 2016

The sentensing Judges were:

(i) Judge Roberts

(ii) Judge Erwin

Who sentenced the petitioners to a period of

(i) 3 years, 2 years probation

(ii) 6 months, 3 years probation

4

Petitioners previously filed a post conviction relief 18CV14984 which Judge erwin said was not appropliately before the court, because of Barbers previous post-Conviction 17-CV44670. Attorney Jon weiner asked the Court to withdraw as counsel for a Conflict of interest, and this court set a hearing for iton 03/19/2018. After the motion to withdraw the District attorney had submitted a motion to dismiss which MR weiner did not respond to or see, because he was too busy running for Marion County Judge. The hearing for the motion to dismiss and to withdraw was cancelled by judge butterfield, who granted the motion to dismiss, despite ruling on the trial court demurrer and it being improper for him to sit on a PCR Appealing his own ruling in the case.

PAGE 2

Verified Correct Copy of Original 5/24/2018

5

Barber was represented by Cameron Taylor and Leatherwood by Ted Oncolino and they were appointed. at trial, Barber was represented by Jon Weiner at PCR.

6

At present time petitioners are unable to retain Counsel

7

Petitioners were both charged with the same offense ORS 163.472 unlawful dissemination of an intimate image Barber was convicted following a jury trial and Leatherwood was pushed into taking a plea bargain

8

This petition is being entered within two years of the date of the judgement which was rendered.

9

Petitioners believe that the Conviction and imprisonment from the proceedings described above, was and is illegal, and petitioner was substantially denied their rights in violation of ORS 138.530 as follows:

10

First claim for relief; The law ORS 163.472 is unconstitutional under the following:
Federal; Amendment 1, Amendment 5, Amendment 14 Article 1 section 8, Article 1 section 10, 47 USC §230 17 USC §201, 17 USC §301, 17 USC §511
State; Article 1 section 8, Article 1 section 18, Article 1 section 21, Article 1 section 46 of the oregon Constitution

Page 3

Verified Correct Copy of Original 5/24/2018.

Second claim for relief: Ineffective assistance
of Counsel under Amendment 6 of the Constitution.

Third claim for relief; Improper venue the situs
of proceedings not in Vincinage of the acts alleged
under Amendment 6 of the Constitution.

Fourth claim for relief: Due process violation for
the indictments being unconstitutionally vague
and not sufficiently describing the acts, times, places,
and why the acts are not contained in an exception
under Amedments 5 and 6 of the U.S. Constitution.

Fifth claim for relief: The law is unconstitutionally
vage and overbroad and under conclusive to
achieve a compelling government interest, and
are Confusing in language to the average person.

Sixth claim for relief: The both named victims
had Consented to the Conduct in question, and
moreover had actually perpetrated the same
unlawful conduct under the statute violating the
rights for equal protection under the law under
Amendment 14 of the US Constitution, and
Article 1 section 46 of the Oregon Constitution.

First exclusive claim for Leather woods relief; The
Plea was not a knowing and intelligent Plea.

Verified Correct Copy of Original 5/24/2018.

Verified Correct Copy of Original 5/24/2018

First exclusive claim for Barber's relief: The images were originally produced for Commercial purpose with the consent of the named victim

Second exclusive claim for Barber's relief: The disclosure served a valid public interest, because Barber is a limited public figure, and vance had disclosed the images to people in the UK through the internet website Hangouts.google.com, and who disclosed it to 10 other people. Furthermore vance described the BDSM therein as "rape".

Third exclusive claim for Barber's relief: vance signed a contract and also agreed to "Complete transparency" which waives her rights.

Fourth exclusive claim for Barbers relief: Albino porn has legitimate educational, medical, and scientific interest since there is no other examples extant.

Fifth exclusive claim for Barber's relief: Barber did not have reasonable belief vance did not consent, as a DMCA takedown is the sole method and the DMCA takedown was purjured by vance.

Sixth exclusive claim for Barber's relief: Structural errors relating to a purjured probable cause affadavit and testimony by the named victim in the case

Seventh exclusive claim for Barber's relief: Brady violations by the DA withholding evidence from the search warrant, emails sent to the officer, a 17 day lapse between the encounter and report, and purjered testimony by state officers and witnesses.

Eighth exclusive claim for Barber's relief: evidence wrongfully stricken and not admitted to the jury and the record that raises a probable doubt. Including inconsistant prior statements made by the victim in the same proceeding.

Ninth exclusive claim for Barber's relief: Incorrect Jury instructions that do not include guilt beyond a reasonable doubt, but uses a burden shifting "reasonable person standard".

Where, Fore, petitioners respectfully ask this court for an order reversing said convictions and sentences, expunging the records of petitioner's arrest and conviction releasing petitioners from the custody of the defendant

Date 04/20/18

Benjamin Barber                    Jay David Leatherwood
#17-07936                          #18-03978
215 adams st ms33                  215 adams st ms33
Hillsboro, or 97124                Hillsboro, OR 97124

Page 6

_Verified Correct Copy of Original 5/24/2018_

Apellant intends to rely on the following

✳ Article 1 Section 8 oregon Constitutional

▷ State v Robinson 649 P.2d 569 OR (1982)

▷ Anderson v Fischer Broadcasting Company 712 P2d 803 OR

▷ Mauri v. Smith 929 P.2d 307 OR (1996)

✳ Amendment 1 (speech clause) United states Constitution

▷ miller v California 413 US 15 (1973)

▷ United states v Playboy 529 US 803 (2000)

▷ United states v Stevens 559 US 460 (2011)

▷ Memoirs v massachosetts 368 US 415 (1966)

▷ Rav v St Paul 505 US 377 (1992)

▷ Boos v Barry 485 US 312 (1988)

▷ Reno v Aclu 521 US 844 (1997)

▷ Brown v electronics merchants assoc. 131 US 2729 (2011)

▷ Peckingham v north Carolina (2017)

▷ Smith v daily mail 443 US 589 (1977)

✳ Article 1 (copyright clause) Amendment 5 (takings clause)

▷ 17 USC 201 involuntary transfer (Amendment 5)

▷ 17 USC 301 preemption (Supremacy clause)(commerce clause)

▷ 17 USC 511 Liability of States (Amendment 5) (Article 1)

▷ maloney v T3 media inc 9th cir (2017)

▷ mgm v grokster 545 US 919

▷ Lentz v universal music group 9th cir (2015)

✳ Amendment 14 (due process)

▷ Elons v united States (2015)

▷ Neder v united states 527 US (1999)

▷ Cage v Louisiana 498 US 39 (1990)

▷ Conniticut v Johnson 460 US 263

✳ Article 1 Section 18 (takings clause)

✳ Article 1 Section 21 (expost facto clause)

In the circuit Court of Oregon for Washington County

Benjamin Jay Barber

ßay David leatherwood · Case no  ..

Motion to joinder plaintiff

v

Pat Garrett

Comes now the plaintiff, pro se, to Compel the Court to joinder a party named Jay David Leatherwood as Co-plaintiff, His Conviction in WashingtonCounty Circuit Court Case no 16-CR50631   was also for the violation of ORS 163472, which plaintiff asserts is unconstitutional on it's face. The Co-plaintiff should be also released from incarceration by Pat Garrett, more-over the Co plaintiff is unable to effectively represent himself pro-se, because he is not sufficiently trained in law, and so seeks assistance from the plaintiff as a lay advocate. Should washington County Jail seperate him from myself (a Common practice when assisting prisoners), Co plaintiff asks to Compel the Court to order the jail to allow legal Correspondance between plaintiff and Co-plaintiff, or to appoint pro bono Counsel for the Co-plaintiff.

Benjamin J Barber

Jay Leatherwood

Date 4/20/2018

Verified Correct Copy of Original 5/24/2018

In the Circuit Court of Oregon for washington County

Benjamin Barber | Case no
Jay Leatherwood | Memorandum in Support of
vs | Habeas Corpus
Pat Garrett

## Table of Contents

2 | Errors in law - ORS 163.472
16 | Barber - structural errors
24 | Barber - Clear errors
34 | Barber - Innefective assistance of Counsel
40 | Leatherwood - structural errors
42 | Leatherwood - Clear errors
44 | Leatherwood - Ineffective assistance of Counsel
46 | Fin.

Verified Correct Copy of Original 5/24/2018

Verified Correct Copy of Original 5/24/2018.

2

## Errors in Law

The standard for content based speech restrictions is 'strict scrutiny', meaning that the restriction be narrowly tailored and the least restrictive means of achieving a compelling government interest, but may yet still be invalid even if no less restrictive means exist. "any content or viewpoint based restriction of speech is presumptively invalid, and the government bears the burden to rebut the presumption." United States v Playboy 529 US 803 (2000) "A legislature cannot create new categories of speech simply by weighing the value of a particular category against it's social costs and then punishing it if it fails the test." "The basic principals of freedom of speech do not vary with a new and different communication media." "The most basic principal - that government lacks the power to restrict expression because of it's message, ideas, subject matter, or content" Brown v Electronic Merchants Association (2011) "The first amendment has permitted restrictions of speech in few limited areas and has never included a freedom to disregard these familiar limitations. These historic and traditional categories long familiar to the bar including obscenity, deffamation, fraud, incitement and speech integral to criminal conduct, are well defined and narrowly limited classes of speech the prevention and punishment of which have never thought to raise any constitutional problem" United States v Stevens (2011)

3

The state will claim that the law doesn't merely target a viewpoint or content, but some secondary effect such as emotional distress or 'harassment'. 'Harassment' only refers to one to one speech on an unwilling listner, and not one to many speech, nor is emotional distress a compelling interest. "As used in Renton v playtime theatres 475 US 41 the phrase 'secondary effects' refers to secondary feat-ures that happen to be associated with the partic-ular type of speech but have nothing to do with the content, whereas, here the asserted justification for the display clause focuses only on the content of the picket signs and their primary and direct emotive impact on their audience" Boos v Barry (1988). "In order for the state to justify prohibition of a particular expression of opinion it must be able to show it's action was caused by something more than the mere desire to avoid the discomfort and unpleasantness of an unpopular viewpoint." "we are expected to protect our own sensibilities simply by averting our eyes" united states v Playboy

The state may argue that instead the speech is obscene, not because of the it's essence but the form of dissemination, having been disseminated when its actor does not consent. And it is that form which is obscene by community standards, since they presume that no person in that community would themselves want to be a target of such behavior

Verified Correct Copy of Original 5/24/2018.

Verified Correct Copy of Original 5/24/2018.

4

However this would mean the Community would be judging on it's emotional impact, and we can safely presume that no person in the Community would consent to their internet browsing history being public, though they obviously share it with third parties, "It extends to images that are not obscene under the miller standard, which requires 'the government to prove that the work in question taken as a whole appeals to the purient interest, is patently offensive in light of Community standards, and lacks serious literary, artistic, political, or scientific value' miller v california" Ashcroft v freespeech Coalition. But even so "there is no basis in history for the view expressed in Roth that obscene speech is outside the protection of the first amendment, no interest in society justifies overriding guarantees of free speech and free press and establishing a regime of censorship." memoirs v massachusetts. "The Constitution exists precisely so that opinions and judgements about art and literature can be formed, tested, and expressed. What the Constitution says is that these judgements are for the individual to make, not for the government to decree even with the mandate or approval of a majority. Technology expands the Capacity to Choose and it denies the potential of this revolution if we assume the government is best positioned to make these choices for us" united states v Playboy

5

Now the State may say it's an invasion of privacy
that it is protecting, then we must ask how the
images were obtained in the first place. The
State already has a computer trespass statute
and an invasion of privacy statute, so then why
is this law necessary other than it's content?
We see from the context it's referred to most often
that somebody sends an image to another, who
then copies or disseminates it further. Thus
there is no 'intrusion upon seclusion' because
the person willingly shared it, some times the
person even let them author the image itself.
Thus what the state is referring to is the publicity
right to control their name and likeness instead.

The Supreme court recognizes two forms of privacy,
one based on secrecy and incompatible with any
disclosure, and another based on control and
limited disclosure and the unrealistic challenge in
preserving total secrecy, credit card numbers for
example due to being integral to crime, "a person
has no reasonable expectation of privacy in infor-
mation he voluntarily turns over to third parties
Smith v maynard 442 US 735 "our recent decisions
demonstrate that state action to punish the
publication of truthful information seldom can
satisfy Constitutional standards" Smith v daily mail
443 US 589. Again if there is no 'intrusion upon seclusion'
the harm is publicity of name or likeness not privacy.

Verified Correct Copy of Original 5/24/2018

6

Verified Correct Copy of Original 5/24/2018

Even if the statute is narrowly Construed to circumstances where there is an intrusion upon Seclusion the law is view point based. A person could 'invade privacy' by using a hidden camera to record a manic insane person, equally or more embarassing, but only intimate images are criminalized." The ordinance even as narrowly construed by the state supreme Court is facially unconstitutional because it imposes special prohibitions on those speakers who express views on disfavored subjects. At the same time permits displays containing abusive invective if they are not addressed to those topics." "A few limited Categories of speech such as obscenity deffamation and fighting words may be regulated because of their constitutionally proscribable content. However these categories are not entirely invisible to the Constitution and the government may not regulate them on hostility or favoritism towards a non proscribable message they contain" Rav v St Paul 505 us 377 (1992). So even if the state claims it a sex crime to publish a sexually stimulating image without the consent of the actor, regardless if it is private or not, a non sexual image is not unlawful to disseminate in the same or similiar circumstances, which renders the crime unconstitutional on its face, even if the state claims a violated right to a name and likeness.

7

Instead the 9th circuit Court found that the federal copyright act preempts state publicity based privacy claim in maloney v T3 media inc 9th cir 2017 holding that; "where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his exclusive rights under the copyright act." the panel concluded that the plaintiffs publicity claims... challenged control of the artistic work itself and accordingly the subject matter of the state law claims fell exclusively within the subject matter of copyright." when an actor in a adult film brought a right to publicity in James Jordan Video v Canada inc 617 F3d 1146 9th cir 2010 " we held that the copyright act preempted the publicity right claims because the actors assertion that defendants missappropriated his name and persona' was based entirely on the missappropriation of the DVD's and the actors performance therein in other words the actor was objecting to the unauthorized distribution of a copyrighted work and not the exploitation of his likeness." "The District Court nonetheless was correct to conclude that the rights plaintiff assert are no different than the rights contained within the general scope of copyright." Thus the only element that distinguishes the acts neccessary to violate the law is embarassment or the emotional impact on the person or actor in the images.

8

The Copyright preemption statute 17 USC §301 passed by Congress "Intended [the statute] to be stated in the clearest and most unequivocal language possible, so as to forclose any concievable misinterpretation of it's unqualified intention that Congress shall act preemptively ... and to avoid the development of any vague borderline beetween State and federal protection." H.R. Rep no. 1476 94th Cong 2d sess 130 (1976). 17 USC §301 states "no person is entitled to any such right or equivalent right in any such work under the Common law or statutes of any state." Also 17 USC §301(e) states "no action by any government body ... purporting to sieze, expropriate, transfer, or exercise rights of ownership with respect to copyright, or any of the exclusive rights under copyright shall be given effect."

Rights are equivalent to a right protected by copyright law if either (1) no additional element beyond exercise of one of the rights protected by the Copyright act is required to violate the state law or (2) the state law is violated simply by the exercise of a right protected by the Copyright act." we have found a state law claim preempted when the extra element changes the scope but not the fundemental nature of the right" Grosso v Mira max film Corp 383 F3d 965, 968 9th cir 2004). The right in ORS 163.472 is equivalent because " In fact this court has held that a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work see Fox film Corp v. Poyle 286 US 123, 127" Stewart v Abend 495 U.S. 207, 228-29 (1990)

9

The 9th circuit in Garcia v Google refused to even
censor a work which brought an actress death
threats, due to her performance in the film
'innocence of muslims'. "Garcia asked Google
to remove the film, asserting it was hate speech
and violating her state law rights to privacy and
control of her likeness. Garcia also sent google (5)
takedown notices under the DMCA 17 USC §512
claiming that Youtube's broadcast of 'innocence of
muslims' infringed on her copyright." "The copy-
right office explained that it's "longstanding
practices do not allow a copyright claim by an
individual actor or actress in his or her performance
contained within a motion picture' thus 'for
copyright registration purposes, a motion picture
is a single integrated work, Assuming Garcia's
contribution was limited to her acting performance,
we cannot register her performance apart from
the motion picture". "In broad terms "the
protection of privacy is not a function of the
copyright law, to the contrary, the copyright law
offers a limited monopoly to encourage ultimate
public access to the creative work of the author."
citing bond v blum 317 F.3d 385, 795 (4th cir 2003) see also
Mongoe v maya magazines 688 F.3d 1164 9th cir 2012
"unfortunate for garcia such a 'right to be forgotten'
although recently affirmed by the european court
of justice for the european union is not
recognized in the united states". Garcia v Google.

Verified Correct Copy of Original 5/24/2018

10

The Supreme Court in Reno v Aclu warned against the legality of a 'hecklers veto'. The fact that the states are regulating internet speech means they are encroaching on federal power conferred by the commerce clause. Congress then acted upon these powers by enacting the Communications decency act 47 USC §230. Congress found the internet as offering "a forum of true diversity of political discourse, unique opportunities for cultural development, and myriad of avenues for intellectual activity" 230(a)3. Internet and interactive computer services "have flourished, to the benefit of all americans with a minimum of government regulation" §230(a)(4) Congress further stated "The policy of the united states, to preserve the competitive market that presently exists for the internet and other interactive computer services unfettered by federal or state regulation" §230(b)(2). To reach these goals Congress provided "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided to another information content provider" §230(c)(1). Furthermore "no cause of action may be brought and no liability may be imposed under any state or local law that is inconsistant with this section" §230(d)(3). This means that even if someone posted a image provided by another online, they cannot be held liable unless it is by the mechanism of the Copyright act, see Barrett v Rosenthal Ca. Sct 2006; Zeran v AOL 4th cir 1997

Verified Correct Copy of Original 5/24/2018

11

Verified Correct Copy of Original 5/24/2018

Oregon's Constitution also prohibits the law on several points. In Anderson v. Fisher Broadcasting Co 712 P.2d 803 (1986) the Court had concluded "In Oregon the truthful presentation of facts concerning a person, even facts that a reasonable person would wish to keep private and that are not 'news worthy', does not give rise to common law tort liability for damages for mental or emotional distress, unless the manner or purpose is wrongful in some respect apart from causing the plaintiff's hurt feelings", " what is 'private' so as to make it's publication offensive likely differs among communities, between generations, and among ethnic, religious, or other social groups, as well as among individuals. Like wise one reader's or viewer's 'news' is another's tedium or trivia. The editorial judgement of what is 'news worthy' is not so readily submitted to the ad hoc review of a jury as the Court of appeals believed. It is not properly a community standard. Even when some editors themselves vie to tailor 'news' to satisfy popular tastes, others may believe that the community should see or hear facts or ideas that the majority finds uninteresting or offensive" Moreover in Mauri v Smith 929 P.2d 307 (1996) "Consent is willingness for the willingness for the conduct to occur, It may be manifested by action or inaction and need not be communicated to the actor Restatements of torts §892(1) (1979)"; " One who effectively consents to the conduct of another intended to invade his interest cannot recover in an action of tort for the conduct or for harm resulting from it. [4]

12

Article l section 8. of the Oregon Constitution does not provide an 'abuse' of the freedom, where the 'harm' is not seperate and distinct from viewpoint of the speech, and there was no historical exception when the Oregon Constitution was passed. Likewise Article l section 18 does not allow private property, like the intellectual property rights under Copyright to be taken without compensation. Moreover article l section 21 does not allow expost facto impairments of contracts, which would include the 'does not consent' rather than "did not consent." Moreover since the speech is directed to the public and not typically to an unwilling listener, the Courts construe such actions as "strategic lawsuits against public participation", and a person is entitled to a dismissal.

The Content of the images under Article l Section 46 is also unlawful, because it states "Equality of rights under the law shall not be denied or abridged by the state of Oregon or by any political subdivision in this state on account of sex". The law criminalizes images of 'sexual conduct'. Even if the plain reading doctorine is not sufficient, the purpose of the law is to protect the sexual reputation of women. Ellen Rosenblum's office spoke to the news that the law is made "because of it's emotional impact on it's victims, most of who are women". The main lobbyists the 'cyber civil rights initiative' is a female only organization, supported by 'girls inc', the 'feminist majority foundation', the 'national organization for women', they claim "90% of victims are women".

13

The use of 'does not Consent' or non consentually is an ex post facto impairment of rights or of a Contract. For in many cases the user did Consent because "a thing delivered to another belongs to another", or the person allowed themselves to be filmed. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" Johnson v Zerbost 304 US 458. To 'claw back' that waiver is a violation of Article 1 section 10. For example many amateur models and photographers offer a free exchange of talents, where each gains a portfolio by exchanging time, effort, and a licence to the work. If a party sends a 17 USC §512 claim falsely under penalty of perjury does one 'reasonably' know they no longer consent under this law and now expropriate the works of the author under pain of imprisonment?

However a reasonable person standard is unlawful. The rule of criminal intent is the basic principal that wrong doing be concious to be criminal and that the defendant must be blameworthy in mind before he Can be found guilty. The general rule is that a guilty state of mind is a neccessary element in every crime" "Elonis' Conviction is only premised on how his actions would be viewed by a reasonable person, a standard feature of civil liability in tort law inconsistant with the Conventional criminal Conduct requirement of 'awareness of wrongdoing' What elonis thinks does Count" Elonis v United States (2015)

Verified Correct Copy of Original 5/24/2018

14

For example this law could be used to incarcerate "girls gone wild" producers, who go to college parties or mardi gras celebrations and videotape slutty drunk women as they have done for 2 commercially for 2 decades. If alternatively you made a oil on canvas or highway billboard image that was made to look like an ex wife, a photo of it online could result in arrest even if you did not upload it yourself. Advertising a physical porn magazine online or arranging an affair or threesome on yahoo mail could result in arrest. You could also upload a "trophy" gallery of videos of all the women you sleep with to brag about, and if the prosecution claims you also knew or should have known women are embarrassed (unlike men) of having many partners, you still might be incarcerated.

The law is under inclusive to achieve the compelling government interest, and overbroad in it's application, because it targets a viewpoint "revenge", and applies to fictional paintings, and even actions that place you as the ultimate cause in a "but for" causal chain. "The law must be precise enough to avoid so many factors of varying effect that neither the person to decide in advance, nor the jury after the fact can safely and certainly judge the result" Cline v Frink Dairy Co 274 US 445 "under the fair notice requirement, an ordinance is void for vagueness if a person of ordinary intelligence cannot reasonably interprate what is prohibited." Greynard v City of Rockford 408 US 104.

15

Having likely run out of circumstances, upon which the law can even be narrowly construed, we recognize: "In the first amendment context, however, this court recognizes a second type of facial challenge, where by a law may be invalidated as overbroad if "a substantial number of it's applications are unconstitutional, judged in relation to the statutes plainly legitimate sweep" United states v Stevens. The state may not punish lawful speech in the guise of punishing unlawful speech, "I do not believe that it can be too often repeated that the freedom of speech, press, petition and assembly guaranteed by the first amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish" Communist Party v SACB 367 US 1, 37 (1961)

Thus the plaintiff asks the court to now repeal the law and to dismiss all cases and controversies upon which it relies. For the law is found to be an overbroad, burden shifting statute which impermissably restricts content and view point, and has a want of jurisdiction. The law is found to be "unconstitutional in every clause, sentence, and paragraph against what ever and whomever it may apply" younger v. harris 401 US 53-54. The state may not create a 'right to not be offended' nor a 'right to be forgotten', because these rights are repugnant to the first amendment and natural rights.

Verified Correct Copy of Original 5/24/2018.

16

## Structural Errors

Barber served the court with a 28 USC 1454 motion to remove to federal court, a motion to acquit, and a motion to arrest judgement, Along with the motions was also exculpatory evidence. Roberts did not even read the contents before ruling on them being irrelevant, provided no hearings on them, nor even preserved them on the record, Later after being told that federal copyright law had preempted this law, she simply said "I don't see any evidence of copyright" despite having been served it prior, and vance testifying "It's a copyright issue" and a matter of jurisdiction rather than a fact, instead Roberts said "you don't respect the legislature."

At sentensing Judge Roberts heard vance's testimony of providing the same images to others for the purpose of blackmail to prevent me from publishing her crimes, that vance also admitted to of blackmail while under a restraining order. This obviously means there was no agreement of the videos being "just between us" or she too is guilty of the crime. Roberts said "you're saying because she was guilty that you can do whatever you want?" and "you're playing the victim". Despite vance having said in evidence "Honestly, I am the physical abuser. I emotionally abuse, too. I was the first to cheat. I play the victim alot in my life." vance either lied under oath or she is also guilty, and then waived her "privacy" agreement, yet Roberts refused to equally apply the law or arrest vance when I asked.

Verified Correct Copy of Original 5/24/2018

17

"Due process can't be satisfied when the state provides a hearing at which the judge is not really listening or before which the decision is already made." United States v Cross 128 F3d 145 "A biased judge is never a harmless error" Arizona v. Fullminate 499 US 279 (1991) "recusal of judge is required when probability of bias is high" Withrow v. Larkin (1975) "no matter the evidence against him, he had the right to an impartial judge. He seasonably raised the objection, and was entitled to halt the trial because of disqualification of the judge, which existed both because of his direct pecuniary interest in the outcome, and because of his official motive to convict and graduate the fine to help the financial needs of the village" Tumey v Ohio 273 US 510

Barber told Roberts that she and the County could be sued as individuals under 17 USC 511, and cited ORS 43.220 "any judicial record may be impeached and the presumption arising therefrom overcome by evidence of want of jurisdiction, collusion between parties, or fraud in the party offering the record". I specifically and repeatedly gave notice the state had no jurisdiction, and sued the State in addition. Instead Beth Roberts sought to destroy all of the devices both physical and online which were containing evidence in an ongoing federal court proceeding, due to concerns that the evidence is being used in court.

Verified Correct Copy of Original 5/24/2018.

18

"The judicially fashioned doctrine of official immunity does not go so far as to immunize criminal conduct proscribed by an act of Congress" O'shea v littleton 414 US 488. Roberts asserted that my insistance of the federal supremacy shows "a disregard to the laws passed by legislature". However in attempting to nullify those laws, she committed; Conspiracy against rights 18 USC §241, Obstruction 18 USC §1505, Tampering 18 USC §1512, Retaliation 18 USC §1513, Copyright Infringement 18 USC §2319, Interferance with Commerce 18 USC §1951, Racketeering 18 USC §1962 and violated her oath of office.

The failure to preserve and attempt to destroy evidence violates the 14th amendment, in California v trombetta 476 US 479 (1984) the court held "under the due process clause of the Constitution criminal prosecutions must comport with prevailing notions of fundemental fairness. We have long interepreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense To safeguard that right, the court has developed 'what might loosely be called the area of Constitutionally guaranteed access to evidence' United States v. venezuela-bernal 458 US 858." "The most rudimentary access to evidence cases impose on the prosecution a Constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath Napue v Illinois 360 US 264 "(cont.) ➔

Verified Correct Copy of Original 6/24/2018.

19

"See also Mooney v Holohan 294 US 103. But criminal defendants are entitled to much more than protection from perjury. A defendant has a Constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt of the defendant or punishment imposed Brady v. Maryland 373 US 87" Marie Atwood had actual Knowledge that there was a contract between Barber and Vance agreeing to transparency, that the location of the offense was newberg, Yamhill County, oregon, and that this law was preempted by Copyright. She also had spoken to Deputy Dvenis after he had been told that there was no privacy agreement and Vance's friends posted it online.

Atwood also lied to the court" he's e-mailed to her at work these images of herself!" "It's not that as soon as the defendant was aware that he was being investigated... that he stopped these actions... he Continued to disseminate things about her online." yet the police report said that I had sent Vance a DMCA takedown reciept, removing them. Roberts had excluded Vances prior statements to the court, her admission of playing a victim, the emails sharing porn with others consentually, and the search to make Commercial porn, despite all being relevant to her own prior statements. Vance also testified to having only found these on google by using her name in june, when the search warrant and my filings show Vances DMCA on Pornhub in april, when I sent her a DMCA counter notice with our marraige contract which was never disclosed.

Verified Correct Copy of Original 5/24/2018.

20

_Verified Correct Copy of Original 5/24/2018_

I had sent "8 to 10" emails to deputy Duenis showing
that vance's friends had uploaded the porn, and
that there was a marraige Contract agreeing to
transparency, Marie Atwood also acknowledged
having known this when she sent it to the oregon
state bar. I told Duenis that I couldn't afford the
server, and I was so poor that I was sleeping
outside and had even Contemplated suicide, even
vance told Duenis that the website I had It on
had been taken down. However Duenis waited
17 days to write a report, and mistook oltimate
and proximate cause in a "But for Causal" chain,
and claims he did not to have read the Contents of
the emails, the same ones that Atwood printed
from reddit for a probation violation hearing.
Detective Rookhuyzen also appears to have
withheld IP Address information from "Red tube"


"Suppression of evidence favorable to the accused
was itself sufficient to amount to denial of due process
in Napue v. Illinois we extended the test formulated
in Mooney v. Holohan when we said: the same result is
obtained when the state although not soliciting false
evidence allows it to go uncorrected when it appears
See Alcorta v texas 355 US 28; Wilde v wyoming 362 US
607; cf Durley v. Mayo 351 US 227. we now hold that
the suppression by the prosecution of evidence favorable
to the defendant violates due process" Brady v maryland

21

Verified Correct Copy of Original 5/24/2018

The indictment says the location of the offense
is washington County, because deputy Duenis had
written that the location of the offense was vance's
apartment, However vance herself submitted an
affadavit saying she was afraid I would find her
address and show up there. No evidence or testimony
placed the location of the crime when the videos were
uploaded. Detective Rookhuyzen claims he had no
Ipor physical address information, Duenis drove to portland
to locate barber, and the websites pornhub and Redtube
indicated portland and new berg respectively. At the
time I was living in Dundee, Oregon working for the
Company Cannamatix proven by documents in multnomah
County 16SC03609, until I moved to portland in may 2016.


Amendment 6 states "of the state and district wherein the
crime shall have been committed, which district shall
have been previously ascertained by law." The supreme
Court in Johnson v. United States 351 US 215 (1956) said:
"The venue requirements of Article III of the Constitution
and the 6th amendment state the public policy fixes
the situs of a trial in the vincinage of the crime
rather than where the accused is a resident; and a
variation of the rule for the conveniance of the
prosecution or the accused is not justified." The
purpose is to not prejudice either party, for example
by selecting a jury pool hostile to the defense, and to
prevent the defendant from being held for trial far
from where the witnesses and evidence is located.

22

moreover the indictment is vague, it does not describe why the acts constitute a crime, nor the time or place it occured, it does not describe why the exceptions in the statute do not apply. For example of legitimate public purpose, made for commercial purpose, and legitimate educational activities, which would apply. and which defenses I assert in this petition as well.

"If an offense cannot be accurately and clearly described without an allegation that the accused is not within an exception contained in the statutes, an allegation which does not contain such allegation is defective" United states v Cook 84 US 168, 174

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words themselves fully, directly and expressely, and without any uncertainty or ambiguity, set forth all elements neccessary to constitute the offense intended to be punished." United states v Carll 105US 611

Thus the indictment suffers from a want of jurisdiction, and did not set forth the basis for which the acts had constituted a crime. Moreover the indictment didn't indicate what basis the charges would be brought forward in trial, which precluded an attempt to prepare for trial which challenges the acts based on the exceptions listed in the statute

23

Vance's attorney melanie kebler also filed her own breif at the demurral stage where she says "the named victim in this case, through her attorney Melanie Kebler, hereby objects to the demurrer filed by defendant." The victim did not file leave for Amicus Curiea, which Barber would have opposed, and private attornies do not file motions or argue cases, where they have a conflict of interest in the due process rights of the defense. At one time this was true, but it was discontinued once when formal prosecutors were empowered, with obligations to the defense private attorneys do not have. More over it prejudices the defence to have to defend one's self against multiple attornies, who hope culmulative repetition bestows veracity.

The breif cites the "drafting an effective revenge porn law" by the "cyber civil rights initiative, then reaches conclusions contrary to that same document, which was also attached. It says "the law SHOULD NOT (emphasis in original) require that perpetrators act with the intent to harass, humiliate, or cause emotional distress such a requirement... Potentially renders statutes vulnerable to first amendment challenge" (page 7 bullet 6). "The law SHOULD NOT be so broadly drafted as to include drawing" (Page 9 bullet 5). In Contrast Kebler states "The statute is not over broad", "defendant had specific intent to harass, humiliate or injure the victim", "Consent between two adults to create a intimate image, is not the same as consent to disseminate"

Verified Copy of Original 6/26/18.

24

# Clear Errors

There was never an invasion of privacy, Vance admitted that they were made with her consent, and she was not only aware that they were being shared 72 hours after their production, but she had in fact shared them with others herself as a part of a blackmail scheme, so I wouldn't publish evidence of her crimes on meaganvance.net.

"one who effectively consents to the conduct of another to invade his interest cannot recover in an action of tort for the conduct or from harm resulting from it" Mauri V. Smith 929 P.2d 307 or sct (1996)

"In the truthful presentation of facts concerning a person, even facts that a reasonable person would wish to keep private and aren't newsworthy, does not give rise to common law tort liability unless the manner or purpose of the defendants conduct is wrong full in some respect apart from causing the plaintiffs current feelings" Anderson v Fisher Broadcasting company 712 P.2d 803 or sct (1986)

In fact Barber and Vance signed a contract stating "Each party agrees to have transparency and to provide access to their social interactions, Including the ability to speak to ones social groups" waiving all of privacy rights once they had got married, Barber had a read only login for his Barber@Barberi.Com email at

Verified Correct Copy of Original 5/24/2018.

Verified Correct Copy of Original 5/24/2018

one point on barberb.com when he ran for office, even while him and vance were organizers of the naked bike ride. we were consentually sharing nude images with consentual sex partners, Vance had even sent me nude images she got from a user, on okcupid 'hot curiosity', and told me she wanted me to seek out women for threesomes. I believe that "sunlight is the best disinfectant", and the truth is always a good, that the contract was to prevent secrets. Since we were sharing these with others, and were publically nude in the paper, there is no privacy right.

This constitutes a waiver of a known right (privacy) because transparent is the opposite of private and access is the opposite of prohibit. Transparency means 3a) easily detected, obvious 3b) candid or open; free from guile. open means: exposed to general view or knowledge; free from concealment. Access means: 1) permission to enter, approach, communicate with or pass to and from a place, thing or person 3) freedom or ability to obtain, make use of, participate in something 6 opportunity to view or copy a copyrighted work. (merriam webster dictionary of law). As the record shows never did she express that the images should be private, I had just as much right to publish meagan vance.net as I did to publish the videos, she also has the right to prove any of her allegations, however she only ever relies on heresay hense why the truth is so alarming to her.

26

Verified Correct Copy of Original 5/24/2018

Vance told the Court and deputy Duenis "It was very much agreed that this was between us." However they were shared 72 hours later with 'Josh Peer' and 'Allie yoder'. she said about the idea of seeking foursomes "why not? you know I'd love to try", "I was aware there was some sort of posting made." Vance was even cc'd in these emails in the evidence "I don't remember if I was cc'd but I was told". she had testified "we had talked about 'oh wouldn't that be interesting to make porn together, we could make a lot of money'." "when we made them.

Cameron Taylor asks her about her friends spreading our porn (in january 2015), when I had found out that they were spreading it (in july 2015) to "destroy this life", which had been on a password protected FTP server. She said "he said he was going to make this website of my transgressions" (in april 2015) some friends that I told, you know, that these videos were hidden on his website". "these friends told him that if he continued with this website, that he did have alot of stuff on his website that they had as well". (nobody said this) But no porn put online would "destroy his life" or "silence" me.. "It wasn't a law yet (until late june 2015.), so my lawyer was discussing that with me unofficially, you know 'maybe you want to do this in the future once this becomes a law'." "my lawyer had suggested that, you know, this is an option you could take. I was not concerned about the videos because I didn't think anyone could find them" "he wasn't poblically trying to show them"

27

"Consent is willingness in fact for the Conduct to occur it may be manifested by action or inaction and need not be communicated to the actor" Mauriv Smith. It is not "reasonable" for a person to think that if she gave access to our porn to others to blackmail me, signed a transparency agreement, later agreed to "complete transparency" in order to find and refute her gossiping half truths, and we both shared our porn, that she could revoke that consent. That would be an ex post facto abrogation of a contract to say she waived those rights, but this law takes it back and gives her a copy right. What does this mean for "venus firs photo @ gmail.com" where they trade his photo time and her modeling time "in exchange for the resulting photos"? If the statute is to "preserve the peace and dignity of the state of Oregon" then it amounts to a taking under Amendment 5.

From the testimony and evidence here, her attorney from PSU named "April Kusters" informed her that the law could be used against me in the future, except they were "hidden on my website since 2011. Then when she becomes afraid I'm going to publish her "transgressions" like physical abuse, academic plagarism, drug abuse extortion, etc, she gives the videos to a friend in the U.K. who post it online to "fuck his life up", and did so as an "accessory to your crime", and attempted to "shift the blame".

28

Atwood's only assertion that I "reasonably should have known" vance did not consent is that vance sent me a DMCA 17USC§512 complaint. The complaint must be made under the penalty of perjury and under the jurisdiction of federal court that she is the copyright holder and that she did not consent to the publication. Vance stated that in april 2016 she "reported the videos, and I just like explained, you know, that I was reporting on part of these videos. I don't want them online, and you know it's a copyright issue." The problem is that she isn't the author or the copyright owner, I am so she tried to avoid the law by concocting an agreement contradicted by the evidence, one she admitted to have broken.

In reality spending money and time flying back and forth and taking time off of work is expensive, 4 flights and 4 weeks off of work every 3 months. So considering she doesn't work so she admits we discussed "oh wouldn't that be interesting to make porn together we could make alot of money." The claim that I 'needed it to be sexually satisfied' is funny considering she cheated when in school at ohio, two weeks before our wedding and called it rape, and said "I cant do normal sex it's too boring." there are many better looking porn actresses. It was done for the commercial purpose the exhibits prove, even "commerce" means "the act of engaging in sexual intercourse" as well.

29

Attorney General Rosenblum's office spoke to the news about this law stating that it was passed "because of the emotional impact it has on its victims most of whom are women". Atwood said "scenarios where joe blow gets on tinder and sends selfies to every other girl... complete strangers, it's not reasonable for girls to think that he didn't consent to that". The fact is that women have higher sexual value in society, and are more emotional, this law is meant to protect women an impermissable purpose under Article 1 section 46 "The state shall not abridge the rights of a person on the basis of sex." ORS: 659.004 "defines sex to include sex, gender, sexual orientation g or gender expression"

The state claims that the punishment is supposed to be due to the effect she claims it will have on her career if someone recognizes her in the porn. The problem with that is that the practice is in fact Gender discrimination, not only because the public school is a government agency bound by the first amendment, but also because it would constitute sexual Harrassment by her work. Moreover I could as easily had posted actual evidence that vance admitted to domestic violence or her mental illness or her academic plagarism, ultimately she does not own her own reputation and the freedom of conscience and speech prevail. The government is not in the position to determine what sort of true facts are or aren't in the publics interest to know.

30

For example Atwood says " To begin, the celebrity sex tape and the anthony weiner analysis kind of fails at the outset because were talking about celebrities and public figures." "Is it reasonable that a person who is always in the public eye and constantly being scrutinized, and is used to every stone being overturned about their private life, is it reasonable for that person to feel harm from this type of conduct?" Yet on Oregon live.com I was instantly recognizable as someone who ran for public office and co-started the American's Elect political party of Oregon, vance had given people who "were" digging into his personal life " his porn, and told them I had "attempted theft", "physical abuse", leading to me publishing the website, and she even admitted " to telling people I raped her.

"The situation with you I have had debates with others over the claim it constitutes rape, but I always loved our sexual interactions, It would be rape if I said stop and stopped it but you forced me". In 2010 she said however "I cant do the routine sex thing for a while, it's just boring - the feeling of excitement has to be there" "we should sneak up and just start raping each other" "I really like being over powered during sex. So yes maybe some hair pulling or more roughness in other ways like biting" Rook huizen said "what appears to be consentual sex between benjamin and meagan. In the second one meagan appears to be tied up.

Verified Copy Copy of Original 5/24/2018.

31

Verified correct Copy of Original 5/24/2018

It is not the Courts or even the juries discretion what is in the public interest, but some examples included commercial pornography, works with legitimate medical, scientific, educational activities (strangely omitting political and artistic from Miller v. California), Civil legal proceedings. The Dictionary defines it as "a right that arises from a Constitution, a specific public benefit or stake in something, the concern or attention of the public, the general welfare and rights of the public to be protected and advanced." Vance admitted that there are only 2 extant 'albino porn' actresses, this is what led us to consider making commercial porn in. However Professor Barber of the university of washington in. has published my 'albino porn' in the Brautigan Library

However the jury never was given any of the affirmative defenses or even allowed to read the law itself. I believe there is a public interest in porn, because it reduces the rate of sexual assault and prostate cancer. I also think that it has legitimate medical, scientific, educational, (artistic and political) purposes. A cover of National Geographic cover features topless african albino tribes woman and nastya kurimova who is also an albino porn model known by the members of 4chan.org as 'queen of /pol/'. There was apparently such an interest that one pornographer we solicited offered us "over $1000" though the large studios offer more money.

32

The Communications decency act precludes any State for creating any liability on a user of a internet website who provided them with information. As I can't be considered the speaker, especially when I wasn't the original speaker, but gave additional publicity to videos made public by vance and her friends. As Detective Rookhuyzen said the website was located in the nation of cypress, and once congress acts pursuant to it's powers under the commerce clause, it leaves no jurisdiction of the states. It " sweeps away the whole and leaves nothing to be reached upon." Justice Story

(o

Moreover the 6th amendment provides that the accused has a right to a "speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. Detective Rookhuyzen admitted "The profile for Barber's showed to be a male -- a 31 year old male named Benjamin, a male with an interest in men and it showed him to be in Newberg, oregon." Rookhuyzen had my email address from google and he could have supeona'd google or Redtube for an IP address but he didn't. Newberg, oregon is in Yamhill County and at the time I was working there for a company "Cannamatix" making computer control light and hydroponics systems, to be put in a sealed and electronically secure shipping container.

Verified Correct Copy of Original 5/24/2018.

33

Verified Correct Copy of Original 5/24/2018

my personal opinions of their artistic quality
is that one is paired with classical music from
OPB.org and is romantic rather than debauch
lust. Another would demonstrate the 'light BDSM'
of vance tied with a satin rope by a slip knot that
she herself pulls free, Negating the claims she
made alleging I had raped her. In fact her
Nov 24th 2010 face book conversation said "I can
not do the routine sex thing for awhile; it's just
boring" She describes fantasies of "rape" and
"getting caught". In a society where heresay is
enough of being able to convict someone, both in the
Court of public opinion and the legal system, as a
matter of caution It's a good idea to record every
sexual encounter, just in case of a jilted lover.

The simplest explaination is my past due server bill
from hetzner on 5/6/16 my public storage repossesion
in 5/16, and my email to jonathin perry in 4/16 saying
that "I can't afford to take care of myself" saying that
I've been contemplating suicide. If I can't afford
basic neccessities I'm not going to afford the hosting
fees, so I uploaded my things to the free public
cloud like Github, facebook, pornhub, etc otherwise
they would get deleted. The state must prove beyond
a reasonable doubt archival was not the purpose,
since I never sent them to anyone vance knew. If I
wanted to destroy her career, my doing her course work, or
her admissions of abusing myself or my disabled sister would do.

34

Verified Correct Copy of Original 5/24/2018

# Ineffective assistance of Counsel

Barbers attorney Cameron Taylor of metropolitan public defenders, the agency routinely has too many cases to manage effectively, and the washington county judges bully attornies that step out of line. He made it clear that he would not follow my defense strategy from the beginning, but I had no other choice if I needed discovery and an apellate lawyer. Atwood saids "he states in his motions that he does not feel that his attorney is representing him the way he wants to be represented" before the trial began.

"we have long held that criminal defendants be afforded a meaningful opportunity to present a complete defense" California v Trombetta 467 US 479 "a right to the effectiveness of Counsel is the right of the accosed to require the prosecutions case to survive the crucible of meaningful adversarial testing when a true adversarial criminal trial had been conducted, the kind of testing envisioned by the sixth amendment has occured" united states v Cronic (1984)

The differences were due to; (1) the Copy right act (2) the definition of privacy (3) the Contract with vance (4) the dates/location in the indictment (5) that they were made for commercial purpose (6) the reasonable person standard (7) the Commerce clause (47 USC §230) (8) the affirmative defenses (9) they were already made public by vance, hence why I filed my own motions.

35

"An attorney undoubtedly has a duty to consult with the client regarding important questions of overarching defense strategy" "the court agreed that the sixth amendment imposes a duty to investigate, because reasonably effective assistance must be based on professional decisions, and informed legal choices can only be made only after the investigation of options" Strickland v. Washington (1984). Cameron Taylor said that many of my defenses didn't matter, were pseudo law, or were conspiracy theories he wouldn't investigate. He also refused to supoena evidence or call witnesses.

Every attorney should know the 6th amendment requires that the person shall be brought to trial in the district in which crime was committed, and he knew that newberg is not in washington county. Every attorney should know there is no reasonable expectation of privacy in information given to third parties, or where a person agrees to waive that right. Every attorney should know of the contract clause of the constitution, and the expost facto clause of the constitution. Every attorney knows about the interstate commerce clause, under which the internet and copyright is regulated. Even I as a layman albiet an engineer knew these things, and asked my attorney to use them as defenses, nor did he want to use the affirmative defenses in the statute.

Verified Correct Copy of Original 5/3/2018

36

_Verified Correct Copy of Original 5/24/2018_

Before trial I told him the Copyright act and the CDA preempted the state law, but he told me I was using 'pseudo law', but since he was not an expert in federal law he had a law student look into it for him. She told me that it didn't apply because then child porn would not be punishable, but rather than rely on facts or case law she used 'Common sence'. I had also mentioned the reasonable person standard as being unlawful under Elonis v. United States, but he failed to adjust jury instructions even when I told him. I told him I didn't want a female judge and initially I had Judge Butterfield and I was fine with that, but he later let DA Atwood switch it in a 'retroactive motion'.

My Case in Chief was that vance had been the one responsible for spreading the porn in 2015, which he called a 'conspiracy theory' (that she admitted to). I know she is a prolific liar, our marraige agreement agreed to transparency, because she lied about being raped instead of cheating and being pregnant, and she accused her brother of sexual assault prior to that. I wanted to prove to the jury that there was no agreement to keep it "between us", because she had spread it knowing it was a crime, Her friend on twitter called it a crime and it would "destroy his life". My sex tapes would not "destroy his life", but vances constant lies and accusasations of crimes did, he didn't examine her on her lies regarding the rape, fraud, assault claims or on her own contradictions under oath.

37

He did ask me about an autism defense and we did discuss my suicidal statements, but he didn't get the email of them with Jonathin Perry or the therapist. Due to freezing outside in winter with bleeding intestinal and stomach ulcers. He also had evidence of vance's mental illness but didn't supoena her doctor or therapist, or provide even her own statements of alchol abuse, self mutilation, sex addiction, anxiety, Borderline personality disorder, depression. Contrary to her testimony she is the one who had the high libido, and I the reluctant party when discussing on facebook. She wanted threesomes, rape fantasies, voyerism, but she also accuses her brother, me, her college friend, and her ex-bf's friend of sexual assault when she cheats.


Taylor could have; gotten these records, could have gotten my newberg records, could have propedy authenticated the exhibits, could have gotten my server shutoff past due bills, my suicide emails, because I had gotten them before trial and Atwood asked for a reset. He didn't either contact my friend Bryan Schmerling to backup my server, or we would have had vance's access of the porn on my server. He could have supoena'd Allie Yoder, Josh Peer, 'hotcuriosity', Eliana Sigelman, 'Emerald' to show she jointly shared porn. He could have supoena'd the friends' she had shared the porn with leading to black mail to establish they were shared by her. He didn't, because all clients of metro public defenders get less resources than the prosecution, and in the washington county courts they bully the public defenders.

Verified Correct Copy of Original 5/24/2018.

38

Even if MR Taylor had read the cyber civil rights initiative packet that had been proffered by melanie Kebler, he would have seen that it too shows additional lines of defense that he did not. For example the attachment says that the law should not use "negligence which is based on what the offender should have known" and "content they reasonably believed was commercial pornography". Both of which were jury instructions that I had told him to use during trial. The document also says "The law sHould not require that perpetrators act with intent to harass, humiliate, or cause emotional distress... and potentially renders statutes vulnerable to first amendment challenge." and "The law sHould NOT be so broadly drafted to include drawings" and it too mentions immunity for online entities under 47 USC §230, which includes users.

A reasonably effective attorney would have checked the statute against the "guide for legislators" to see if the law is flawed, there wasn't even an investigation needed, because the investigation into possible lines of defense was done by Bowber and vance's attorney melanie kebler. As for the excuse for why this may have happened is that metropolitan public defenders is consistantly overwhelmed with clients, at the time Cameron was traveling down to Salem and preparing for a murder trial with another inmate, and he reported working nights and weekends, this creates a conflict of interest and constant fatigue can cause errors.

39

The other issue is that it appears that metropolitan public defenders entire practice has issues of an excessive case load, which places them under pressure to force the defendants to make plea bargains. For example Barber attended a "women only" employment fair by work systems which is a municipal corporation also known as the employment department, which uses department of labor and state money to operate. Barber's metropolitan public defender stated that "men are not a protected class", and tried to convince Barber to plea guilty, despite segregation being clearly illegal to do. At various times Barber has had to point out glaringly obvious issues of the work of the firm with thier clients, like with Douglas Dixon and Micheal Forker.

Douglas Dixon the last heir of his old widowed mother, was charged 3 years after the DHS removed her from their home, when she was still cognizant and opposed their interferance, for committing fraud against her now that she is suffering from dementia and has no memory who the son is anymore, a Brady violation. Michael Forker's statute of limitations has been over for 8 years, the DA charged him with the 2018 law and not the 2004 law, a due process and ex post facto violation. Powers v Hamilton County Public Defenders 501 F 3d 592 6th cir 2007 "where public defenders conduct is systematic and administrative, and in the states interest, conduct is under the color of law [for §1983]"

Verified Correct Copy of Original 5/24/2018

40

## Structural Errors

The Indictment didn't get issued correctly, because the location of the offense was not present, due to there being no evidence of where the crime occured. On a probable cause affadavit it says "The crime or crimes occured within Washington County on (date) at (time) at this location:". Amendment 6 states "of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law". The supreme court in Johnson v united states 351 US 215 (1956) said: "The venue requirements of Article III of the constitution and the 6th amendment state the public policy fixes the situs of a trial in the vincinage of the crime rather than where the accused is a resident; and a variation of the rules for the Convenience of the prosecution or the accused is not justified." The purpose is to not prejudice either party, for example by selecting a jury pool hostile to the defense, and to prevent the defendant from being held from trial far from where the witnesses and evidence is located. More over lying on the Affadavit is an act of perjury. More over the Indictment merely tracks the statute and doesn't explain why the acts which it allege do not Constitute an exception in the statute. In this indictment there was no mention as to why he knew she didn't consent, or why it was for the purpose of humiliation, or why it wasn't in the public interest, why it didn't have a legitimate educational activity connected with it, the defendant needed to know what sort of trial he would be facing.

Verified Correct Copy Original 2018.

41

"Suppression of evidence favorable to the accused was itself sufficient to amount to denial of due process. In Napue v Illinois we extended the test formulated in Mooney v. Holohan when we said: The same result is obtained when the state although though not soliciting false evidence allows it to go uncorrected when it appears see Alcorta v. texas 355 US 28; wilde v wyoming 362 US 607; Cf Durley v Mayo 351 US 227. we now hold that the suppression of evidence favorable to the defendant violates due process" Brady V maryland 373 US 87

"If an offense cannot be accurately and clearly described without an allegation that the accused is not within an exception contained in the statutes, an allegation which does not contain such allegation is defective" United states v. Cook 84 US 168, 174

"In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words themselves fully, directly and expressly and without any uncertainty or ambiguity, set forth all elements neccessary to constitute the offense intended to be punished" united states v Carll 105 US 611.

Thus the Indictment should be impeached for fraud on part of the state offering the Affadivit of probable cause, and for a want of jurisdiction for there was never any evidence the crime was in washington County.

42

Verified Correct Copy of Original 5/24/2018

# Clear errors

The circumstances of the dissemination of intimate images, was that these images were provided by Julia Emery the named victim over a interactive Computer service to MR Leatherwood. Voluntarily. Therefore as a user of an interactive Computer service, who provided information from another information Content provider he is immune from state prosecution for what amounts to Copy right infringement under both 47 USC §230 and 17 USC §301.

Moreover on the day of the offense Julia Emery had posted an intimate image of MR Leatherwood on face book saying in the Comment that he had a little dick. She told him via text message that she did it because she wanted to embarass him, then when he threatened to do the same to her, she said go ahead and do it. Emery provided a screen shot of the bottom of MR Leatherwood's nude picture, with the replies to that being MS Emery's nude pictures. The District Attorney realizing this decided to call one "a wash" and then MR Leatherwood pled guilty to three Counts in washington County Court. In the court order was a Condition that he destroy all of the pictures and the information pertaining to MS Emery, so he went to his probation officer and showed that he had wiped her information from his cellphone and his laptop as instructed.

43

MS Emery should have also been charged with the same crime or even merely investigated but she wasn't, the law is a defacto sexist one, when not merely selective prosecution but one based on gender occurs. Article 1 section 46 prohibits discriminating on the basis of sex and violates the equal protection clause of the 14th amendment. "equal protection prohibits selective enforcement of the law, on the basis of race" United States v. Deering 179 F3d 592 "Under the equal protection clause" all persons similiarly situated shall be treated alike" by government entities F S Royster Guano v. Virginia 253 US 412 (1920)

Moreover she had not only consented, even if a facetiously done g but consented. by her identical conduct towards him. "Act only upon that maxim that you can will it and it shall become universal law" - Groundwork for the metaphysics of morals. Immanuel Kant. This Golden Rule is similiar to the definition by the oregon supreme Court in Maua. v. Smith "Consent is willingness in fact for the conduct to occur, it may be manifested by action or inaction and need not be communicated to the actor.

There is reasonable doubt that the intent wasn't to get her to stop the same conduct, by retaliating with the same acts she had consented to doing with his images. He might only know she did not consent if she said no, or if he didn't know she was a hypocrite, or thin skinned when the tables were turned, or was unreasonable

44

_ Verified Correct Copy of Original 5/24/2018_

## Ineffective assistance of Counsel

Leatherwood was represented by Ted Oncolino, who
initially agreed to take the matter to trial, Leatherwood
was under the impression from his experience in
California when he was in high school, That the
school public service announcement advised all
students to not share nude photos. He was told
that people who do so have no privacy right if it
is shared with other people. What he wasn't aware
was that it is also forbidden under the Communications
decency act for states to punish it under the California
supreme court decision Barrett v Rosenthal Casct (2006)
when at final case resolution his attorney told him
that he shouldn't take it to trial, that he should take
a plea deal. Oncolino had read the demurrer written
by his colleage MR Cameron Taylor, who he told MR
micheal Forker he thought "it was very well written",
but when MR Taylor had lost the Demmurrer in
state us Barber No-CR 46339 he decided to push
MR Leatherwood to take a plea deal. However
MR Barber at this junction of time had already
informed MR Taylor that the law was unconstitutional
on many more grounds than the first amendment and
Article l section 8, and mr Taylor didn't even effectively
capture the essence of the decision of United states
v stevens. MR Oncolino failed to investigate the matter
itself and therefore the plea deal MR Leatherwood
took was not an intelligent plea, for had MR Oncolino
been better informed, he would have not taken it

45

Verified Correct Copy of Original 5/24/2018

MR Oncolino I am told has 3 bar Complaints from the state of massachusetts, he seems to be ignorant of his own ignorance, which is a hall mark of not an reasonably effective attorney, but a wholly inadequate one As an example in support of this arguement, MR Barber and MR Forker had dealt with mr oncolino in 2018, MR Forker had been charged with a crime 8 years past the statute of limitations. MR Barber informed MR Forker of the fact that the crime charged had to be charged as the statute in 2004, and even if they changed the statute of limitations to do so is an expost facto law, and a due process violation. MR Barber a non lawyer computer engineer knew what mr oncolino didn't at first glance, that the guilt beyond a reasonable doubt precludes bringing stale charges, because the inability of the defense to find evidence in his defence becomes nearly impossible.

Instead of doing the Simple google or findlaw search which took MR Barber 10 minutes to find the answer MR Oncolino had his assistant do the research for him, then came to the demurrer hearing in State v Forker Completely unprepared. MR Forker alleges that he seemed hungover and the District Attorney had a better understanding of the contents of the motion that he himself submitted. At the end of the oral arguments the DA said (paraphrase) "MR oncolino wishes this was legislature, but he can't change the law" to which he incredulously said "The DA might be right, but I don't think he is". Its obvious he can read, but MR Oncolino doesn't have an understanding of law.

46

Oncolino had a similiar problem with Douglas Dixon (state v Douglas Dixon), where MR Dixon expressed that he did not want to take a plea deal, and then gave him things to do. MR Oncolino then asked him two other times if he wanted to take a plea deal, but failed to get the information from his previous attorney as he requested him to do 3 months prior. Similiarly MR Forker asked MR Oncolino to write the motion to demurrer and had the information he needed to write it for 3 months, he lied twice about having submitted it to the Court, and didn't appear to even understand the motion he submitted. MR Oncolino failed to call a witness in a trial of a man named Kevin (forgot last name), when the witness was there and was prepared to testify in his favor.

These examples are just the handful in our pod, It's not only MR Leatherwood affected by MR Oncolino's poor performance, and MR Leatherwood does not have the requisite skill and knowledge to evaluate his performance, knowledge or judgement. He only knew how poor it was when he had read the laws and decisions from the supreme court which make the decision more clear. Had MR Oncolino done a google search, printed some of these off, and then gave MR Leatherwood an explaination of the risks and facts pertaining to his chances, MR Leatherwood could have made an informed choice. When the distinction between an invasion of privacy and a copy right infringement was described to MR Leatherwood, he understood the difference, then decided that he was screwed by Oncolino.

Verified correct copy of Original 5/ 2018.

# Certificate of Service

A Copy of the following has been
sent to the following by US mail
first Class

Washington County District Attorney
150 North first ave MS40
Room 300
Hillsboro, OR 97124

Verified Correct Copy of Original 5/24/2018

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF WASHINGTON
150 N First Avenue  Hillsboro Oregon  97124

| | |
|---|---|
| Benjamin Barber; Jay Leatherwood | **Case No:** 18CV21272 |
| Plaintiff | |
| v. | **GENERAL JUDGMENT OF DISMISSAL** |
| Pat Garrett | |
| Defendant | |

The Petition failed to state a claim upon which habeas corpus relief may be granted.

**THIS CASE IS DISMISSED** { ☐ with ☒ without} prejudice.

No costs and fees are awarded to any party.

Signed: 5/31/2018 01:44 PM

_____                    _____

Circuit Court Judge, Andrew Erwin

WASHINGTON

# CASE SUMMARY
## CASE NO. 18CV21272

| | | |
|---|---|---|
| Benjamin Barber, Jay Leatherwood | § | Location: **Washington** |
| vs | § | Filed on: **05/24/2018** |
| Pat Garrett | § | |
| | § | |

---

### CASE INFORMATION

**File Date** 05/24/2018

**Cause of Action**
- Original Action

**Description/Remedy**
Action
$0.00  Judicial Resolution

Case Type: **Constitutional Writs - Habeas Corpus**

Case Flags: **Appeal**

**Statistical Closures**
05/31/2018       Closed

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**
Case Number        18CV21272
Court              Washington
Date Assigned      05/24/2018

---

### PARTY INFORMATION

| | |
|---|---|
| **Plaintiff** | **Barber, Benjamin** |
| | **Leatherwood, Jay** |
| **Defendant** | **Pat Garrett** |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 05/24/2018 | **Cause of Action**   - Original Action   () | |
| | Action Type                    Action | |
| | Remedies Sought                Judicial Resolution | |
| 05/24/2018 | Petition - Writ of Habeas Corpus | |
| | Filed By:  Plaintiff  Barber, Benjamin;  Plaintiff  Leatherwood, Jay | |
| | Serving:  Defendant  Pat Garrett | |
| | Created: 05/24/2018 3:23 PM | |
| 05/24/2018 | **Service** | |
| | Pat Garrett | |
| | Unserved | |
| | Created: 05/24/2018 3:23 PM | |
| 05/24/2018 | Notice | |
| | *to take judicial notice* | |
| | Party: Plaintiff  Barber, Benjamin;  Plaintiff  Leatherwood, Jay | |
| | Created: 05/24/2018 3:24 PM | |
| 05/24/2018 | Order - Denial (Judicial Officer: Erwin, Andrew R ) | |
| | *Writ of Habeas Corpus* | |
| | Signed: 05/24/2018 | |
| | Created: 05/24/2018 3:25 PM | |
| 05/31/2018 | **Judgment - General Dismissal** (Judicial Officer: Erwin, Andrew R) | |

WASHINGTON

# CASE SUMMARY

## CASE NO. 18CV21272

**ER - 58**

    - Original Action :
Party (Pat Garrett)
    Created: 05/31/2018 2:15 PM

05/31/2018    Digitized Judgment Document (Judicial Officer: Erwin, Andrew R )
    Signed Date: 05/31/2018
    Created: 05/31/2018 2:15 PM

05/31/2018    Notice - Judgment Entry
    Created: 05/31/2018 2:15 PM

05/31/2018    Closed
    Created: 05/31/2018 2:16 PM

06/28/2018    Notice - Appeal
    *A168163 (5/31/18 Judgment)*
    Filed By:  Plaintiff  Barber, Benjamin
    Serving:  Defendant  Pat Garrett
    Created: 06/28/2018 9:31 AM

06/28/2018    Notice
    *Transcript Notification for Appeal A168163*
    Created: 06/28/2018 9:32 AM

**Section B begins on the next page.**

IN THE COURT OF APPEALS OF THE STATE OF OREGON

| | | |
|---|---|---|
| Benjamin Barber | ) | |
| | ) | |
| Plaintiff-Appellant | ) | Washington County Circuit Court |
| And | ) | Case No. 18CV21272 |
| | ) | |
| Jay David Leatherwood | ) | CA    A168163 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| Pat Garrett, Sheriff | ) | |
| | ) | |
| Defendant-Respondent | ) | |

APPELLANTS' OPENING BRIEF AND EXCERPT OF RECORD

Appeal from the Judgment of Dismissal of

the Circuit Court for Washington County

dated January 20, 2019

The Honorable Andrew Erwin

Benjamin Barber
10043 SE 32ND Ave
Milwaukie, Oregon 97222
(971) 270-0855
Email Address starworks5@gmail.com
Plaintiff-Apellant , Pro-Se

Mr. Elmer M Dickens Jr.
(OSB No. 980484)
Washington County Counsel
Public Services Bldg MS 24
155 N First Ave Ste 340
Hillsboro OR 97124
(503) 846-6225
Email Address elmer_dickens@co.washington.or.us
        Attorney for Defendant-Respondant

Page 1

# INDEX

1. Cover Sheet------------------------------------------------------------------------- 1
2. Index------------------------------------------------------------------------------- 2
3. Table of Authorities----------------------------------------------------------------- 3
4. Summary of Argument--------------------------------------------------------------- 6
5. Assignment of Error----------------------------------------------------------------- 6
   1. Did the trial court err by not providing the reason for the dismissal?----- 6
   2. Did the trial court err in dismissing the Habeas Corpus by not liberally construing Pro Se Habeas Corpus as a Post Conviction Relief? ---------- 6
   3. Did the trial court error by denying the petition as unripe?----------------- 7
   4. Did the Trial Court err as a matter of law by denying the Habeas Corpus, due to the Statute ORS 163.472 as being an unconstitutional content based restriction of speech under the First Amendment, Completely Preempted by 17 USC 301(a), and expressly preempted by 17 USC 201(e) and 47 USC 201(e)? -------------------------------------------------- 7
   5. Did the trial court err by not providing an evidentiary hearing?----------- 7
6. Preservation of Error----------------------------------------------------------------- 7
7. Standard of Review------------------------------------------------------------------ 8
8. Argument-------------------------------------------------------------------------- 8
   a. Summary----------------------------------------------------------------------- 8
   b. Freedom of speech------------------------------------------------------------- 9
   c. Content Based restrictions----------------------------------------------------- 10
   d. Intellectual Property Rights---------------------------------------------------- 13
   e. Cyberspace Law---------------------------------------------------------------- 17
   f. Mens Rea----------------------------------------------------------------------- 19
   g. Contract Clause---------------------------------------------------------------- 20
   h. Ineffective Assistance of Counsel---------------------------------------------- 21
   i. Due Process-------------------------------------------------------------------- 24
   j. Collateral Estoppel------------------------------------------------------------- 27
   k. Jurisdiction-------------------------------------------------------------------- 28
   l. Third Party Standing------------------------------------------------------------ 29

## TABLE OF AUTHORITIES

**Cases:**

Amer. Libraries Assoc. v. Pataki, 969 F.Supp. 160, 173 (S.D.N.Y.1997)--------------

Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002)---------------------------------

Backpage.com, LLC v. McKenna 881 F. Supp. 2d 1262 (W.D. Wash. 2012) ---------

Baltimore Orioles, Inc. v. Major League Baseball Players Association, 805 F.2d 663, 676-77 (7th Cir. 1986)-------------------------------------------------------------------------------

Barnes v. Yahoo!, Inc., 570 F.3d 1096 (9th Cir. 2009)------------------------------------

Barrett v. Rosenthal 40 Cal. 4th 33, 146 P.3d 510, 51 Cal. Rptr. 3d 55 (2006)--------

Batzel v. Smith, 333 F.3d 1018, 1033 (9th Cir. 2003) ------------------------------------

Bond v. Blum,. 317 F.3d 385 (4th Cir. 2003)-------------------------------------------------

Boos v. Barry, 485 U.S. 312 (1988)-------------------------------------------------------------

Brady v. Maryland :: 373 U.S. 83 (1963)------------------------------------------------------

Braun v. Soldier of Fortune Magazine, Inc., 968 F.2d 1110 (11th Cir. 1992)----------

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306-307 (2d Cir. 2004)

Broadrick v. Oklahoma, 413 U.S. 601 (1973)------------------------------------------------

Brown v. Entertainment Merchants Association 564 U.S. 786 (2015)------------------

Burger King Corp v Rudzewicz 471 US 462, 472 (1985)----------------------------------

Burnham v. Superior Court of Cal., County of Marin, 495 US 604, 608 - 609 (1990)

California v. Trombetta, 467 U.S. 479 (1984)------------------------------------------------

Chicago Lawyers' Committee For Civil Rights Under Law v. Craigslist, 519 F.3d 666 (7th Cir. 2008)------------------------------------------------------------------------------------------

City of Ladue v. Gilleo, 512 U. S. 43, 51 (1994)-------------------------------------------

City of Renton v. Playtime Theatres Inc. 475 U.S. 41 (1986)---------------------------

Civil Rights Under Law, Inc. v. Craigslist, Inc., 519 F.3d 666 (7th Cir.2008)---------

Cochran v. United States, 157 U.S. 286, 294, 15 S.Ct. 628, 39 L.Ed. 704 (1895)----

Cohen v. California 403 U.S. 15 (1971)-------------------------------------------------------

Craig v. Boren, 429 U. S. 190 (1976)---------------------------------------------------------

Davis v. O'Brien, 320 Or. 729, 737, 891 P.2d 1307 (1995)-------------------------------

Del Madera Properties v. Rhodes and Gardner, 820 F.2d 973 (9th Cir. 2004)---------

Dennis v. Hart, 724 F.3d 1249, 1254 (9th Cir 2013)--------------------------------------

Doe v. Bolton, 410 U. S. 179 (1973)-----------------------------------------------------------

Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008)--------------------------------------

Eisenstadt v. Baird, 405 U. S. 438 (1972)----------------------------------------------------

Elonis v. United States 575 U.S. ___ (2015), 135 S. Ct. 2001 (2015)------------------

Engle v. Isaac, 456 U. S. 107, 126-129 (1982)---------------------------------------------

Fair v. Roommates, 521 F.3d 1157 (9th Cir. 2008)----------------------------------------

Florida Star v. B. J. F., 491 U. S. 524, 540 (1989)---------------------------------------

Flowers v. Carville, 310 F.3d 1118 (9th Cir. 2002)---------------------------------------

Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)-----

Fox Film Corp. v. Doyal, 286 U. S. 123, 286 U. S. 127 (1932)-------------------------

Garcia v. Google, Inc. 786 F.3d 733 (9th Cir. 2015)-----------------------------------

Giglio v. United States, 405 U. S. 150 (1972)-------------------------------------------

Grayned v. City Of Rockford 408 U.S. 104, 92 S. Ct. 2294 (1972)--------------------

Green v. Franke, 350 P. 3d 188, 194 (2015)---------------------------------------------

Griswold v. Connecticut, 381 U. S. 479 (1965)-----------------------------------------

Healy v. Beer Institute, 491 U.S. 324, 109 S. Ct. 2491 (1989)--------------------------

Hernandez-Zurita v. State, 290 Or. App. 621, 626 (Or. Ct. App. 2018)----------------

Hill v. Colorado, 530 U.S. 703 (2000)---------------------------------------------------

Home Building & Loan Assn. v. Blaisdell, 290 US 398, 431 (1934)--------------------

Johnston v. United States, 351 US 215, 220-221 (1956)--------------------------------

Jules Jordan Video Inc V. 144942 Canada Inc 617 F.3d 1146 (9th Cir. 2010)---------

Kois v. Wisconsin, 408 U.S. 229, 231, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972)

Lamont v. Postmaster General, 381 U.S. 301, 308 (1965)-------------------------------

Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134 (9th Cir. 2006)--------------

Maloney v. T3Media, Inc. ,688 F.3d 1164 (9th Cir. 2017)-------------------------------

McGowan v. Maryland, 366 U. S. 420 (1961)------------------------------------------

Miller v. California, 413 U.S. 15 (1973)-------------------------------------------------

Monge v. Maya Magazines, Inc., 688 F.3d 1164 (9th Cir. 2012)------------------------

Montz v. Pilgrim Films & Television, 649 F.3d 975, 979 (9th Cir. 2011)--------------

Mooney v. Holohan 294 U.S. 103 (1935)-----------------------------------------------

Mooney v. Holohan, 294 U. S. 103 (1935)----------------------------------------------

Mora v. Maass  120 Or. App. 173, 851 P. 2d 1154 (1993)------------------------------

Mora v. Maass, 851 P. 2d 1154, 1156 (1993)-------------------------------------------

Morissette v. United States, 342 U.S. 246 (1952)--------------------------------------

Mueller v. Benning, 841 P. 2d 640, 643-------------------------------------------------

Mueller v. Benning, 841 P. 2d 640, 643 (Or. Sup. Ct. 1992)----------------------------

Napue v. Illinois, 360 U. S. 264, 360 U. S. 269-272 (1959)----------------------------

New York v. Ferber, 458 U.S. 747 (1982)-----------------------------------------------

Ogle v. Nooth, 330 P. 3d 572 587 (Or. Sup. Ct. 2014)--------------------------------

Peeples v. Lampert, 146 P. 3d 352, 357 (Or Ct App 2006)------------------------------

Peiffer v. Hoyt, 339 Or. 649, 125 P.3d 734 (2005)------------------------------------

Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)

Powers v. Ohio, 499 U.S. 400 (1991)----------------------------------------------------

R.A.V. v. St. Paul 505 U.S. 377 (1992)--------------------------------------------------

Reno v. American Civil Liberties Union, 521 U.S. 844 (1997)--------------------------

Ritchie v. Williams, 395 F.3d 283, 286-87 (6th Cir. 2005)-----------------------------

Rogers v. United States, 422 U.S. 35, 47, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)-------

Rosciszewski v. Arete. Assocs., 1 F.3d 225 (4th Cir. 1993)----------------------------

Roviaro v. United States, 353 U. S. 53 (1957)-----------------------------------------------

Sable Communications of Cal., Inc. v. FCC, 492 U. S. 115, 126 (1989)---------------

Schnapper v. E Foley  667 F.2d 102, 115 (D.C. Cir 1981)--------------------------------

Schnapper v. Foley 667 F.2d 102 (D.C. Cir. 1981) --------------------------------------

Shields v. Campbell, 277 Or. 71, 77-78, 559 P.2d 1275 (1977)--------------------------

Sielaff v. Williams, 423 U. S. 876 (1975)-------------------------------------------------

Singleton v. Wulff 428 U.S. 106 (1976)---------------------------------------------------

Smith v. Maryland 442 U.S. 735 (1979)----------------------------------------------------

Staples v. United States 511 U.S. 600 (1994)--------------------------------------------

State v. Babson, 326 P. 3d 559, 568 (Or. Sup Ct. 2014)--------------------------------

State v. Brown, 800 P. 2d 259, 265 (1990)-----------------------------------------------

State v. McNally, 392 P. 3d 721,734 (Or Sup Ct 2017)---------------------------------

State v. Mills, 312 P. 3d 515, 529 – Or. Sup. Ct. 2013---------------------------------

State v. Mills, 312 P. 3d 515, 529 (Or. Sup. Ct. 2013)--------------------------------

State v. Oidor, 292 P. 3d 629 (Or Ct App 2012)----------------------------------------

State v. Oidor, 292 P.3d 629, 633 (Or. Ct. App. 2012)-------------------------------

State v. Robertson 649 P.2d 569 293 Or. 402 (1982)---------------------------------

State v. Robertson,293 Or. 402, 649 P. 2d 569 (1982)-------------------------------

State v. Tidyman, 30 Or.App. 537, 568 P. 2d 666 (Or. Ct. App. 1977)----------------

Stewart v. Abend 495 U.S. 207 (1990)-----------------------------------------------------

Stewart v. Abend, 495 U.S. 207, 229 (1990)---------------------------------------------

Strickland v. Washington, 466 U.S. 668 (1984)-----------------------------------------

United States ex rel. Williams v. Twomey, 510 F. 2d 634, 640 (7th cir 1975)---------

United States v. Agurs 427 U.S. 97, 122 (1976)----------------------------------------

United States v. Anderson, 328 US 699, 703 -------------------------------------------

United States v. Cronic, 466 U.S. 648 (1984)-------------------------------------------

United States v. Cronic, 466 US 648, 656 - 657 (1984)------------------------------

United States v. Dotterweich, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943)

United States v. Frady, 456 U. S. 152, 162-169 (1982)-------------------------------

United States v. Jeffries, 692 F.3d 473 (6th Cir. 2012)-------------------------------

United States v. Johnson, 323 US 273 (1944)-------------------------------------------

United States v. Miller, 425 US 435 (1976)----------------------------------------------

United States v. Playboy Entertainment Group, 529 U.S. 803 (2000)------------------

United States v. Stevens, 559 U.S. 460 (2010)-----------------------------------------

Veeck v. S. Bldg. Code Cong. Int'l, Inc., 293 F.3d 791, 803 (5th Cir. 2002)

Virginia v. Rives, 100 US 313, 317 (1880)-----------------------------------------------

Voltage Pictures, LLC v. Doe, Civ. No. 6:14-cv-812-MC 2-3 (D. Or. Jun. 20, 2014)

Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244 (1886)

Winters v. New York, 333 U.S. 507, 528, 68 S.Ct. 665, 92 L.Ed. 840 (1948)---------

World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286, 297 (1980)--------------

**Statutes:**

ORS 163.472------------------------------------------------------------------------------------00
ORS 43.220-------------------------------------------------------------------------------------00
Article 1 Section 8 Oregon Constitution--------------------------------------------------------00
Article 1 Section 11 Oregon Constitution-------------------------------------------------------00
17  U.S.C. § 201(e)----------------------------------------------------------------------------00
17  U.S.C. § 301(a) ---------------------------------------------------------------------------00
47  U.S.C. § 230(e)(3)-------------------------------------------------------------------------00
Amendment 1 United States Constitution--------------------------------------------------------11
Amendment 6 United States Constitution--------------------------------------------------------11
Article VI, Clause 2 United States Constitution------------------------------------------------11

## Summary of Argument

The Trial Court erred by not liberally construing the Habeas Corpus as a post conviction relief, petitioner sent a Habeas Corpus because the trial court dismissed a post conviction relief Case no. 18CV14984, as not being "properly before the court" because petitioners previous post conviction relief was being appealed. That post conviction was denied without prejudice while he was represented with counsel with a conflict of interest 17CV44670  Court of Appeals A167498 . Extraordinary writs are not available when there is an adequate remedy at law, and petitioner was not eligible for post conviction relief (incorrectly) according to the trial court.

Petitioner alleges in the petition that ORS 163.472 is unconstitutional, that the court lacked both subject matter jurisdiction and in personam jurisdiction, that there were ineffective assistance of counsel, factual innocence due to the statutory exceptions in the law as applied to the facts in this case, and multiple Brady v. Maryland violations. Petitioner seeks analysis of the constitutionality of the statute, and notwithstanding the constitutionality of the statute to have the petition sent back to the trial court to determine the validity of the other basis' of relief.

## Assignment of Error

1.      The trial court erred by denying the Habeas Corpus without providing a reason for the dismissal, and explaining the reason why it was dismissed, which did not provide the petitioner the reason for the dismissal, which prevented him from correcting his petition.

2.      The trial court erred by failing to liberally construe the Habeas Corpus as a petition for post conviction relief, and failed to hold a hearing or provide notice to amend the petition as one for post conviction relief

3.     The trial court erred by dismissing the petition due to denying previous petition for post conviction relief, as not being properly before the court because a previous dismissed post conviction relief was being appealed, where the dismissal was without prejudice because petitioner was not represented by conflict free counsel.

4.     The trial court erred by denying the petition on the basis that the statute ORS 163.472 is an unconstitutional infringement of rights under Amendment 1 to the US constitution, article 1 section 8 of the Oregon Constitution, 17 U.S.C. § 106. Moreover the statute is completely preempted by 17 U.S.C. § 301(a) and expressly preempted by 17 U.S.C. § 201(e), 47  U.S.C. § 230, and unconstitutional under due process clause of the 14th amendment to the U.S. constitution, and Article 1 section 8 cl 3 the commerce clause , and Article 1 section 10 cl 1 the Contract clause of the U.S. constitution.

5.     The trial court erred by denying the Habeas Corpus by not allowing an evidentiary hearing to show that petitioner had Brady v. Maryland violations, ineffective assistance of counsel, and actual innocence based on exceptions in the statute, and actual innocence based on contractual consent to the disclosures of the intimate image.

**Preservation of Error**

The errors were preserved by a notice of appeal that was submitted to the court within 30 days of the dismissal of the Habeas Corpus petition, which was dismissed on its own motion without a hearing on the merits of the petition. See e.g. State v. Brown, 800 P. 2d 259, 265 (Or. Sup. Ct. 1990)("ORAP 5.45(2) provides that "the appellate court may consider errors of law apparent on the face of the record," notwithstanding a defect in preservation at trial or presentation on appeal."); Peiffer v. Hoyt, 125 P. 3d 734, 738 Or. Sup. Ct. 2005

In general, this court has based its rules regarding preservation of error on two concerns: (1) fairness to the parties in making and responding to arguments asserted in a case; and (2) efficient judicial administration. See, e.g., Davis v. O'Brien, 320 Or. 729, 737, 891 P.2d 1307 (1995) ("[t]his court has indicated that the rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument"); Shields v. Campbell, 277 Or. 71, 77-78, 559 P.2d 1275 (1977) (the reason for requiring preservation "is not merely to promote form over substance but to promote an efficient administration of justice and the saving of judicial time.");

## Standard of Review

The denial of the Habeas Corpus should be reviewed for errors of law and for abuse of discretion. See e.g. Green v. Franke, 350 P. 3d 188, 194 (Or. Sct. 2015)("This court's review of a post-conviction court's determinations is not open-ended. We review such proceedings for errors of law. Peiffer v. Hoyt, 339 Or. 649, 660, 125 P.3d 734 (2005)."); Peeples v. Lampert, 146 P. 3d 352, 357 (Or Ct App 2006) ("We review the merits of the post-conviction court's decision to dismiss for an abuse of discretion.")

Hernandez-Zurita v. State, 290 Or. App. 621, 626 (Or. Ct. App. 2018)("Our review ... is limited to the face of the pleadings. In conducting that review, we assume the truth of all allegations in the [petition] and give [petitioner], as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations.")

Ogle v. Nooth, 330 P. 3d 572 587 (Or. Sup. Ct. 2014)("This court also explained, however, that, consistently with ORS 138.620, the hearing that is required prior to dismissal of a petition need not be an evidentiary hearing "in every case." Rather, ORS 138.620(1) contemplates hearings on responses by the state that raise "solely issues of law." Ware, 342 Or. at 450 n. 4, 154 P.3d 118.")

United States v. Playboy Entertainment Group, Inc., 529 US 803, 817 (Sup. Ct. 2000) ("When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded congressional enactments is reversed. "Content-based regulations are presumptively invalid," R. A. V. v. St. Paul, 505 U. S. 377, 382 (1992), and the Government bears the burden to rebut that presumption.")

## Argument

### Summary

The trial court erred by failing to liberally construe the Habeas Corpus as a petition for post conviction relief, and failed to hold a hearing or provide notice to amend the petition as one for post conviction relief. Petitioner filed the Habeas Corpus petition due to the previous petition for post conviction relief 18CV14984 being denied, as "not being properly before the court" because the first petition for post conviction relief 17CV44670 which was dismissed was being appealed, where the dismissal was without prejudice because petitioner was not represented by conflict free counsel. See e.g. Mora v. Maass, 851 P. 2d 1154, 1156 (1993) ("We treat plaintiffs' petitions for writs of habeas

corpus as mislabeled petitions for post-conviction relief."); Mueller v. Benning, 841 P. 2d 640, 643

> This case presents, not a jurisdictional problem, but rather a pleading label problem. The pleadings, although mislabeled, clearly stated claims cognizable in a post-conviction proceeding. The pleadings should be liberally construed as requesting post-conviction relief. ORCP 12(6) We hold that the case is a post-conviction proceeding notwithstanding the label applied, that the trial court had jurisdiction over it as such, and that, therefore, there is jurisdiction to consider a timely appeal of that court's judgment of dismissal.

The Trial court erred in dismissing the post-conviction as a matter of law, that the statute ORS 163.472 is facially unconstitutional, which renders the petitioners conviction void. That the petitioner was denied due process in the trial court proceedings, due to lack of subject matter and in personam jurisdiction, in addition to prosecutorial misconduct. Moreover that he was had ineffective assistance of counsel, and he would have not been convicted with the newly discovered evidence, and claims for relief asserted in the petition. Because petitioner has factual innocence, as he is within the exceptions within the statute, and the charge would be unconstitutional as applied to the petitioner.

Petitioner is able to file this petition on behalf of himself and others, due to the next friend standing, third party standing and first amendment standing, Powers v. Ohio, 499 U.S. 400, 411; Broadrick v. Oklahoma, 413 US 601, 612. Joinder of parties is appropriate because there are significant issues of laws that all plaintiffs have in common, and it without this joinder co-plaintiff lacks the education necessary to request relief from the court, and the appellant-petitioner is friends with the co-petitioner.

### Freedom of Speech

At trial court the prosecution tried to claim that the statute is not governed by strict scrutiny because it focuses on the emotional effects of the speech on the victim, "So those statutes involved effect on the listener. This statute involves effect on a targeted victim." Transcript Of Proceedings On Appeal Pg 74. Furthermore the state tried to distinguish the statute on the basis that the person has a hypothetical right to not be offended, and to restrict the dissemination of these images. See Transcripts Pg 76.

> "If -- to say that if a person gives an image to somebody, that they give up any right to be offended for disseminating that image further is completely, I guess, backward from a lot of other crimes that we deal with here in -- in -- in our

community. completely, I guess, backward from a lot of other crimes that we deal with here in -- in -- in our community.

For example, if you lend your car to a friend for a day and they never bring it back, it's not your fault for giving them permission initially. They're still guilty of Unlawful Use of a Vehicle."

"This statute targets a very narrow set of conduct that causes a very narrow type of harm in very narrow circumstances. And I think defense counsel's argument that this statute refers only to disseminating images over the internet is a testament to that." Transcripts pg 75

## Content Based restrictions

In State v. Robertson 293 Or. 402  the court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the content of speech or writing and laws that focus on the pursuit or accomplishment of forbidden results. 293 Or. at 416-17. The court reasoned that a law of the former type, a law "written in terms directed to the substance of any `opinion' or any `subject' of communication," violates Article I, section 8.

Likewise in United States V Playboy Entertainment Group 529 U.S. 803, 814

"[A] content-based speech restriction, it can stand only if it satisfies strict scrutiny. Sable Communications of Cal., Inc. v. FCC, 492 U. S. 115, 126 (1989). If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. Ibid. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." … "Our precedents teach these principles. Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists."

As the Oregon Supreme court has indicated, a distinction on the effects on (public) listeners and the desire to publish information disparaging about someone is an unlawful content based restricion of speech.  State v. McNally, 392 P. 3d 721,734 (Or Sup Ct 2017)("Permitting some expressive conduct because it is motivated by conscience or principle while punishing identical conduct that is motivated by more private desires raises the issue of potentially impermissible content-based restrictions on speech.")

Moreover as the U.S. Supreme court indicated that regulation dealt with "bring into public odium any foreign government, party, or organization, or any officer or officers thereof, or to bring into public disrepute" Boos v Barry 485 US 312, 316

> "We spoke in that decision only of secondary effects of speech, referring to regulations that apply to a particular category of speech because the regulatory targets happen to be associated with that type of speech. So long as the justifications for regulation have nothing to do with content, i. e., the desire to suppress crime has nothing to do with the actual films being shown inside adult movie theaters, we concluded that the regulation was properly analyzed as content neutral." Boos v Barry at 320 discussing Renton v. Playtime Theaters  475 U.S. 41

> To take an example factually close to Renton, if the ordinance there was justified by the city's desire to prevent the psychological damage it felt was associated with viewing adult movies, then analysis of the measure as a content-based statute would have been appropriate. The hypothetical regulation targets the direct impact of a particular category of speech, not a secondary feature that happens to be associated with that type of speech. Boos v Barry at 321

The test stated in State v. Robertson, 649 P. 2d 569 is not performed as the state argues, that if the statute focuses on the forbidden effects, that it is not a content based restriction of speech.  See State v. Babson, 326 P. 3d 559, 568 (Or. Sup Ct. 2014)

> In Tidyman, statutory context in the form of legislative findings about the harmful effects of adult businesses could not save the statute because "[i]t is the operative text of the legislation * * * that people must obey and that administrators and judges enforce." Id. at 184-85, 759 P.2d 242. In that case, the court concluded, the operative text targeted the content of expression because it regulated "adult businesses"—that is, only certain businesses, based on the content of the 17 expressive materials they sold—rather than the supposed harmful effects of those businesses. Id. at 184-86, 759 P.2d 242.

Even if the speech is targeting a particular effect, it is the hostility or favoritism to a certain viewpoint which is forbidden. R.A.V. v. St. Paul, 505 US 377, 383 - 384 (1992)

> What they mean is that these areas of speech can, consistently with the First Amendment, be regulated because of their constitutionally proscribable content (obscenity, defamation, etc.)— not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content. Thus, the

Page 11

government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government.

Displays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics. Those who wish to use "fighting words" in connection with other ideas—to express hostility, for example, on the basis of political affiliation, union membership, or homosexuality—are not covered. The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects. Id at 391

The fact that a person can be "humiliated" by something other than "intimate images" means that the statute is wholly under inclusive to prevention of the effects. Brown v. Entertainment Merchants Association 564 US 786, 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint. See City of Ladue v. Gilleo, 512 U. S. 43, 51 (1994); Florida Star v. B. J. F., 491 U. S. 524, 540 (1989).")

The Supreme court made it clear that there would be no new categories of criminalized speech ""Our decisions in Ferber and other cases cannot be taken as establishing a freewheeling authority to declare new categories of speech outside the scope of the First Amendment." United States v. Stevens, 130 S. Ct. 1577, 1586 (2010)

"From 1791 to the present," however, the First Amendment has "permitted restrictions upon the content of speech in a few limited areas," and has never "include[d] a freedom to disregard these traditional limitations." These "historic and traditional categories long familiar to the bar," including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct, are "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." Id at 1584

"The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it." Id at 1585

The argument that a person has a right to consent or object to the dissemination, on the basis of a "right to not be offended is called the "heckler's veto" doctrine and has been rejected. Hill v. Colorado, 530 US 703 (2000)

> "While we have in prior cases found governmental grants of power to private actors constitutionally problematic, those cases are distinguishable. In those cases, the regulations allowed a single, private actor to unilaterally silence a speaker even as to willing listeners. See, e. g., Reno v. American Civil Liberties Union, 521 U. S. 844, 880 (1997) ("It would confer broad powers of censorship, in the form of a `heckler's veto,' upon any opponent of indecent speech . . .").

Nor does the fact that the statute has exceptions for "Disclosures that serve a lawful public interest" nor  does "Legitimate medical, scientific or educational activities"

> In Miller we held that "serious" value shields depictions of sex from regulation as obscenity. 413 U.S., at 24-25, 93 S.Ct. 2607. Limiting Miller's exception to "serious" value ensured that "`[a] quotation from Voltaire in the flyleaf of a book [would] not constitutionally redeem an otherwise obscene publication.'" Id., at 25, n. 7, 93 S.Ct. 2607 (quoting Kois v. Wisconsin, 408 U.S. 229, 231, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972) (per curiam)). We did not, however, determine that serious value could be used as a general precondition to protecting other types of speech in the first place. Most of what we say to one another lacks "religious, political, scientific, educational, journalistic, historical, or artistic value" (let alone serious value), but it is still sheltered from government regulation. Even "`[w]holly neutral futilities . . . come under the protection of free speech as fully as do Keats' poems or Donne's sermons.'" Cohen v. California, 403 U.S. 15, 25, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (quoting Winters v. New York, 333 U.S. 507, 528, 68 S.Ct. 665, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting); alteration in original). United States V Stevens 130 S. Ct. 1577, 1591 2010

The argument that the law only covers internet speech, does not mean that it satisfies strict scrutiny, because "whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary" when a new and different medium for communication appears.' " Brown v. Entertainment Merchants Ass'n, 131 S. Ct. 2729, 2733 (2011). Moreover, because the law is not the least restrictive means of achieving the purported government interest because it is a criminal and not civil remedy.

### Intellectual Property Rights

The right to consent to the dissemination of an image, is preempted by the rights conveyed by the copyright act, and congress passed a statute completely preempting rights which are equivalent to those in the copyright act 17 U.S.C. § 301(a). The issue therefore, is whether  ORS § 163.472 is preempted by 17 U.S.C. § 301(a). See, e.g., Laws, 448 F.3d at 1137. 17 U.S.C. § 301(a) preempts plaintiff's claims if (1) "plaintiff's work come[s] within the subject matter of copyright" and (2) the legal or equitable rights granted under state law "are equivalent to any of the exclusive rights within the general scope of copyright." Montz v. Pilgrim Films & Television, 649 F.3d 975, 979 (9th Cir. 2011).

As to the first requirement, the leading treatise in this field recognizes that the scope of the subject matter of copyright law is broader than the protections it affords." Id. (citing 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 19D.03[A][2][b] (rev. ed. 2010)). A "motion picture" is a work of authorship under the Copyright Act. 17 U.S.C. § 102(a)(6). The motion picture at issue, "Albino Porn", was produced by plaintiff and is registered with the US copyright office, See Registration number VAu001282435 on 2016-12-23. The right to reproduce, copy, and distribute are exclusive copyright rights reserved to the copyright owner. See 17 U.S.C. § 106. Although state contends that it is merely seeking to prevent the "Unlawful dissemination of an intimate image", the states' complaints clearly encompass subject matter falling within the scope of federal copyright law.

We must next determine whether the rights the states is protecting are equivalent to the rights protected under the Copyright Act. In Del Madera Props. v. Rhodes & Gardner, 820 F.2d 973 (9th Cir.1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), we outlined the test for determining whether state rights were "equivalent" to those under the Copyright Act:

To satisfy the "equivalent rights" part of the preemption test, the "unlawful dissemination" must be equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act. Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display.   To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights.   The state claim must have an extra element which changes the nature of the action.

In ORS 163.472 "The person knows or reasonably should have known that the other person does not consent to the disclosure" is equivalent to the rights in 17 U.S.C. § 106 because "In fact, this Court has held that a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work. See Fox Film Corp. v. Doyal, 286

Page 14

U. S. 123, 286 U. S. 127 (1932)" Stewart v. Abend, 495 U.S. 207, 229 (1990). The 9th circuit court has held that many of the theories that the state would rely on would be preempted by § 17 U.S.C. 301 because "a right is equivalent to one of the rights comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution or display." Baltimore Orioles, Inc. v. Major League Baseball Players Association, 805 F.2d 663, 676-77 (7th Cir. 1986)

In State v. Oidor, 292 P. 3d 629 (Or Ct App 2012):
> "Applying the preemptive effect of section 301 to state civil but not criminal law could lead to the development of "vague borderline areas" between federal and state protection of copyrights. Under the Copyright Act, a copyright holder is entitled to exclusive rights in his or her work for a defined duration, 17 U.S.C. § 302, and the copyright holder's exclusive rights are limited by principles such as fair use, 17 U.S.C. § 107. Conversely, ORS 164.865(1)(b), by prohibiting the sale of a sound recording without the consent of its owner, provides the owner with perpetual protection that is not limited by copyright principles such as fair use. Thus, if section 301 does not preempt ORS 164.865(1)(b), then Oregon criminal law would provide copyright holders with different protections for their work from those that they have under the Copyright Act, in contravention of Congress's intent in enacting section 301."

In Jules Jordan Video Inc V. 144942 Canada Inc 617 F.3d 1146 (9th Cir. 2010):
> "In the instant case, we conclude that Gasper's right of publicity claim falls within the subject matter of copyright, and that the rights he asserts are equivalent to the rights within the scope of § 106 of the Copyright Act. The essence of Gasper's claim is that the Kaytel defendants reproduced and distributed the DVDs without authorization. His claim is under the Copyright Act. Accordingly, we reverse the district court and vacate Gasper's judgment against the Kaytel defendants for violation of his right of publicity under California law."

In Monge v. Maya Magazines, Inc., 688 F.3d 1164 (9th Cir. 2012):
> "We pointedly note that we address the unpublished status of the photos only under copyright principles, not privacy law. See Bond v. Blum, 317 F.3d 385, 395 (4th Cir.2003) ("the protection of privacy is not a function of the copyright law."). "It may seem paradoxical to allow copyright to be obtained in secret documents, but it is not. [F]ederal copyright is now available for unpublished works that the author intends to never see the light of day."

In Garcia v. Google, Inc. 786 F.3d 733, 745 (9th Cir. 2015):

"This relief is not easily achieved under copyright law. Although we do not take lightly threats to life or the emotional turmoil Garcia has endured, her harms are untethered from — and incompatible with — copyright and copyright's function as the engine of expression." ... "Ultimately, Garcia would like to have her connection to the film forgotten and stripped from YouTube. Unfortunately for Garcia, such a "right to be forgotten," although recently affirmed by the Court of Justice for the European Union, is not recognized in the United States."

In Maloney v. T3Media, Inc. ,688 F.3d 1164 (9th Cir. 2017):

"Plaintiffs' ... challenge "control of the artistic work itself." Laws, 448 F.3d at 1142. Pursuant to Laws, the subject matter of the state law claims therefore falls within the subject matter of copyright. We believe that our holding strikes the right balance ... permitting photographers, the visual content licensing industry, art print services, the media, and the public, to use these culturally important images for expressive purposes. Plaintiffs' position, by contrast, would give the subject of every photograph a de facto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright Act."

Moreover Congress explicitly stated that they did not want government agencies expropriating their copyrights when it enacted 17 U.S.C. 201(e) See HR Rep. No 94-1476 94th cong sess 2d (1976) at 123-124.

"Subsection (e) provides that when an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, have not previously been voluntarily transferred, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title.

The purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by any involuntary transfer. It is the intent of the subsection that the author be entitled, despite any purported expropriation or involuntary transfer, to continue exercising all rights under the United States statute, and that the governmental body or organization may not enforce or exercise any rights under this title in that situation."

Veeck v. S. Bldg. Code Cong. Int'l, Inc., 293 F.3d 791, 803 (5th Cir. 2002) ("Section 201(e) of the Act reflects Congress's intention to protect copyrights from involuntary appropriation by government entities.").

Schnapper v. E Foley  667 F.2d 102, 115 (D.C. Cir 1981) ("We are aware that there is at least a theoretical possibility that some copyright laws may be used by some nations as instruments of censorship. Fears had been expressed, for example, that the Soviet Union would, through use of a compulsory-assignment provision in its domestic copyright laws, attempt to prevent foreign publication")

Numerous Courts, including the Ninth Circuit, have found that the preemption provision of the Copyright Act, 17 U.S.C. § 301(a), completely preempts certain state-law claims falling within its scope See, e.g., Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1146 (9th Cir. 2006) (upholding complete preemption of state right of publicity under the Copyright Act);  Ritchie v. Williams, 395 F.3d 283, 286-87 (6th Cir. 2005) (upholding complete preemption of state contract and tort claims under the Copyright Act); Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306-307 (2d Cir. 2004) (upholding complete preemption of state unjust enrichment and declaratory judgment claims under the Copyright Act); Rosciszewski v Arete Assocs Inc 1 F 3d 225 233 (4th Cir. 1993) (upholding complete preemption of state Computer Crimes Act claim under the Copyright Act).

("Complete preemption is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." Dennis v. Hart, 724 F.3d 1249, 1254 (9th Cir 2013) "Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action.") Voltage Pictures, LLC v. Doe, Civ. No. 6:14-cv-812-MC 2-3 (D. Or. Jun. 20, 2014)

Where the law is completely preempted by the copyright act, it is as if the state court lacked subject matter jurisdiction over the cause, and thus the conviction is void ab initio see Burnham v. Superior Court of Cal., County of Marin, 495 US 604, 608 - 609 (1990)

> "Traditionally that proposition was embodied in the phrase coram non judice, "before a person not a judge" — meaning, in effect, that the proceeding in question was not a judicial proceeding because lawful judicial authority was not present, and could therefore not yield a judgment. American courts invalidated, or denied recognition to, judgments that violated this common-law principle long before the Fourteenth Amendment was adopted."

## Cyberspace Law

Congress created the Communications Decency Act 47  U.S.C. § 230, "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation" § 230(b)(2), by providing that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  § 230(c)(1), and "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3) Though the statute ORS 163.472 provides immunity for "providers" of  interactive computer service, but not the users of those services by its terms, despite the fact that the statue clearly exempts a "provider or user" see e.g. Batzel v. Smith, 333 F.3d 1018, 1030 ("[T]he language of § 230(c)(1) confers immunity not just on "providers" of such services, but also on "users" of such services."); Barrett v. Rosenthal 40 Cal. 4th 33, 63

> "We conclude there is no basis for deriving a special meaning for the term "user" in section 230(c)(1), or any operative distinction between "active" and "passive" Internet use. By declaring that no "user" may be treated as a "publisher" of third party content, Congress has comprehensively immunized republication by individual Internet users.

As long as someone else provided the information, the user cannot be treated as a speaker or publisher, regardless of whether it is for defamation, or negligence, or criminal conduct. Backpage. Com, LLC v. McKenna, 881 F. Supp. 2d 1262, 1275 (W.D.Wa. 2012)("If Congress did not want the CDA to apply in state criminal actions, it would have said so"); Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1101 (9th cir 2009)

> "But "a law's scope often differs from its genesis," Craigslist, 519 F.3d at 671, and the language of the statute does not limit its application to defamation cases. Indeed, many causes of action might be premised on the publication or speaking of what one might call "information content." A provider of information services might get sued for violating anti-discrimination laws, see, e.g., Roommates.Com, 521 F.3d 1157; for fraud, negligent misrepresentation, and ordinary negligence, see, e.g., Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008), cert. denied, ___ U.S. ___, 129 S.Ct. 600, 172 L.Ed.2d 456; for false light, see, e.g., Flowers v. Carville, 310 F.3d 1118 (9th Cir. 2002); or even for negligent publication of advertisements that cause harm to third parties, see Braun v. Soldier of Fortune Magazine, Inc., 968 F.2d 1110 (11th Cir. 1992). Thus, what matters is not the name of the cause of action — defamation versus negligence versus intentional

infliction of emotional distress — what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." If it does, section 230(c)(1) precludes liability."

Congress clearly had the ability to enact and preempt the state throught the commerce clause of Article 1 section 8 of the constitution, moreover congresses commerce powers "encompasses an implicit or "dormant" limitation on the authority of the States to enact legislation affecting interstate commerce." Backpage. Com, LLC v. McKenna, 881 F. Supp. 2d 1262, 1285 (W.D.Wa. 2012).

"Where a state statute only has incidental effects on interstate commerce, the statute will be upheld "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest," where "its effects on interstate commerce are only incidental," and where the burden imposed on interstate commerce is not "clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). "[T]he practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." Healy, 491 U.S. at 336, 109 S.Ct. 2491. Finally, there exist unique aspects of commerce that demand national treatment. See, e.g., Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244 (1886) (holding railroad rate exempt from state regulation)." ...

"The Internet is likely a unique aspect of commerce that demands national treatment. "The Internet is wholly insensitive to geographic distinctions" and itself "represents an instrument of interstate commerce." Amer. Libraries Assoc. v. Pataki, 969 F.Supp. 160, 173 (S.D.N.Y.1997). See also Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc., 519 F.3d 666 (7th Cir.2008) ("Online services are in some respects like the classified pages of newspapers, but in others they operate like common carriers such as telephone services."). Thus, "[t]he Internet, like ... rail and highway traffic ..., requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations." Pataki, 969 F.Supp. at 182; cf. Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244 (1886) (holding railroad rate exempt from state regulation)."

## Mens Rea

The statute uses a "reasonable person" standard of guilt, based on when a "reasonable person" would be humiliated, and when a "reasonable person" should have known that the other person does not consent. The problem with this is that it lacks the requirements of scienter, that a person have a guilty state of mind see Elonis v. U.S., 135 S. Ct. 2001

> Elonis's conviction, however, was premised solely on how his posts would be understood by a reasonable person. Such a "reasonable person" standard is a familiar feature of civil liability in tort law, but is inconsistent with "the conventional requirement for criminal conduct—awareness of some wrongdoing." Staples, 511 U.S., at 606-607, 114 S.Ct. 1793 (quoting United States v. Dotterweich, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943); emphasis added). Having liability turn on whether a "reasonable person" regards the communication as a threat—regardless of what the defendant thinks—"reduces culpability on the all-important element of the crime to negligence," Jeffries, 692 F.3d, at 484 (Sutton, J., dubitante), and we "have long been reluctant to infer that a negligence standard was intended in criminal statutes," Rogers v. United States, 422 U.S. 35, 47, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) (Marshall, J., concurring) (citing Morissette, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288). See 1 C. Torcia, Wharton's Criminal Law § 27, pp. 171-172 (15th ed. 1993); Cochran v. United States, 157 U.S. 286, 294, 15 S.Ct. 628, 39 L.Ed. 704 (1895) (defendant could face "liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind"). Under these principles, "what [Elonis] thinks" does matter. Id at 2011

## Contract Clause

Barber and the putative victim had a written contract and an additional agreement, which was not brought to the attention to the trail court by petitioners counsel, where the putative victim had previously gave him permission to disseminate the images. However the language of the statute says "does not consent" to the disclosure, and a person can no longer consent as described by the Deputy District Attorney. This violates the contract clause of the constitution.

> "Each party agrees to have transparency and provide access to their social interactions, including the ability to speak to members of ones social groups." (Marriage Contract between petitioner and putative victim 11/30/2011)

"I demand complete transparency" – petitioner
"so its divorce?" – putative victim
"always honesty with your partner" – petitioner
"I will do complete transparency for two years" – putative victim
(putative victim asking to abolish the contract, on 09/11/2013)

"The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them[9] (Sturges v. Crowninshield, supra, pp. 197, 198) and impairment, as above noted, has been predicated of laws which without destroying contracts derogate from substantial contractual rights." Home Building & Loan Assn. v. Blaisdell, 290 US 398, 431 (1934)

### Ineffective Assistance of Counsel

During the trial court the Deputy District Attorney brought to the court that Barber had filed a notice to the court that he did not feel that his attorney was effectively representing him, so he had attempted to file pro-se motions not realizing that hybrid representation is forbidden under law. Petitioners trial attorney refused to comply with this clients strategy in both matters of law and fact, and this failure resulted in prejudice against petitioner in trial court.

It's a motion to acquit, notice of removal to federal court to track with the pending lawsuit. It's my understanding he's seeking a temporary restraining order against me and has also sued the victim and her attorney. {...} He states in his motions that he does not feel that his attorney is representing him the way that he wants to be represented and that this proceeding cannot move forward in any way until the resolution of his pending federal action. Transcripts page 117-118

Petitioner requested that trial counsel move to acquit on a matter of law, because he was not located in Washington county and they did not have jurisdiction, furthermore that the law was unconstitutional under the copyright act, the communications decency act, and the commerce clause. Trial counsel said that this was pseudo-law, and refused to avail himself of these defenses.

Petitioner requested that his trial attorney use as a defense that he had a marriage written that had a agreement of "complete transparency", and to "allow access to their social interactions". Moreover he wanted to use a defense that the pornography was originally made with commercial purpose, given that we had solicited money in exchange to make pornography over email at the time that we made the videos, however he failed to use this defense.

Page 21

Putative victim had testified at trial "One day when I was visiting, we had talked about, 'Oh, wouldn't that be interesting to make porn together? We could make a lot of money.'" Transcript Of Proceedings On Appeal page 272

Petitioner wanted to use as a defense that putative victim had herself engaged in spreading the pornography to use as blackmail against the petitioner, when the petitioner consistent with his contractual right, wanted to publish a website of the putative victims previous "transgressions" including extortion and domestic violence. Trial attorney said that he did not want to rely on "conspiracy theories", and refused to use this defense.

Transcript Of Proceedings On Appeal  Pg262

A   Yes. They were not officially mentioned at that point. It wasn't a law yet, so my lawyer was discussing that with me unofficially, you know, "Maybe you want to do this in the future once this becomes a law."

Q   But you never preemptively mentioned anything about it? You never -- you never discussed, "Hey, now that we're getting divorced, get rid of those videos," or -- or --

A   Yeah. Well, at the time, they were on his website. If you typed in, like, "sexy with four exes" or something from his website, you could find them. But he wasn't advertising them. So it made me uncomfortable, but he wasn't publicly trying to show them.

Transcript Of Proceedings On Appeal  Pg275-76

Q   for a minute. Thank you. What I want to ask you about is part of this conversation where Mr. Barber informed you that somebody had attempted to dox the pornography that was kept on his FTP server.

A   Okay.

Q   Do you recall having that conversation?

A   Yeah.

Q   Do you recall your response to that conversation?

A   Yeah, I do. And I remember -- I didn't really expect that to some up in conversation. And these same people that he thought were going to dox him were people that I was actually talking to. And, you know,

I was just telling them, like, "He's going to make this website. He does have these videos on his personal website. He -- you know, he said he was going to make this website of my transgressions."

And so they had seen that and they were kind of protective over me that they didn't want these things shared. I don't know what had happened in his situation or who had talked to him, but, apparently, he thought people were going to dox us, according to these videos. And I knew that these people weren't going to; they were protecting me.

Transcript Of Proceedings On Appeal  Pg308-309

A   So there were some friends that I had had that I told, you know, that these videos were hidden on his website.I had recently seen that he had made the website meaganvance.net and, you know, I'd -- I opened up to them about it.

And, apparently, someone, you know, talked to him about it and he construed that as people were going to dox him and what it was that people had told him -- these friends had told him that if he -- that if he continued with this website and posted things about me, that he did have a lot of stuff on his website that they had had as well. I wasn't okay with that, but I think that's enough detail with that situation.

Petitioners trial attorney had failed to preserve the server records, to call these and other witnesses, such as the couple who we mutually shared the same pornography with 72 hours after they were produced, pre-trial motions or to obtain depositions to authenticate documents for defense. Such documents include the solicitations for commercial pornography production by petitioner and putative victim over email, and discussions of putative victim to a former love interest where she states her behavior and motive.

"honestly, i'm the physical abuser[.] i emotionally abuse too[.] i was the first one to cheat[,] its not just him[.] i play the victim alot in my life[,] i cower when its not needed and attract dominant people that want to dominate."

When petitioner saw the jury instructions and told his counsel that the instructions are not congruous with the language of the statute, because they do not contain the exceptions to the statute, trial attorney did not move to correct the instructions. Moreover the trial strategy that the petitioner wanted to use, was to more aggressively

attack putative for bias and honesty, with documents in his possession and in testimony, especially regarding where she admits to falsely accusing petitioner of rape.

"The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors[18] — the kind of testing envisioned by the Sixth Amendment has occurred.[19] But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.[20] As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." United States ex rel. Williams v. Twomey, 510 F. 2d 634, 640 (CA7), cert. denied sub nom. Sielaff v. Williams, 423 U. S. 876 (1975)." – United States v. Cronic, 466 US 648, 656 - 657 (1984)

The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the "cause and prejudice" test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. See United States v. Frady, 456 U. S. 152, 162-169 (1982); Engle v. Isaac, 456 U. S. 107, 126-129 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, see id. at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings. – Strickland v. Washington, 466 US 668, 698 (1984)

### Due Process

The arresting officer had submitted a probable cause affidavit to the trial court, stating that the petitioner had committed the crime on April 1st at the address 8655 SW Canyon LN #21 Beaverton OR 97225, and that the putative victim's address was also located at the address 8655 SW Canyon LN #21 Beaverton OR 97225, and that was based on the information that was provided to him by the victim. However it is implausible that the victim told him this, in petitioners release hearing testimony she said that she was afraid that the petitioner would find her address on the internet and show up at her home.

However the officer had gone to the internet websites where he located the videos, and testified to the court that the profile locations had been listed as Portland, Oregon and Newberg, Oregon. Moreover the detective testified that he was unable to locate the IP address from which the videos were uploaded, despite the fact that there is an email where the lawyer for Pornhub notified him that the next email would contain those email addresses, this email chain was however missing from the discovery that was provided to the trial attorney.

Moreover both the arresting officer and the investigating detective lied under oath, about their investigation into the incident. The arresting officer spoke to the petitioner about the circumstance, and waited 17 days to write the report about the phone call without the aid of a recording, in his report he states that he "basically did it because she accused him of being a rapist". However the conversation was a discussion about the putative victim's account was incorrect, because it was contradicted by evidence, and that she is a habitual liar and even admitted lying about having been raped.

For example "I asked if there was an agreement not to post the videos online when they were made. He said that was not their agreement." and " He told me that he understood if she was humiliated and that he didn't want there to be any drama but her friends at the time didn't help." Whereas I follow up with him in emails that state "Our marriage contract states that we both mutually own all assets. resolving the issue over whether we both have the license to the intellectual property." and "I get harassed with naked photos of myself on that website forum." and they contain PDF's that have all of the evidence.

Transcript Of Proceedings On Appeal  pg 348

Q All right. So fair to say, your reports that you're testifying from are missing some facts about this case?

A They're missing that -- what were in the links. That's what they're missing.

Q I mean, they don't even make reference of any e-mails?

A The e-mails he sent me, I think, were after the arrest. No, I take it back. The e-mails he sent me were after our discussion on the 26th.

Q And the e-mails refer to him turning himself in to you --

A Correct.

Q -- at a later date?

A Correct.

Q All right. So during the pendency of this case, lots of e-mails. Nothing came of them?

A Yeah, I didn't read them.

Q All right.

A I'm sorry I didn't click on the links.

Q Were you interested in hearing Mr. Barber's side of the story?

A I -- I was very interested in hearing his side of the story. But I want to hear it from him, from him, not from clicking this e-mail or that email

When the arresting officer was asked if he recorded the conversation with the petitioner, the arresting officer replied:

"First of all, we are not issued recorders, so we have to make a special effort to even get one. I don't carry one around. I'm not issued one. I have access to some at certain precincts and I can utilize those. But I actually have to make that special effort to -- to get -- get that orchestrated." – Transcripts page 353

However this is contradicted by the fact that all of the deputies are given android smartphones, which have been able to record phone calls for 10 years without any special effort other than downloading a free application to do so.

Likewise the investigating detective said that he was unable to get the IP address from the search warrant that was issued.

"I asked for -- you know, we just talked about Thumbzilla, for example. I asked for all the IP addresses and they didn't provide that. They provided, you know, information about when videos had gone up, when some of them had been deleted. They provided, you know, when the user accounts were made, but all in all, it was not 100-percent responsive." – Transcripts page 391

Page 26

However in the documents received from the original post conviction attorney, there is a document which they received from the district attorney that the trial attorney did not have, which was a document from the investigating detective to the company Mindgeek which owns Pornhub, Redtube and Thumbzilla stating:

"Ip addressed if any, shall be disclosed with the nex6t email containing Redtube information" (email sent to Detective Robert Rookhuyzen on October 31st 2016)

California v. Trombetta, 467 U.S. 479 (1984)

"The most rudimentary of the access-to-evidence cases impose upon the prosecution a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath. Napue v. Illinois, 360 U. S. 264, 360 U. S. 269-272 (1959); see also Mooney v. Holohan, 294 U. S. 103 (1935). But criminal defendants are entitled to much more than protection against perjury. A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. Brady v. Maryland, 373 U.S. at 373 U. S. 87. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. at 112. The prosecution must also reveal the contents of plea agreements with key government witnesses, see Giglio v. United States, 405 U. S. 150 (1972), and, under some circumstances, may be required to disclose the identity of undercover informants who possess evidence critical to the defense, Roviaro v. United States, 353 U. S. 53 (1957)."

**Collateral Estoppel**

The district attorney stated that there were circumstances where she could not prosecute a charge of ORS 163.472 stating:

"[T]he Anthony Weiner analysis kind of fails at the outset because we're talking about celebrities and public figures." Transcripts page 73

"So scenarios where, you know, Joe Blow gets on Tinder and sends nude selfies to every other girl that he finds there, complete strangers, it's not reasonable for those girls not to think he didn't consent to that image being put in public. We'd never be able to prove that case." Transcripts page 77

Page 27

However these circumstances came out in trial, the district attorney filed a probation revocation, which was a print out of Oregon live. A commenter linked a copy of the website Ballotpedia for the article of the petitioner when he was running for Oregon House District 36, at the precise same time the pornography had been produced. Moreover the putative victim admitted that she had known that the videos were being shared herself, with strangers from the internet both when they were made and later for purposes of blackmail. See Transcripts page 270

Q So to clarify a few points, you were aware these postings were being made?

A I was aware that there was some sort of posting made or some way that the couple could contact us.

Q And you were in agreement with that?

A Yes.

## Jurisdiction

The fact that the trial court had neither subject matter jurisdiction nor personam jurisdiction means that the entire action is void, moreover the petitioner filed to remove the action to federal court previous to the trial, and filed the same motion to the US district court. Despite the fact that the trial court didn't have jurisdiction, the court proceeded anyways, rendering any subsequent judgment entered to be void.

The location of the crime cannot be the place where the putative victim lives, the language of the statute is clear, the crime occurs where the person "causes to be disclosed". See Burger King Corp v Rudzewicz 471 US 462, 472 (1985)

"[T]he Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286, 297 (1980)."

United States v. Johnson, 323 US 273, 275-276 (1944)

Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution. These are matters that touch closely the fair administration of criminal justice and public confidence

in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law.

Johnston v. United States, 351 US 215, 220-221 (1956)

> The venue of trial is thereby predetermined, but those provisions do not furnish guidance for determination of the place of the crime. That place is determined by the acts of the accused that violate a statute. This requirement of venue states the public policy that fixes the situs of the trial in the vicinage of the crime rather than the residence of the accused. Cf. United States v. Anderson, 328 U. S. 699, 705. A variation from that rule for convenience of the prosecution or the accused is not justified.

United States v. Anderson, 328 US 699, 703 ("the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.")

State v. Mills, 312 P. 3d 515, 529 (Or. Sup. Ct. 2013)
> "[G]iven that the purpose of the right is to protect a defendant from the hardship and potential unfairness of being required to stand trial in a distant place"

The petitioner submitted a motion to remove the criminal trial to federal court for lack of subject jurisdiction due to complete preemption. see Virginia v. Rives, 100 US 313, 317

> "when an application to remove a cause (removable) is made in proper form, and no objection is made to the facts upon which it is founded, "it is the duty of the State court to `proceed no further in the cause,' and every step subsequently taken in the exercise of jurisdiction in the case, whether in the same court or in the Court of Appeals, is coram non judice."

## Third Party Standing

Petitioner filed the petition along with the co-petitioner, after he notified the petitioner that he was challenging the same exact statute he was convicted of, and his attorney failed to provide him adequate representation. Petitioner is able to assert the rights of the co-plaintiff are being violated, because of next friend, first amendment and third party standing. Without the assistance the petitioner would be unable to plead his own basis of relief, and class action relief should be granted if the statute is deemed unconstitutional.

Moreover there is a constitutional right for other people to be able to receive the information created by the petitioner, which is being violated by the statute see Brown v.

Entertainment Merchants Association 564 US 786, 797 (discussing First amendment right to consume speech)

> "The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers." Lamont v. Postmaster General, 381 U.S. 301, 308 (1965)

Powers v. Ohio, 499 U.S. 400, 411

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, Singleton, supra, at 428 U. S. 112; the litigant must have a close relation to the third party, id. at 428 U. S. 113-114; and there must exist some hindrance to the third party's ability to protect his or her own interests. Id. at 428 U. S. 115-116. See also Craig v. Boren, 429 U. S. 190 (1976). These criteria have been satisfied in cases where we have permitted criminal defendants to challenge their convictions by raising the rights of third parties. See, e.g., Eisenstadt v. Baird, 405 U. S. 438 (1972); Griswold v. Connecticut, 381 U. S. 479 (1965); see also McGowan v. Maryland, 366 U. S. 420 (1961). By similar reasoning, we have permitted litigants to raise third-party right; in order to prevent possible future prosecution. See, e.g., Doe v. Bolton, 410 U. S. 179 (1973).

Broadrick v. Oklahoma, 413 US 601, 612

> As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Dombrowski v. Pfister, 380 U. S., at 486. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Ben Boske*
*Date 01-22-2019*

# Appendix

**Table of Contents**

| Page | Exhibit name | Cited by page |
|------|--------------|---------------|
| 1 | Marraige contract agreeing to transparency and ability to disseminated | 20 |
| 2-3 | Further agreement to "complete transparency" | 20 |
| 4-5 | District attorney notifies court of ineffective access claim | 21 |
| 6 | Vance admits that we had considered making Commercial Porn | 21 |
| 7 | Vance in 2011 stated she cant do normal sex, needs kinky sex in her life. | 21 |
| 8 | Solicitation to produce commercial porn | 21 |
| 9 | Vance's attorney tells her she can use the law even absent of dissemination | 22 |
| 10-11 | Vance gives the her friend access to the porn and they use it as blackmail | 22 |
| 12-13 | Id | 23 |
| 14 | The evidence cited in that testimony | 23 |
| 15-16 | The statement relied on by her accomplices | 23 |
| 17-18 | Impeachment for bias, which trial counsel failed to authenticate | 23 |
| 19-22 | Jury Instructions by trial counsel | 23 |
| 23 | Witness list by trial counsel | 23 |
| 24-26 | Documents not introduced that impeach claim that they would not be posted | 23 |
| 27 | Perjured probable cause affidavit | 24 |
| 28-29 | Police report about the location | 24 |
| 30 | Victims report about the location | 24 |
| 31 | Investigator's testimony he did not get any IP address from search warrant | 25-26 |
| 32 | Email response saying IP addresses will be sent, which is not disclosed. | 25-26 |
| 33-34 | Report from the officer 17 days after the phone call | 26 |
| 35 | Testimony in court from the officer claiming not reading the emails. | 26 |
| 36-39 | Emails sent to the officer he claims to have not read. | 26 |
| 40 | Officer testifies that he didn't record conversation he needs special equipment | 26 |
| 41 | District attorney – testimony – collateral estoppel – public figures | 27 |
| 42-43 | District attorney – probation revocation filing – petitioner is public figure | 27 |
| 44 | District attorney – testimony – collateral estoppel – previous conduct is consent | 27 |
| 45 | Admission by putative victim that she sent that she did consent to sending the images. | 27 |
| 46-47 | Police report that putative victim said there was an agreement the wouldn't be shared. | 27 |
| 48 | Jursidiction – removal to federal court | 28 |
| 49 | Copyright registration | 28 |
| 50 | Previous PCR with both petititoners | 28 |

## Marriage Contract

### I.    The Authority

In the Name of God, our Father, and the Lord Jesus Christ, we, Benjamin J Barber and Meagan A Vance, hereby, before these witnesses, are joined in holy matrimony, as God intended in Genesis 2: 21-25, from this day forward until death. The Authority in and for this marriage shall be Almighty God as revealed in the Holy Bible.

### II.    The parties

Benjamin J Barber is a man of sound mind and character, and of lawful age. Meagan A Vance is a woman of sound mind and character, and of lawful age

### III.    The Benefits

Both of the parties shall have the usual and customary duties of marriage including, but not limited to, the following:

Mutual sexual congress

It is specifically agreed that each party will endeavor to maintain normal standards of hygiene and physical fitness so as to remain attractive to the other, and agree to not to unjustly withhold sex from the other person.

Mutual society

Each party agrees to have transparency and provide access to their social interactions, including the ability to speak to members of ones social groups. Each party agrees to allow access to to social media, email, phone records, internet accounts, as long as it is not prohibited by an employer contract, in which case those accounts should not be used for personal use.

Mutual rearing of children

Each parents agree to mutual responsibility to their children, and in the event of divorce, agree to continue to support and rear the children. Custody of the children after divorce shall be determined by arbitration, but will consist joint custody with exceptions for a minimum of

Appendix Page 2
Messages

11/20/13

**Benjamin Barber**                                                                  9/11, 6:01pm
and i believe that the important parts must be respected

    **Megapants Thunder Cats**                                          9/11, 6:01pm
    yes

    **Benjamin Barber**                                               9/11, 6:01pm
    a) complete transparency at all times

    **Megapants Thunder Cats**                                          9/11, 6:01pm
    ben

    **Benjamin Barber**                                               9/11, 6:01pm
    b) veto over member of the opposite sex

    **Megapants Thunder Cats**                                          9/11, 6:01pm
    im not following the entire marriage contract as it is currently written

    **Benjamin Barber**                                               9/11, 6:02pm
    c) the despute resoluition process

    **Megapants Thunder Cats**                                          9/11, 6:02pm
    we will go to counseling to review it

    and hopefully come to agreements

    i will no longer follow what i dont want to follow in my life

    and i am completely willing to compromise

    **Benjamin Barber**                                               9/11, 6:02pm
    you have to agree to those 3 terms

    they are not changing

    **Megapants Thunder Cats**                                          9/11, 6:03pm
    im still working on my own counseling

    if you come right out and say three parts arent changing at all, i cant continue this

    we are both in control of our choices in this marriage

    **Benjamin Barber**                                               9/11, 6:03pm
    they are scientific rules

    **Megapants Thunder Cats**                                          9/11, 6:03pm
    veto members of the opposite sex i agree to

    doesnt matter, ben

    **Benjamin Barber**                                               9/11, 6:04pm
    statistically they are among the most imprtant

Appendix Page 3
Messages

11/20/13

**Benjamin Barber**                                                                9/11, 6:48pm

they are not changing, I have evidence, i can prove evidence, you have to change my mind

I demand complete transparency

**Megapants Thunder Cats**                                                         9/11, 6:48pm
so its divorce?

**Benjamin Barber**                                                                9/11, 6:49pm
always honesty with your partenr

**Megapants Thunder Cats**                                                         9/11, 6:49pm
i will do complete transparency for two years

**Benjamin Barber**                                                                9/11, 6:49pm
nothing to hid

**Megapants Thunder Cats**                                                         9/11, 6:49pm
it could get exhausting

i agree with complete honesty

**Benjamin Barber**                                                                9/11, 6:49pm
we cant be working off of seperate knowledge

**Megapants Thunder Cats**                                                         9/11, 6:49pm
but i would like to be heard and respected when i speak honestly

**Benjamin Barber**                                                                9/11, 6:50pm
we have to have the same knowledge to come to descisions together

**Megapants Thunder Cats**                                                         9/11, 6:50pm
so would you like to continue this later or choose divorce?

**Benjamin Barber**                                                                9/11, 6:50pm
when you make secrets, you are betraying your spouse

do you agree with that?

**Megapants Thunder Cats**                                                         9/11, 6:50pm
understood, and i am deeply sorry, and i agree with that

**Benjamin Barber**                                                                9/11, 6:50pm
that is why transparency always

**Megapants Thunder Cats**                                                         9/11, 6:51pm
id rather not have friends than have friends when i could quickly not be honest

**Benjamin Barber**                                                                9/11, 6:51pm
I wont write impersonate to be you

I agree to add that

1                    THE COURT:  Okay.  Thank you.

2                    All right.  And so I understand that

3        there's some preliminary motions; is that correct?

4                    MS. ATWOOD:  Yes, Judge.

5                    THE COURT:  All right.  And, Ms. --

6        whose are they?

7                    MS. ATWOOD:  Well, I -- I kind of want

8        to bring something up before we get started with the

9        motions in limine.

10                    I was notified yesterday that this

11       defendant has elected to file a lawsuit against me in

12       federal court.  He came by the office yesterday and

13       also handed me a motion that was apparently filed

14       here in circuit court requesting a number of things.

15                    Let's see here.  It's a motion to

16       acquit, notice of removal to federal court to track

17       with the pending lawsuit.  It's my understanding he's

18       seeking a temporary restraining order against me and

19       has also sued the victim and her attorney.

20                    And in just glancing through the

21       paperwork that I've received so far, some of what he

22       discusses in his filings -- which appear to be pro se

23       at this point -- but I know that he has filed for an

24       attorney to represent him on those matters as well.

25                    Some of what he indicates has to do with

118

1    our case and proceeding with our case.  He states in

2    his motions that he does not feel that his attorney

3    is representing him the way that he wants to be

4    represented and that this proceeding cannot move

5    forward in any way until the resolution of his

6    pending federal action.

7                    So I just wanted to notify the Court of

8    all of those sort of related but extraneous matters.

9    I was, basically, advised just to ask you how you

10   would prefer to proceed.  The victim is here today,

11   but she has not yet been served anything in terms of

12   her role in the federal case as a defendant.

13                   She is still currently down in the

14   basement of the other building 'cause she was afraid

15   to come up here for fear that he would personally try

16   to serve her and potentially cause a violation of his

17   release conditions.  So there's kind of a lot going

18   on there.

19                   But I just wanted to bring that to our

20   attention before we proceed with any substantive

21   issues.

22                   THE COURT:  Okay.  And I don't find that

23   to be compelling in any way towards proceeding today.

24                   MS. ATWOOD:  Okay.

25                   THE COURT:  Mr. Taylor.

M. Vance - X                                272

1    of nude technology happening?

2         A    There was some that was consensual both

3    ways.

4         Q    Following up on that.  You guys had some

5    discussions about the idea of making more

6    pornography; is that correct?

7         A    One day when I was visiting, we had talked

8    about, "Oh, wouldn't that be interesting to make porn

9    together?  We could make a lot of money."  But then,

10   you know, within a short period of time, we'd

11   actually seriously talked about that and said, "No,

12   that's not -- that's not something for us."

13        Q    So --

14        A    That's an interesting thing for people to

15   do, but not for us when we're going into our careers.

16        Q    So there was certainly discussion about the

17   possibility of it happening and then you're saying

18   later you guys decided not to?

19        A    There was a mention of it and then a later

20   discussion and confirmation that, no, soon after.

21        Q    So I want to talk to you about 2015 some.

22        A    Okay.

23        Q    April, your testimony is that he made this

24   threat about a website?

25        A    Mm-hmm.

12/1/2016

─────────────── November 26, 2010 ───────────────



**Megapants Thunder Cats**                                                    11/26, 5:54pm

Upon further reflection, experimentation, and rememberings, I have concluded this about my sexuality:

1. I can't get wet without you.

2. Moving slow works best.  Even though I loooooove being pounded, it's not practical for the most amount of pleasure in the long run. Pounding is just sex, working slowly is making love.
-Making out for a long while
-both partners being equally intimate (both contributing some, not aggressive or submissive)
-being emotionally sweet beforehand or during
-having sex slowly for a long while until we both CANNOT hold out any longer (let's see how long we can last before going nuts!)
 all above are good ideas for this.  Then we can eventually get up to wild animal sex, and it will feel sooooo much nicer.

3. Using vibrations on my clitoris when I am close to orgasm causes me to orgasm…at least it did the one time I tried it with another. So, maybe we can find some sort of finger vibrator for when you're pounding me doggy style?  Or for any time when I'm close?  So when I'm going nuts but haven't orgasmed yet, vibrate my clitoris and it will be too much for me to possibly hold back any longer.  (I've never been pounded and vibrated at the same time and have wanted to.)

4. I can't do the routine sex thing for a while.  It's just boring!
-The feeling of excitement with sex has to be there. For me, that comes from doing dirty things and running late, the greater chance of getting caught, and having sex on adventures. Sex when I'm physically exhausted – yes. As much of these factors put together as much as possible? – yes!.
-Also, spontaneous sex, adventurous sex, unique sex, always trying new things. Let me have sex with you while you're cooking. Let me force you to take a break from work. I love distracting people.  I like having that seductive power.
-We should sneak up on each other and just start 'raping' each other.
- sex in every random place and odd position we can.  I'm soooo glad you're capable of this! 😜

5. And I really do like being overpowered during sex.  So yes, maybe some hair pulling or more roughness in other ways, like biting without blood or getting pulled around a lot. I like when you push me down with my legs in the air and part of me wants to get away but I'm too into it to focus enough to put up much of a fight.   I'm not into extreme injury or pain, but wild roughness and lotsa passion is verrrry nice sounding.

More to come later, because I think I forgot some.

Oh, and I just pounded myself upside down over the bath tub.  I wish you could have held me down and don't that.

Case 3:19-cv-01967-YY  Document 18-4  Filed 01/22/20  Page 108 of 152

Appendix Page 8
9/29/2016                 Gmail - Re: backpage response: Netvideogirls - shooting in Portland - pay is $100...

 Gmail

benjamin barber <starworks5@gmail.com>

# Re: backpage response: Netvideogirls - shooting in Portland - pay is $100...

4 messages

**DVN** <dvn2009@gmail.com>                                                    Wed, Nov 24, 2010 at 4:25 PM
To: barberb@pdx.edu

Hi
sounds great - could you send pics of you guys? nude or non nude is fine..

looking fwd to working with you.


cheers

Vin



barberb@pdx.edu wrote:
   From: barberb@pdx.edu

   Me and my girlfriend (an albino) are thinking about making porn together, and are looking around portland to
   see what opportunities are there. We've also been talking to another couple, who is interested in making porn
   with us, and who seem to like bondage and domination.

   I'm 25 5'9 160lbs, I work as a web & graphic designer, and dabble in mobile development. my hobbies are
   dragon boats, bicycle racing, martial arts.
   she is 20 5'4 120 C cups, and she is studying english education. and hobbies are crafts, skating, cycling,
   marching band,

   To view this posting, please click the following link:
   http://portland.wweek.com/AdultJobs/netvideogirls-shooting-in-portland-pay-is-1000-for-3-hours-32/4574219

   This person has contacted you anonymously through portland.wweek.com. If you believe their email is a scam,
   spam, or inappropriate, please forward this email to abuse@backpage.com.



**DVN** <dvn2009@gmail.com>                                                    Wed, Nov 24, 2010 at 6:58 PM
To: barberb@pdx.edu

Hi
I'm not sure if my last email went through - could you guys give me a call so we can set up a meeting right away?

thanks

Dean 323-855-4067
[Quoted text hidden]

**DVN** <dvn2009@gmail.com>                                                    Sat, Nov 27, 2010 at 11:39 PM

M. Vance - X                              262

1        Q     Those videos were never actually mentioned

2     in any of the divorce proceedings, though, correct?

3        A     Yes.

4        Q     So, I mean, in the hundreds of pages of

5     documents and filings talking about everything from,

6     like, give me back my rain boots, all that stuff, the

7     videos are never mentioned?

8        A     Yes.  They were not officially mentioned

9     at that point.  It wasn't a law yet, so my lawyer was

10    discussing that with me unofficially, you know,

11    "Maybe you want to do this in the future once this

12    becomes a law."

13       Q     But you never preemptively mentioned

14    anything about it?  You never -- you never discussed,

15    "Hey, now that we're getting divorced, get rid of

16    those videos," or -- or --

17       A     Yeah.  Well, at the time, they were on his

18    website.  If you typed in, like, "sexy with four

19    exes" or something from his website, you could find

20    them.  But he wasn't advertising them.  So it made me

21    uncomfortable, but he wasn't publicly trying to

22    show them.

23             So it felt very uncomfortable, but I knew

24    that the nature of our relationship, it -- when you

25    go through a divorce, there's just things you --

M. Vance - X                              275

1        A    Okay.  This is the conversation I thought

2   you were talking about and I just wanted to confirm.

3   From what I see, I remember this conversation, not

4   vividly, but this sounds like things I would say at

5   that point in time.  Do you want me to look through

6   every page of it?

7        Q    I'd like to direct your attention to a

8   certain part of it and if I can actually have the

9   document back --

10       A    Yeah.

11       Q    -- for a minute.  Thank you.  What I want

12  to ask you about is part of this conversation where

13  Mr. Barber informed you that somebody had attempted

14  to dox the pornography that was kept on his FTP

15  server.

16       A    Okay.

17       Q    Do you recall having that conversation?

18       A    Yeah.

19       Q    Do you recall your response to that

20  conversation?

21       A    Yeah, I do.  And I remember -- I didn't

22  really expect that to some up in conversation.  And

23  these same people that he thought were going to dox

24  him were people that I was actually talking to.

25            And, you know, I was just telling them,

M. Vance - X                              276

1    like, "He's going to make this website.  He does have

2    these videos on his personal website.  He -- you

3    know, he said he was going to make this website of my

4    transgressions."

5              And so they had seen that and they were

6    kind of protective over me that they didn't want

7    these things shared.  I don't know what had happened

8    in his situation or who had talked to him, but,

9    apparently, he thought people were going to dox us,

10   according to these videos.  And I knew that these

11   people weren't going to; they were protecting me.

12       Q    So you knew that.  You didn't share that

13   information with Mr. Barber, though, right?

14       A    Yeah.  I was dishonest to him about that

15   'cause I didn't -- I didn't want to get in a fight

16   about it.

17       Q    So your response to him was, "Yeah, I got

18   some messages about it," that's about it?

19       A    Yeah.  It was -- I was just playing stupid.

20   I was, like, "Oh, interesting."

21       Q    You would agree that would leave him with

22   the impression that you were unconcerned about it?

23              MS. ATWOOD:  Objection, Your Honor.

24              THE COURT:  Sustained.

25              THE WITNESS:  What was the question

M. Vance - ReD                          308

1                THE WITNESS:  Oh, sorry.

2                THE COURT:  Just a second.

3                MS. ATWOOD:  What's the nature of the

4       objection?

5                THE COURT:  Overruled.

6                THE WITNESS:  Could you --

7                THE COURT:  You may continue.

8                THE WITNESS:  -- repeat the question?

9       BY MS. ATWOOD:

10          Q    Yeah.  I'm just asking for a little more

11      detail about the -- the situation surrounding the

12      2015 conversation involving the doxing of the

13      pornography.  You made mention that you already knew

14      that some individuals were aware of -- of -- of

15      videos being hidden on a website.  What was that all

16      about?

17          A    So there were some friends that I had had

18      that I told, you know, that these videos were hidden

19      on his website.  I had recently seen that he had made

20      the website meaganvance.net and, you know, I'd -- I

21      opened up to them about it.

22               And, apparently, someone, you know, talked

23      to him about it and he construed that as people were

24      going to dox him and what it was that people had told

25      him -- these friends had told him that if he --

M. Vance - ReD                              309

1              MR. TAYLOR:  I'm going to object to

2      this, Judge.  It's hearsay.

3              THE COURT:  Overruled.

4              MS. ATWOOD:  Thank you.

5      BY MS. ATWOOD:

6         Q    Go ahead.

7         A    -- that if he continued with this website

8      and posted things about me, that he did have a lot of

9      stuff on his website that they had had as well.  I

10     wasn't okay with that, but I think that's enough

11     detail with that situation.

12        Q    Okay.  I'm just kind of going line by line

13     here.  You were asked a few questions about the

14     e-mail that you received from the defendant with the

15     receipt from the xHamster website --

16        A    Mm-hmm.

17        Q    -- showing that he'd asked to have the

18     links removed.  And you described that you -- you

19     could actually click the link that was sent to you on

20     your work address?

21        A    I could click on it.  I do not remember if

22     it said videos had been deleted or not.  I -- I am

23     pretty certain that they were deleted videos, but

24     it -- it still had the title.

25     Q  And did it take you to the website?  It

7/2/2016

Meagan Vance: I'm having the same problems 4:02 PM

Meagan Vance: But in the meantime I'm working on making curriculum 4:02 PM

Me: Oh trust me, I am, and its pissing off alot of people. 4:03 PM

Me: VP of intel resigned after I went to the US attorneys office. Top Kek. 4:03 PM

Meagan Vance: Focus on using the time that you have instead of wasting it being pissed off 4:03 PM

Meagan Vance: Appeal to the system so you can get in and fix it 4:04 PM

Me: "the system" is broken and needs reformation, and I finally have a chance to fix it for everyone. 4:05 PM

Meagan Vance: I didn't know what the hell I was doing a couple of years ago. Now I have a knowledge base and know what to do to change a specific area. I'm interested in changing what I have knowledge in and not getting involved in situations that I am ignorant on 4:06 PM

Meagan Vance: And to pursue learning other skills as a hobby 4:07 PM

Meagan Vance: That seems the most productive in living a meaningful life. 4:08 PM

Meagan Vance: Do what you can to be productive in making needed change 4:09 PM

Me: I agree, and it was the life I wanted for you. However you abandoned your obligations, and refused to fix the situation you caused, and caused more of them 4:10 PM

Meagan Vance: I've had some experience in getting into a field and adding a lot to it for the better. I realized I am smarter than most in this field, so I continue to try to add to it 4:11 PM

Me: So dont be surprised if you get caught in the cross fire, when I start to look to the feds for corruption, especially involving institutions were involved with 4:12 PM

Me: I've realized that I'm smarter than most everyone else, but at the end of the day you're productivity, is limited to access to productive capital. 4:13 PM

Me: *your 4:13 PM

Me: Unfortunately the city and state prefers funding "girls only boxing gloves", and social media apps (that I worked on) rather than 3d printed robotic prosthesis 4:15 PM

Meagan Vance: I have made a lot of silly mistakes in personal life but I am doing what I can to Change the world now. I respect your passion and work ethic. 4:16 PM

Meagan Vance: I'm disinterested in wasting time emotionally and am a workbot for others 4:18 PM

Me: Yeah, i was going to be working on adding QR codes to the parking tickets for doing a mobile app. Now Im just going to include the PDC in the racketeering case 4:19 PM

Me: Wow, that's different. 4:19 PM

Meagan Vance: Pdc? 4:19 PM

Me: Portland Development Comission. 4:20 PM

Meagan Vance: I'm not sure what that is 4:20 PM

Me: Kitzhaber is under FBI investigation for public corruption, and it goes much further than kitzhaber, but to alot of other political appointees as well. 4:21 PM

Meagan Vance: Sounds messy 4:21 PM

Meagan Vance: As for changing institutions, go for it 4:21 PM

Me: It is kind of messy, because it includes the Clinton Global Initiative as well, right when hillary is also under investigation *bernie sanders 2016* 4:22 PM

Meagan Vance: I just want to keep making change in my field, and in open to using each other as professional resources if needed. I'm not knowledgeable or useful with politics though 4:22 PM

Meagan Vance: Yea, I don't trust Hilary 4:23 PM

Meagan Vance: Pro bernie 4:23 PM

Me: Quite frankly, your still on my shit list, and have not redeemed yourself. So while knowledge is freely given, retribution is still on the table as well. 4:24 PM

Meagan Vance: I'm excited because I think our generation is gaining more political control. My political views most match with sanders 4:24 PM

Meagan Vance: A shit list sounds very unnecessarily negative 4:24 PM

Me: What you did was unnecessarily negative. im sure you're also aware your friends were trying to doxx our pornography to the world as well right? 4:25 PM

Meagan Vance: I got some twitter message about porn 4:26 PM

Me: well, mighty convenient that they show up whenever I mention corruption or feminism. Then resort to blackmail and harassment tactics, just like youve also done 4:28 PM



Beardmosexual @Beardmosexual · 40m
#GamerGate
It's about ethics in doxxing and blackmail.

Stay on that ethical highhorse @tsolgp

Have fun. =]
Show less

Beardmosexual
9:19:20
"I want everyone to have a voice without being silenced"

Oh, you mean like how you planned to silence Endomorphosis with files you found while digging into his personal life on a personal vendetta?

Yeah, no hypocrisy there.

You really are a detestable piece of fucking shit. Ever since you called me into that goddamn hangout and showed me that shit, I've had to deal with it. YOU BROUGHT ME INTO THIS SHIT, and I fucking hate you for it. You have made me an accessory to your fucking crime, and I'm not gonna rest until you fucking admit to it, and fucking openly apologize to Endo for trying to fuck his life up. Myself for including me in it, and the 8 or 9 others you've also dragged into this.

The fact you try to take some fucking moral high ground saying 'GG is only about 'ethics' while being unethical enough to dig into someone's personal life, finding dirt, spreading that to people you KNOW detest him, and then trying to shift blame on ME for calling you out on it fucking astounds me. You have zero fucking introspective ability. Either that, or you're a fucking sociopath. Yeah, fuck you.

To add to all that, you KNEW I hate Endo with a burning passion. I'm half convinced you even pulled me into this because you expected me to post it so you could shift the blame, much as you're attempting to do now. Here's the thing though; I'm actually an ethical guy, and wouldn't wish this on my worst enemy. That's why I told Endo everything, how you got to the files, what you spread, how many people you showed, what you were planning to use it for, all of it.

7/10/2015
beardmosexual - Twitter Search



Appendix Page 17

8/10/13                                    Nicholas Gunzburg - Messages

yea

ive been racticing it actually

if hes whined about stupid stuff about simple decisions he disagrees with, i tell him hes being an asshole and to come back to me when hes not

and i make my own decisions anyway

or i just keep saying its not a big deal when he disagrees with a simple decision

i mean, ive always tried everything, but i have a lot more strength with friends and counseling to not cower

and i wont to this

ill tell him the gift is only if i come alone

 **Nicholas Gunzburg**                                    4:50pm
Counseling is good yeah.

 **Meg Pants**                                    4:50pm
counseling is great

i also need to get my kids guitar from my parents house

im perfectly ok with skyping him for a few minutes everynight to tell him about my adventures in ohio

so i can share my trip with him because i want to

but not have him ruin it

 **Nicholas Gunzburg**                                    4:51pm
Yeah

 **Meg Pants**                                    4:52pm
i know youre fed up with him

thanks for still being around even if ive been taking him back

i dont talk to many of my old friends because i keep going back to him

i understand the frustration

 **Nicholas Gunzburg**                                    4:53pm
Yeah, but it's your life and your decision, and only you have the full picture

 **Meg Pants**                                    4:53pm
yea

honestly

im the physical abuser

i emotionally abuse too

i was the first one to cheat

its not just him

Appendix Page 18

8/10/13                                     Nicholas Gunzburg - Messages

i play the victim a lot in my life

i cower when its not needed, and attract dominant people that want to dominate

i give too much

 **Nicholas Gunzburg**                                                      4:54pm
But at the end of the day people see you as a good person

 **Meg Pants**                                                             4:54pm
those are things i need to work on

thanks

well

some of his friends see him as the good person and me as the crazy one

which i think is bullshit, but w/e


victim blaming, anyone?

i had a friend side with him when i was posting about how he restrained me

 **Nicholas Gunzburg**                                                      4:56pm
Being friends with Ben isn't much credibility to stand on alone

 **Meg Pants**                                                             4:56pm
she was both of our friend

until i got paranoid about her

jealousy

so now im the discredited one to her

i mean, i just cut her out of my life

 **Nicholas Gunzburg**                                                      4:57pm
Can win everyone I guess

 **Meg Pants**                                                             4:57pm
and i dont care what he says to friends

not too much

he has a right to be heard

he doesnt have a right to perform domestic violence in public and to not go to jail

 **Nicholas Gunzburg**                                                      4:58pm
Yeah

 **Meg Pants**                                                             4:59pm
anyway

i guess ill wait until weds counseling. i dont want a fight here

and ill let you know

Appendix Page 18

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR
WASHINGTON COUNTY

THE STATE OF OREGON,

Plaintiff,

v.

BENJAMIN JAY BARBER,

Defendant.

Case No. 16CR46339

JURY INSTRUCTIONS

## FUNCTIONS OF THE COURT AND JURY

It is your sole responsibility to make all the decisions about the facts in this case. You must evaluate the evidence to determine how reliable or how believable that evidence is. When you make your decision about the facts, you must then apply the legal rules to those facts and reach your verdict.

Remember, however, that your power to reach a verdict is not arbitrary. When I tell you what the law is on a particular subject or tell you how to evaluate certain evidence, you must follow these instructions.

Do not allow anything I have said or done during the course of this trial to suggest that I have formed any opinion about this case.

Keep in mind that a judge is required by law to give certain instructions in every criminal case.

When I have sustained objections to evidence, or ordered that evidence be stricken or excluded from your consideration, you must follow these rulings. Do not consider such matters during your deliberations. Base your verdict on the evidence and these instructions. The lawyers' statements and arguments are not evidence. If your recollection of the evidence is different from the lawyers' recollection, you must rely on your own memory.

In deciding this case, you are to consider all the evidence you find worthy of belief. It is your duty to weigh the evidence calmly and dispassionately and to decide this case on its merits. Do not allow bias, sympathy, or prejudice any place in your deliberations. Do not decide this case on guesswork, conjecture, or speculation.

Do not consider what sentence might be imposed by the court if the defendant is found guilty.

Generally, the testimony of any witness whom you believe is sufficient to prove any fact in dispute. You are not simply to count the witnesses, but you are to weigh the evidence.

**Page 1 - Jury Instructions**

**Case #: 16CR46339**

Keep in mind that each party is entitled to the considered decision of each juror. Therefore, you should not give undue weight to another juror's notes or memory if they conflict with your recollection of the evidence.

The court has provided written jury instructions for your use. When you use these instructions, do not place undue emphasis on any particular instruction, but rather view the instructions as a whole.

### INNOCENCE OF DEFENDANT--PROOF BEYOND A REASONABLE DOUBT

The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt.

The burden is on the state to prove the guilt of the defendant beyond a reasonable doubt.

Reasonable doubt is doubt based on common sense and reason. Reasonable doubt means an honest uncertainty as to the guilt of the defendant. Reasonable doubt exists when, after careful and impartial consideration of all the evidence in the case, you are not convinced beyond a reasonable doubt that the defendant is guilty.

### DEFENDANT'S STATEMENTS

When a witness testifies about statements made by the defendant, you should consider such testimony with caution.

In reviewing such testimony, you should consider, among other things, the following:

(1)    Did the defendant make the statement, and, if so, did the defendant clearly express what he intended to say?

(2)    Did the witness correctly hear and understand what the defendant said?

(3)    Did the witness correctly remember and relate what the defendant said?

(4)    Did the witness intentionally or mistakenly alter some of the words used by the defendant, thereby changing the meaning of what was actually said?

If, after weighing such factors, you conclude that the defendant said what he intended to say and that the witness to the statement correctly understood, remembered, and related to you what the defendant said, then you are authorized to consider such statements for what you deem them to be worth.

### EVALUATING WITNESS TESTIMONY

The term witness includes every person who has testified under oath in this case. Every witness has taken an oath to tell the truth. In evaluating each witness's testimony, however, you may consider such things as:

(1)    The manner in which the witness testifies.

(2)    The nature or quality of the witness's testimony.

(3)    Evidence that contradicts the testimony of the witness.

(4)    Evidence concerning the bias, motives, or interest of the witness.

**Page 2 - Jury Instructions**                                    Case #: 16CR46339

## INFERENCES

In deciding this case you may draw inferences and reach conclusions from the evidence, provided that your inferences and conclusions are reasonable and are based on your common sense and experience.

## DIRECT OR CIRCUMSTANTIAL EVIDENCE

There are two types of evidence. One is direct evidence--such as the testimony of an eyewitness. The other is circumstantial evidence--the proof of a chain of circumstances pointing to the existence or nonexistence of a certain fact. You may base your verdict on direct evidence or on circumstantial evidence, or on both.

## CRIMINAL CHARGE

In this case, the defendant is charged seven (7) separate counts of the crime of Unlawful Dissemination of an Intimate Image.

The defendant has entered a plea of not guilty to these charges. A plea of not guilty is a denial of every fact alleged.

## UNLAWFUL DISSEMINATION OF AN INTIMATE IMAGE

A person commits the crime of unlawful dissemination of an intimate image if the person, with the intent to harass, humiliate or injure another person, knowingly causes to be disclosed through an Internet website an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct; the person knows or reasonably should have known that the other person does not consent to the disclosure; the other person is harassed, humiliated or injured by the disclosure; and a reasonable person would be harassed, humiliated or injured by the disclosure.

In this case, to establish the crime of unlawful dissemination of an intimate image, the state must prove beyond a reasonable doubt the following elements:

1. The act occurred on or between January 1, 2016 and June 21, 2016
2. Benjamin Jay Barber knowingly caused images to be disclosed through an Internet website;
3. The images were identifiable images of Meagan Vance, whose intimate parts were visible and/or who was engaged in sexual conduct;
4. Benjamin Jay Barber knew or reasonably should have known that Meagan Vance did not consent to the disclosure;
5. Benjamin Jay Barber intended to harass, humiliate, or injure Meagan Vance;
6. Meagan Vance was harassed, humiliated, or injured by the disclosure; and
7. A reasonable person would be harassed, humiliated, or injured by the disclosure.

## NONEXPERT OPINION EVIDENCE

Although a witness may be allowed to state his or her opinion, you are not required to accept that opinion. To determine what value, if any, you will give to a witness's opinion you should consider such things as the witness's opportunity and ability to form the opinion, the witness's believability, and how the witness reached the opinion.

**Page 3 - Jury Instructions**                                          **Case #: 16CR46389**

## INTENTIONALLY AND WITH INTENT

A person acts "intentionally" or "with intent" when that person acts with a conscious objective to cause a particular result or engage in particular conduct.

## KNOWINGLY AND WITH KNOWLEDGE

A person acts "knowingly" or "with knowledge" if that person acts with an awareness that his or her conduct is of a particular nature or that a particular circumstance exists.

Knowledge is also established if a person acts intentionally.

## DEFINITIONS

*Disclose* includes, but is not limited to, transfer, publish, distribute, exhibit, advertise and offer.

*Image* includes, but is not limited to a photograph, film, videotape, recording, digital picture and other visual reproduction regardless of the manner in which the image is stored.

*Intimate parts* mean uncovered human genital, pubic areas or female nipples.

*Sexual conduct* means sexual intercourse or deviate sexual intercourse or masturbation.

*Sexual intercourse* has its ordinary meaning and occurs on any penetration, however slight; emission is not required.

*Deviate sexual intercourse* means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another.

## VERDICT

When you return to the jury room, select one of your members to act as presiding juror. The presiding juror has no greater voting weight but is to preside over your deliberations and be the spokesperson for the jury. You should then deliberate and find your verdict.

If it becomes necessary during your deliberations to communicate with me, do so in writing. I will consult with the parties before responding.

No one except for you, the jurors, is to be involved in your deliberations. Therefore, do not to tell anyone, including me, how many of you are voting not guilty or guilty until you have reached a lawful verdict or have been discharged.

This being a criminal case, each and every juror must agree on your verdict. When you have arrived at a verdict, the presiding juror will sign the appropriate verdict form.

After you have reached your verdict, signal the bailiff. The court will then receive your verdict.

**Page 4 - Jury Instructions**                                   Case #: 16CR46339

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                 FOR THE COUNTY OF WASHINGTON

6   STATE OF OREGON,                )   No. 16CR46339
                                    )
7                  Plaintiff,       )   DEFENDANT'S PROPOSED
                                    )   WITNESS LIST
8        vs.                        )
                                    )
9   BENJAMIN JAY BARBER,            )
                                    )
10                 Defendant.       )

11       The Defendant reserves the right to call the following witnesses at trial in the

12  above captioned case:

13       Benjamin Barber, Defendant.

14       Defendant also reserves the right to call any witnesses named in the State's

15  discovery or called during the State's case in chief.

16       DATED this ____ day of _____, _____.

17

18

19                              _____
                                Cameron Taylor, OSB # 154324
20                              Attorney for Defendant

21

22

23

24

25

26

12/1/2016                                    from a real couple - starworks5@gmail.com - Gmail

>>>>>>>> >> >> >> > wrote:
>>>>>>>> >> >> >> >
>>>>>>>> >> >> >> >> Are yu interested in meeting up tonight 9713227885
>>>>>>>> >> >> >> >> On Jan 7, 2011 6:41 PM, "allie yoder"
>>>>>>>> >> >> >> >> <allieyoder.12.92@gmail.com
>>>>>>>> >> >
>>>>>>>> >> >> >> wrote:
>>>>>>>> >> >> >> >> > Hi you guys:
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > my man is uber smart too
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > high achiever and a 188 IQ
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > saw a craigslist add..sounds good. here we are on a
>>>>>>>> >> >> >> >> > Friday nite
>>>>>>>> >> >> after
>>>>>>>> >> >> >> a
>>>>>>>> >> >> >> >> > lame night out..
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > We live here in the city..but will drive to U or U to
>>>>>>>> >> >> >> >> > us..we are
>>>>>>>> >> a
>>>>>>>> >> >> fun
>>>>>>>> >> >> >> >> > cple..It WILL be worth responding to me!!
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > I am an 18 yo bi 4'11 and Josh is 22 and 6' and very
>>>>>>>> >> >> >> >> > sexy.
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > he has a thick cock but I am tiny 88 pounds and have a
>>>>>>>> >> >> >> >> > little
>>>>>>>> >> bod.
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > we have lots of pics and a video or two
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > tell us about yourselves.
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > let me know if you might be interested.
>>>>>>>> >> >> >> >> >
>>>>>>>> >> >> >> >> > allie
>>>>>>>> >> >> >> >>
>>>>>>>> >> >> >>
>>>>>>>> >> >>
>>>>>>>> >>
>>>>>>>
>>>>>>
>>>>>
>>>>
>>>
>>
>
>

 . <starworks5@gmail.com>                                          1/13/11
to meggers327

---------- Forwarded message ----------
From: allie yoder <allieyoder.12.92@gmail.com>
Date: Fri, Jan 7, 2011 at 9:41 PM
Subject: Re: from a real couple
To: "." <starworks5@gmail.com>

Just saw pics of U2 ..you are both sooo amazing....U are sexy

what is U and UR wives / gf's name...I am bi .....is she??

Josh is straight

Appendix Page 25

12/1/2016                          from a real couple - starworks5@gmail.com - Gmail

We are interested in a full swap and with us anything goes....even no
condoms  (we were recently tested and have the docs docs toprove..  I
have a student ID and my DL to prove age.

When you f me, I become a wild child.

here is some more of us

Josh is a college grad in business and a small business owner.  I
think U 2 would have a lot in common.   He and I love to mountain bike
and we do raod rallies in his BMW...great fun

been dating since I was 13 and we live together now.   I turned 18 on
December 29th.

I sent out a bunch of replies tonight and am a little unclear. about
U@  tell me more

You are so hot..when are U free?

talk soon

allie

On Fri, Jan 7, 2011 at 11:24 PM, . <starworks5@gmail.com> wrote:
>
> Are yu interested in meeting up tonight 9713227885
>
> On Jan 7, 2011 6:41 PM, "allie yoder" <allieyoder.12.92@gmail.com> wrote:
> > Hi you guys:
> >
> > my man is uber smart too
> >
> > high achiever and a 188 IQ
> >
> > saw a craigslist add..sounds good. here we are on a Friday nite after a
> > lame night out..
> >
> > We live here in the city..but will drive to U or U to us..we are a fun
> > cple..It WILL be worth responding to me!!
> >
> > I am an 18 yo bi 4'11 and Josh is 22 and 6' and very sexy.
> >
> > he has a thick cock but I am tiny 88 pounds and have a little bod.
> >
> > we have lots of pics and a video or two
> >
> > tell us about yourselves.
> >
> > let me know if you might be interested.
> >
> > allie

---

**14 Attachments**                                                    

Gmail virus scanners are temporarily unavailable - the attached files haven't been scanned for viruses. Please
download these files at your own risk. Learn more

---

 . <starworks5@gmail.com>                                    ✉ 1/13/11
to meggers327

---------- Forwarded message ----------
From: allie yoder <allieyoder.12.92@gmail.com>
Date: Fri, Jan 7, 2011 at 10:39 PM
Subject: Re: from a real couple

Appendix Page 25

Appendix Page 26

12/1/2016 from a real couple - starworks5@gmail.com - Gmail

maybe sometime...Josh asks..can we trde pics? vids

have a sfe trip

hope U enjoyed paris

 . <starworks5@gmail.com>
to allie

1/8/11  

I guess we just missed the orgy that happened at the paris, and were there all alone for an hour, with a crowd of guys staring at us intently. also we messed up the clone a willy kit, because the molding powder set too quickly, what rotten luck. I have several HD videos of us if you guys would like, I have an FTP server on the internet where they can be uploaded to.

Josh seems interesting, is he in the SCCA, I used to participate in rally cross when i was younger. Also I'm intrigued by his 188 iq, as I've been dramatically on the higher iq side. I consider myself a compulsive learner and exercise fiend, who stumbed upon buddism during the SE asian tsunami experience. What kind of business does he own, my last girlfriend was an MBA in marketing, and I've specialized in mostly marketing and E-commerce with my computer science degree. And i understand his fantasy, being that albinos are 1/20,000 and swingers are 2% of the population, makes her a one in a million ;-).

I met meagan on okcupid, she sent me a message saying that i was everything she was looking for in a man. I visted her in bowling green for 3 weeks in november, and then she came over here for over 3 weeks in early December. I'm now trying to see if i can secure a job in ohio, working remote web design at a columbus firm, from a former roommate of my intel bike racing female friend (she's amazing too). me and meagan were interested in getting to know you both in a non-intimate capacity as well, her email address is meggers327@yahoo.com

 . <starworks5@gmail.com>
to allie

1/9/11 

So, I uploaded one video last night, but the rest seemed to time out. I'll try to add more soon.

here are the details

ftp.barberb.net
user: anon@barberb.net
password: anon

 . <starworks5@gmail.com>
to allie

1/9/11

lets try this again.

in explorer go to ftp://www.barberb.net
user: anon@barberb.net
password: anon

www.barberb.net/files/video-2011-01-04-10-14-09.mp4
www.barberb.net/files/video-2011-01-06-13-38-32.mp4

 . <starworks5@gmail.com>
to allie

 1/9/11 

On Sun, Jan 9, 2011 at 7:09 PM, . <starworks5@gmail.com> wrote:
  lets try this again.

  in explorer go to ftp://www.barberb.net
  user: anon@barberb.net
  password: anon

Appendix Page 26

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
# FOR THE COUNTY OF WASHINGTON

ARRESTEE: **Barber, Benjamin Jay**

BOOKING NUMBER: 16-0369

DATE OF ARREST: **07-17-2016**

TIME OF ARREST: **10:14am**

STATE OF OREGON

County of Washington

)
)
)
)
)
)
)

)
) ss.
)

**Affidavit in Support of
Probable Cause Arrest**

I, **Thomas Duenas; DPSST 31390** , am a police officer with the Washington County Sheriff's Office. I have arrested the person named as the arrestee above for the crime or crimes of **Unlawful Dissemination of an intimate image**.

The reasons for the arrest appear below in the statement of facts. I have personally observed the facts or they were relayed to me by the people whose names and addresses appear in the statement. If the person is a police officer, the officer's name and agency appear.

The crime or crimes occurred within Washington County on *(date)* **04-01-16** at *(time)*    at this location: **8665 SW Canyon Ln. #21 Beaverton OR. 97225**.

The alleged victim is **Vance, Meagan A. (06-30-90)** , *(telephone)* **503-354-7812** *(address)* **8665 SW Canyon Ln #21 Beaverton OR. 97225**; relation to arrestee:    Victim notification ☐ **is** ☒ **is not** required.

**Statement of Facts:**
On 06-22-16 Meagan Vance reported that her ex-husband, Barber, Benjamin Jay, posted videos of them having sex over several porn sites. Meagan said she is a teacher and that the videos may impact her career. She said that she is embarrassed and that Benjamin did not have permission to post the videos. Meagan said that Benjamin threatened to ruin her and she believes that he is trying to get revenge. I viewed the sites and verified that the videos showed her in an intimate act.

On 06-22-16 I was contacted by Benjamin over the phone. He said that he posted the videos on only two or three sites back in February of March of this year. Benjamin said that Meagan accused him of raping her and ruining all of his relationships. He said he lost a year of his life because of her.

I arrested Benjamin on 07-17-16 and lodged him at the jail.

**Police Officer: Thomas Duenas**

Signature: _____    DPSST #: **31390**

SUBSCRIBED AND SWORN to before me this date: 07/17/16 .

Swearing Officer: _____    DPSST #: 46631 .
**Washington County Sheriff's Office**

INVASION OF PERSONAL
PRIVACY

Appendix Page 28.

# Washington County Sheriff's Office
## DISTRICT ATTORNEY RELEASE

On or about 8/29/16, I received via inter-office mail a packet of paperwork from Duenas. He told me that he had received it from Washington County Deputy District Attorney M. Atwood ("Atwood") and that after I reviewed it, I should place it into evidence.

**Telephone Contact with DDA Marie Atwood**

On the afternoon of 8/30/16, I spoke with Atwood. She told me that she had received the paperwork during a meeting with Meagan and her attorney on 7/26/16 at 3pm. I reviewed the paperwork and saw that it included screenshots of videos posted by Barber. One page was a list of links to videos posted by Benjamin on several web sites.

I later placed the paperwork into evidence as item #3 on PER #167251.

**Web Research**

One of the pages in the paperwork provided by Meagan to Atwood was a list of web sites where she still saw videos of her and Benjamin. I worked my way down the list and documented my findings at each web site.

Where appropriate and noted below, I took screenshots on the various pages to document my findings. Since these photos cannot be entered into our records management system, I printed them to a paper copy and submitted the paper copy into evidence. [See item #2 on PER #167251 for full details.]

Information posted at ███████████████████████ makes it clear that users may not use the web site to break any laws.

The information posted at http:███████████████████ asks people who have had pictures or videos of them uploaded without their consent to email pornhub.com to have it removed.

Pornhub appears to be part of the MGFREESITES LTD group, which is headquartered in Cyprus. Legal process is accepted through CT Corporation System. Their legal counsel is Chantale Pittarelli ████████████████

[See screenshot in paperwork submitted into evidence as item #2 on PER #167251.]

On 8/30/16 at 4:35pm, I went t ████████████████████ and saw that Benjamin's profile was still active. The profile shows him to be a 31-year-old heterosexual male in Portland, Oregon. It showed his last login to be two months ago.

[See screenshots in paperwork submitted into evidence as item #2 on PER #167251.]

PRINTED ON: 09/07/2016   PRINTED BY: 43824

(345218) 0026
VERSION: 160901.1

INVASION OF PERSONAL
PRIVACY

Appendix Page 29.
# Washington County Sheriff's Office
## DISTRICT ATTORNEY RELEASE

**CASE NUMBER**
**GO 50 2016-161740492**

The profile shows two videos still online. They were both labeled "albino porn." One showed to be 16:01 in length (viewable at ████████████████████████ and had 2,464 views. The other one showed to be 18:46 in length (viewable at ████████████████████████ and had 1,771 views.

On 8/30/16 and 8/31/16, I downloaded the videos to preserve them. Once downloaded, the second one showed to be 18:45 in length. Both videos depict what appears to be consensual sex between Benjamin and Meagan in a bedroom. In the second one, Meagan appears to be tied up.

I later put them on a DVD and into evidence as item #1 on PER #167251.

████████████████

Redtube.com appears to be associated with pornhub.com. I was not able to locate any law enforcement/legal contact information for www.redtube.com, but ████████████████ is the support email address.

On 8/31/16 at 9:45am, I went to ████████████████████ The profile showed Benjamin to be a 31-year-old man with an interest in men. It shows him to be in Newberg, Oregon. It shows his last logon to be five months earlier.

It showed the following four active videos, all labeled "albino porn:"
1.  The first video (viewable at ████████████████ was added 4/6/16. It is 21:25 in length and had 586 views;
2.  The second video (viewable at ████████████████ was added 4/6/16. It is 16:01 in length and had 487 views;
3.  The third video (viewable at http ████████████████ was added 4/6/16. It is 18:46 in length and had 1,009 views;
4.  The fourth video (viewable at ████████████████ was added 4/6/16. It is 21:00 in length and had 506 views;

[See screenshot in paperwork submitted into evidence as item #2 on PER #167251.]

I downloaded the videos to preserve them. The videos appear to depict consensual oral and vaginal sex in a bedroom.

I later put them on a DVD and into evidence as item #1 on PER #167251.

## PORN.COM

There is no legal/law enforcement contact information listed for porn.com on ████████████████████████

On 8/31/16 at 11:33am, I went to ████████████████████ It showed that barber joined five months ago.

[See screenshot in paperwork submitted into evidence as item #2 on PER #167251.]

PRINTED ON: 09/07/2016    PRINTED BY: 43824

**(345218) 0027**
VERSION: 160901.1

8/8/16

RE: State v. Barber, 16CR46339

Statement of Meagan Vance:

     I have several concerns about my safety if Benjamin Barber is released. Benjamin has a history of harassing me and threatening my safety, which has continued since this case has begun. Benjamin was strongly emotionally abusive to me in our relationship from 2010-2013, involving harassment and even physical abuse if I did not do what he wanted. When I left him in 2013, he began a downward spiral into believing that feminism brainwashed me; he threatened to follow me across the country and he was arrested for trespassing at feminist conferences. Benjamin promised to try to damage my life as much as possible since I left him in late 2013, and his actions since show that he continues to try to cause me harm.  For example, he has purchased the domain names with my full name and since this case started, he has emailed, to my work email, links to the intimate images he posted of me.

     Additionally, I strongly believe that Benjamin has a mental illness, causing him to believe that I am responsible for his struggles in life since I left. For example, when Benjamin found out that I had made a report to police, he sent me repeated emails and called my boyfriend asking if I was going to still 'attack' him by going through with the case. Benjamin has a history of finding my address and other personal information through the internet. I am concerned that as he continues to believe I am hurting him because I reported this crime, his actions will continue to spiral downward into showing up at my home or work.



DEFENDANT'S EXHIBIT
130
16CR46339



R. Rookhuyzen - D                              391

1        A     I asked for -- you know, we just talked

2    about Thumbzilla, for example.  I asked for all the

3    IP addresses and they didn't provide that.  They

4    provided, you know, information about when videos had

5    gone up, when some of them had been deleted.  They

6    provided, you know, when the user accounts were made,

7    but all in all, it was not 100-percent responsive.

8        Q     Is that surprising at all to you?

9        A     It's unusual.

10        Q     Why?

11        A     Usually, when we provide a -- a business

12    with a search warrant, they provide the information

13    that's in there.

14        Q     At what point, I guess, as -- as far as the

15    timeline is concerned, did you get the search

16    warrants executed and how long was it before you

17    received any information back about them?

18        A     So I -- I -- let me check my notes.  So the

19    warrants were signed by Judge Upton on October 11th.

20    And I hadn't heard anything back by Halloween, so I

21    started e-mailing, following up and then I started

22    getting some e-mail responses.

23        Q     So based on your experience as a deputy and

24    a corporal and now a detective and your independent

25    investigation into this case, did you believe a crime

## Robert Rookhuyzen

| | |
|---|---|
| **From:** | Joyce Carestia <Joyce.Carestia@mindgeek.com> |
| **Sent:** | Monday, October 31, 2016 10:23 AM |
| **To:** | Robert Rookhuyzen |
| **Cc:** | Chantale Pittarelli |
| **Subject:** | RE: Pornhub Investigation |

Dear Detective:

Note that Thumbzilla is just a mirror of Pornhub therefore the user information recorded is the same, see below:

USER : barberb
starworks5@gmail.com
Registered: 2014-03-31 02:17:30 UTC

The status deleted ones were all deleted by the uploader.

| Thumb | Status | Uploaded | Privacy | Length |
|---|---|---|---|---|
| albino porn | Deleted | 04/21/2016 06:56 U<br>04/21/2016 02:56 E | Private | 18:46 |
| albino porn | Deleted | 04/21/2016 06:56 U<br>04/21/2016 02:56 E | Private | 16:01 |
| albino porn | Deleted | 04/21/2016 06:56 U<br>04/21/2016 02:56 E | Private | 21:25 |
| albino porn | Deleted | 04/21/2016 06:55 U<br>04/21/2016 02:55 E | Private | 21:00 |
| albino porn | Deleted | 04/19/2016 21:22 U<br>04/19/2016 17:22 E | Public | 21:25 |
| albino porn | Deleted | 04/19/2016 21:22 U<br>04/19/2016 17:22 E | Private | 18:46 |
| albino porn | Deleted | 04/19/2016 21:21 U<br>04/19/2016 17:21 E | Public | 16:01 |
| albino porn | Deleted | 04/19/2016 21:21 U<br>04/19/2016 17:21 E | Public | 21:00 |
| albino porn | Deleted | 03/21/2016 09:22 U<br>03/21/2016 05:22 E | Public | 21:25 |
| albino porn | Deleted | 03/21/2016 08:00 U<br>03/21/2016 04:00 E | Public | 21:00 |
| albino porn | Active | 03/21/2016 06:19 U<br>03/21/2016 02:19 E | Public | 16:01 |
| albino porn | Active | 03/21/2016 05:16 U<br>03/21/2016 01:16 E | Public | 18:46 |

Ip addressed if any, shall be disclosed with the nex6t email containing Redtube information.

Kind Regards,

*(handwritten notes:)*

Thumbzilla email 1

2\
April
(19)

march
21

See transcripts pg

this is missing from discovery + not produced by defense in post conviction Relief, who should have been produced by the DA

Appendix Page 33.

INVASION OF PERSONAL
PRIVACY

# Washington County Sheriff's Office
## DISTRICT ATTORNEY RELEASE

CASE NUMBER
**GO 50 2016-161740492**

## FOLLOWUP REPORT #1

| ASSIGNED TO | RANK |
|---|---|
| DUENAS, TOM (31390) | DEPUTY |

| ORG UNIT | CAPACITY |
|---|---|
| PATROL | INVESTIGATOR |

| ASSIGNED ON | ASSIGNED BY | SUBMITTED ON | APPROVED ON | APPROVED BY |
|---|---|---|---|---|
| 06/27/2016 | DUNN, SHAWN | 07/13/2016 | 07/13/2016 | PHILLIPPI, ROBERT |

## NARRATIVE

| AUTHOR | DATE/TIME |
|---|---|
| DUENAS, TOM (31390) | 07/13/2016 0917 |

SUBJECT
BARBER BENJAMIN JAY

```
MENTIONED:
Cpl. Schmid   DPSST#28217    WCSO
```

SUMMARY:
Meagen Vance reported that her ex-husband, Benjamin Barber, uploaded videos
of them having sex to porn sites. She believed that he did this to get back
at her. Benjamin spoke with me over the phone and admitted that he did it
because he was angry with her.

NARRATIVE:
On 06-22-16, at approximately 11:21am, Meagen Vance reported that her
ex-husband, Benjamin Barber, had uploaded videos of them having sex to porn
sites. She gave me the names of the porn sites. I verified that the videos
were on the sites and that she could be seen on them. Meagen told me that
the name or handle for the account was barberb. Which is a handle that
Benjamin has used for years. I did find barberb accounts on the porn sites.

Meagen is a teacher and believes that the videos will have an adverse
effect on her job not to mention the embarrassment she feels. Meagen
advised that they had an agreement that the videos would not be used in
this manner.

We tried to contact Benjamin on the phone by text and calling on 06-24-16
and 06-25-16. I drove to an address that was listed as his but I could not
locate him. Benjamin did not return the phone calls. He did briefly answer
the text messages but only to identify himself and acknowledge Meagen.

On 06-26-16 at approximately 1:39pm Benjamin called dispatch to contact me.
I called him back on the phone. I identified him by asking his full name
and date of birth. Benjamin first asked about this issue being civil and
that she (Meagen) follows him online. I asked if there was an agreement not
to post the videos online when they were made. He said that was not their
agreement. I asked why he would post the videos. According to Benjamin,
Meagen has accused him of raping her and ruined all of his friendships.

He told me that he got an email about a digital copyright from her after he
posted the videos. I asked if he was angry and wanted to get back at her.

Appendix Page 34.
# Washington County Sheriff's Office
## DISTRICT ATTORNEY RELEASE

He blamed her for being homeless and ended up losing everything because she accused him of raping her.

He told me that he first posted the videos in February of March. He continued to tell me that he was tired of being homeless because of her and that he lost a year of his life.

I asked if those were the reasons that he put the videos on the porn sites. He responded that he basically did it because she accused him of being a rapist. I asked if he was aware that she was now a teacher. He said he was. I asked if he put the videos out there, knowing that. He said "yes". I asked if he thought that the videos might humiliate or embarrass her. He told me that the did the nude bike ride. I asked him if there were only the 4 videos and he told me that was "correct". I told him that Meagen gave me about 7 sites that the videos were on. He told me that he only put them on two or three.

I asked if there was an account name that he used to post the videos. He said he "probably" used "barberb". He told me that he understood if she was humiliated and that he didn't want there to be any drama but her friends at the time didn't help. He posted it because of the pain and suffering she caused him.

 He admitted that it may be embarrassing to her but he did not gain anything when he posted the videos.

He also told me to arrest him if that was what I was going to do. He was worried about losing his job if he missed work. He was scared because he was jobless for a long time. I tried to make arrangements to meet but he didn't want to meet until the following week. He then told me that he believed the Constitution protected his right to free speech and this was a form of free speech. We then made an agreement to turn himself him on 07-15-16 at East Precinct. Before we hung up the phone he wanted me to know that he did not share any of the videos with her friends.

We ended our conversation with the understanding that he would not contact Meagen or the DA's office.


ACTION RECOMMENDED:

Cleared Pending

T. Duenas - X                          348

1       Q    All right.  So fair to say, your reports

2    that you're testifying from are missing some facts

3    about this case?

4       A    They're missing that -- what were in the

5    links.  That's what they're missing.

6       Q    I mean, they don't even make reference of

7    any e-mails?

8       A    The e-mails he sent me, I think, were after

9    the arrest.  No, I take it back.  The e-mails he sent

10   me were after our discussion on the 26th.

11      Q    And the e-mails refer to him turning

12   himself in to you --

13      A    Correct.

14      Q    -- at a later date?

15      A    Correct.

16      Q    All right.  So during the pendency of this

17   case, lots of e-mails.  Nothing came of them?

18      A    Yeah, I didn't read them.

19      Q    All right.

20      A    I'm sorry I didn't click on the links.

21      Q    Were you interested in hearing Mr. Barber's

22   side of the story?

23      A    I -- I was very interested in hearing his

24   side of the story.  But I want to hear it from him,

25   from him, not from clicking this e-mail or that

benjamin barber <starworks5@gmail.com>

Appendix Page 36

## statement

**Thomas Duenas** <Thomas_Duenas@co.washington.or.us>                    Thu, Jul 14, 2016 at 9:04 AM
To: benjamin barber <starworks5@gmail.com>

Ben,


On Friday 7-15-16 I will be in training. So we can meet today 07-14-16 or Saturday 07-16-16. As Friday does not work.


Dep. Duenas


**From:** benjamin barber [mailto:starworks5@gmail.com]
**Sent:** Monday, July 04, 2016 11:17 AM
**To:** Thomas Duenas
**Subject:** Re: statement


NSFW:

The emails of when we produced the videos for sharing, because looking because she and I were looking for a "foursome". she is CC'd

https://drive.google.com/file/d/1RE21BKYP_hnFKV8r2VaLqt1HVUDseCz1hYp72ycHhmZKx-KXmLRtUyIaNmOqhwA2AipJNa2GJO92wmSa/view?usp=sharing

https://drive.google.com/file/d/1HspGdKLfxH7MK54AdMvkqBRdgAz0kbKQHepQcaeogWVcogJn66fNsChaodQ_xIyreIKdWpMJ7ketn9vJ/view?usp=sharing

Another email where she wants me to be "the main seducer" for a threesome, and I say I want stability over kinkiness (again).

https://drive.google.com/file/d/0B_tTyqf1SRvVNmNqTHNvc3VHa1ROY24tSTJGZjVhUUw5NEpr/view?usp=sharing


On Sat, Jul 2, 2016 at 5:58 PM, benjamin barber <starworks5@gmail.com> wrote:

I know that you're busy with work and crimes, but I also had the problem of her spreading my nudes and blackmailing me, specifically because I was trying to appeal the court decision in our divorce, as well as reporting her behavior to the authorities. Instead I've had the internet filled up with garbage like I assaulted her, or I'm a rapist, or i stole from the nonprofit that I started, and also pictures of me and messages sent to my clients and friends. This combined with her interfering with my landlord / tenants, and losing the place that I was operating my business out of and that source of income, and making me lose the clients that I needed to survive with the harassment by her / her friends.

January 2011

We had these because we were doing long distance relationship originally, and also because we were interested in swinging with a couple, allie yoder and josh peer


December 2011

Appendix Page 36

Our marriage contract states that we both mutually own all assets. resolving the issue over whether we both have the license to the intellectual property.

December 2013

She tries to blackmail me into her divorce degree while under restraining order, by trying to interfere with my tenant landlord relationships.

https://drive.google.com/file/d/1EWcjQKqgecTxxhX6YgFhxjRpOdOVe39dPK4kpQ2jfl1YKYgMc_83iLh8G4YTfIkyhkqBbMK9bgHsgEX_/view?usp=sharing

im more than willing to help you out if you help me out. otherwise, i am doing whats right and whats true, which will ruin your case with sam and even with colleen and brian.

June 2014

I give her the location of all the files we had made together, while were patching things up,

https://drive.google.com/file/d/1GB008Ls9TYuhPbdeJ8ApF8PhuR6NeshJQ_0SNMSyZNgSu0GZ8EoyCmiNb4XQ3bqf7l9Q4yQKoY1XvP97/view?usp=sharing

August 2014

She tries to blackmail me unless I sign her divorce degree again while she is under restraining order.

https://drive.google.com/file/d/0B_tTyqf1SRvVeWN1dXpCQlZyUjg/view?usp=sharing

"anyway, if you arent signing the papers and showing you want to help jme out, i will be giving any statement necessary that is truthful"

"as well as getting a lawyer and going after you for fraud"

January 2015

I get harassed with naked photos of myself on that website forum.

"https://8chan.co/gamergate/res/169335.html (where he is getting porn'd)"

http://marker.to/ck4P0q

Febuary 2015

http://marker.to/StfVwS

Meagan remarks that I'm pursing legal actions against her regarding the marriage contract that we had being violated, and mentioned

He's threatening legal action against me because I am divorcing him. He's basically treated me at least as bad as he's treating the op game it forward folks.

March 2015

I file complaints regarding her living with her therapist, and am fighting her in the court case.

May 2015

at this point I have been followed around the internet and social media with false accuasations for months now with multiple accounts

http://archive.is/sCP3q

@beardmosexual -- May 19th

I can not-even start to wrap my head around how you can Conclude That Somehow my first talking to your **EX** -wife Caused someone to be harassed

You have a history of domestic abuse, and Attempted theft. Anything you-have to say on the matter is moot Given That **FACT.**

Appendix Page 38.

I get harassed with nude pictures by her friend in the "op game it forward" group mentioned above.

@beardmosexual to Robin Gething - July 10th

"oh you mean like how you planned to silence endomorphosis with files you found while digging into his personal life on a personal vendetta"

"ever since you called me into that goddamn hangout, I've had to deal with it"


"you have made me an accessory to your fucking crime, and im not going to rest until you admit it"

"thats why I told endo everything, how you got to the files, what you spread, and how many people you showed, what you were planning to use it for, all of it"

"He (admittedly very easily) got into personal files on someones website. ones that would ruin someone's personal life"

""I've been civil" Says the man holding someone's personal life in jeopardy with info he dug up and spread."

I

https://drive.google.com/file/d/0B_tTyqf1SRvVUDhvTXZyU3A1Qjg/view?usp=sharing

https://drive.google.com/file/d/10FZIix5ggZBXv-9oMlJy5gKfOKPSmt5QhdKHTN0AfPVeDNGLpf089sRnMMils2OddMGrrk0e1a
xm636w/view?usp=sharing

http://archive.is/Ybykm

@rsolgtp == her friend robin gething

https://drive.google.com/file/d/12FHt65G7bXPTA3HfPWn3CVPLAAO5Xeh4GS9MkWIRu48koJi8BJT4YW4Ine8
nEPt8BaV2Lq89bAWHxu0N/view?usp=sharing

https://drive.google.com/file/d/0B_tTyqf1SRvVZWVyMEJJWWM0T1U/view?usp=sharing

(one of many examples of their google hangout calls)

https://drive.google.com/file/d/117tmmpDn-ftVcYC6HqIZXM0D9yiQPHpniD5-MR1fAnhg7kR5RHmx41h5x9Hr_
BmFRu7Z9W1zfJavgq-Y/view?usp=sharing

The very next day after I'm told she frantically calls me, and claims she had nothing to do with it, and she wants to get back together with me, and we talk about the multitudes of false rape claims and blackmail attempts with the porn.

https://drive.google.com/file/d/15neLBgVR79n7KzbvuOszCHi7awbVHgYnBnuBhfD-v1lo3ZkIP_sMFqgY4fgSX4-mt_
TbFzhR22Qgatdq/view?usp=sharing


Me: What you did was unnecessarily negative. im sure you're also aware your friends were trying to doxx our pornography to the world as well right? 4:25 PM


Meagan Vance: I got some twitter message about porn 4:26 PM


Meagan Vance: My obligations are not a contract, which is fortunate and unfortunate. I love you and everyone else still bores me. 5:17 PM


Me: If you love me, then come back 5:17 PM        Appendix Page 38


Meagan Vance: I'd rather be in a better place between us,come back 5:18 PM

Me: Your obligations were actually in a contract, and thanks to SCOTUS its a "natural right" that cant be infringed upon by the state. *thanks SCOTUS* 5:18 PM

Appendix Page 39

On Sat, Jul 2, 2016 at 2:03 PM, benjamin barber <starworks5@gmail.com> wrote:

I know that you're busy, but I have had the same problem from her, specifically being blackmailed with the same images, because I was trying to appeal the court decision in our divorce.

January 2011

We had these because we were doing long distance relationship originally, and also because we were interested in swinging with a couple.

December 2011

Our marraige contract states that we both mutually own all property. resolving the issue over whether we both have the license to the intellectual property.

December 2013

She tries to blackmail me into her divorce degree

https://drive.google.com/file/d/1EWcjQKqgecTxxhX6YgFhxjRpOdOVe39dPK4kpQ2jfI1YKYgMc_
83iLh8G4YTfIkyhkqBbMK9bgHsgEX_/view?usp=sharing

June 2014

I give her the location of all the files we had.

August 2014

She tries to blackmail me unless I sign her divorce degree

https://drive.google.com/file/d/0B_tTyqf1SRvVeWN1dXpCQlZyUjg/view?usp=sharing

T. Duenas - ReD                                        353

1    websites that had been listed to you, did you find

2    that the posts were associated with a particular user

3    name?

4         A    Yes.

5         Q    What was the user name?

6         A    BarberB.

7         Q    And was that the same user name that he

8    later admitted to you he had posted the videos on?

9         A    Yes.

10        Q    You were asked a couple of times about

11   whether or not you recorded your interviews with the

12   defendant.  Is it common practice, in your

13   experience, to record every interview that you do?

14        A    It is not.

15        Q    And -- and why not?

16        A    First of all, we are not issued recorders,

17   so we have to make a special effort to even get one.

18   I don't carry one around.

19             I'm not issued one.  I have access to some

20   at certain precincts and I can utilize those.  But I

21   actually have to make that special effort to -- to

22   get -- get that orchestrated.

23        Q    Okay.  And in this case, when you met with

24   the defendant, he was -- he -- he turned himself in.

25   He voluntarily met you, right?

73

 1    counsel brings up in argument and in their briefing

 2    to show that this is a narrowly-tailored situation.

 3            The celebrity sex tape or Anthony Weiner

 4    argument, that if you put it out there, it's your own

 5    fault if it gets disseminated further.  Okay.  So to

 6    begin, the celebrity sex tape and the Anthony Weiner

 7    analysis kind of fails at the outset because we're

 8    talking about celebrities and public figures.

 9            So the portion of the Unlawful

10    Dissemination statute requiring that it's reasonable

11    that a person be truly harmed by this conduct could

12    fail in those situations.

13            Is it reasonable that a person who is

14    always in the public eye and constantly being

15    scrutinized and is used to every stone being

16    overturned about their private life, is it reasonable

17    for that person to feel harm from this type of

18    conduct?

19            Additionally, defense counsel makes some

20    interesting arguments that, more or less from the

21    State's perspective, amount to little more than

22    victim blaming for this type of situation.

23            If -- to say that if a person gives an

24    image to somebody, that they give up any right to be

25    offended for disseminating that image further is

The defendant is supposed to turn himself in by 7:00pm today to begin his sentence; however, due to his behavior the state has concerns that he may fail to do so. The state therefore requests that the court immediately issue a warrant and schedule a hearing for the defendant to show cause why his probation should not be revoked. Additionally, the state requests that the parties also revisit the defendant's probation conditions, altering and/or adding stricter limitations to the conditions regarding his internet and computer use. Finally, the state requests that this motion and all related hearings be heard before Judge Roberts, who imposed and discussed the terms of defendant's sentence only yesterday, and has extensive knowledge regarding the issues and facts of this case.

Marie E Atwood
Oregon State Bar #132976
Deputy District Attorney

SUBSCRIBED AND SWORN to before me this 2nd day of Dec, 2016



Notary Public for Oregon

OFFICIAL STAMP
ANN M TRACEWELL
NOTARY PUBLIC - OREGON
COMMISSION NO. 951227
MY COMMISSION EXPIRES JUNE 26, 2020

Page 4 –AFFIDAVIT IN SUPPORT OF MOTION TO SHOW CAUSE WHY DEFENDANT'S PROBATION SHALL NOT BE REVOKED

nlive.com/hillsboro/index.ssf/2016/12/revenge_porn_videos_lead_to_6-.html#incart_river_index

**Ziggy Ratfield**

Is that the same Benjamin Barber who used to be a prolific commenter on O-Live?

3 hours ago

🏳 Flag  ↩ Share

2 👍 Like   Reply

—

**Westuritto**

@Ziggy Ratfield Yeah, and ran for office— he would really fit in with the loonies, huh?

3 hours ago

https://ballotpedia.org/Benjamin_Jay_Barber

🏳 Flag  ↩ Share

2 👍 Like   Reply

**Benjamin_Barber_274**

@Ziggy Ratfield The judge refused to hear motions to acquit, and had evidence stricken, which are valid defenses to the charge, namely that my ex wife herself distributed them online to blackmail me, and that they were produced for a commercial purpose.

The details are in reddit

http://archive.is/McZbs

🏳 Flag  ↩ Share

1 👍 Like   Reply

**RogherNissen**

3 hours ago

1    well being.

2                    And the line of cases that defense

3    counsel points out, RAV and Buss v. Barry, are

4    completely -- I guess, miss the point.  They're off

5    base for a couple of reasons.

6                    So the last thing that I would like to

7    bring up, once we're past the strict scrutiny

8    argument, which, again, the State does not think

9    applies in this case, is the State's position, which

10   is that this is an O'Brien analysis.

11                   O'Brien involves a line of cases where a

12   statute or an ordinance or a civil provision

13   prohibits a certain type of expression, mostly based

14   on the particular type of -- sorry -- content in the

15   expression.

16                   But, in those cases, the statutes were

17   aimed ar proscribing some secondary harm.  The cases

18   that the State mentions in our briefing and a couple

19   of others include Renton, Erie v. Pap's, Ward, Clark

20   v. Community for Creative Nonviolence.

21                   These all involve that exact type of

22   secondary harm that we're trying to prevent with the

23   Unlawful Dissemination statute.  So to get into the

24   O'Brien analysis, I want to start by talking about

25   O'Brien itself.

M. Vance - X                    270

1    know, I'd love to try."  So we got a response the

2    night before I was leaving from the couple.  And

3    it -- it didn't pan out because the time sensitivity.

4    So we had talked about it; it never came to fruition.

5        Q    So to clarify a few points, you were aware

6    these postings were being made?

7        A    I was aware that there was some sort

8    of posting made or some way that the couple could

9    contact us.

10       Q    And you were in agreement with that?

11       A    Yes.

12       Q    Sounded like a good plan?

13       A    I was nervous about it, but I was kind of

14   at the point in my life where, you know what?  I'm

15   going to be very open minded.  And, you know, why not

16   try?  I didn't know what was in the posting.  I don't

17   remember how the contact was made, but there was

18   definitely a couple that had responded.

19       Q    And you, as part of this, did have contact

20   with another side of that couple, right?

21       A    Yeah.  When I had gone back to Ohio, I had

22   talked to the male of that couple.

23       Q    So there was discussions going on in your

24   relationship about having these threesomes,

25   foursomes, what have you?

INVASION OF PERSONAL
PRIVACY

Appendix Page 46.
## Washington County Sheriff's Office
### DISTRICT ATTORNEY RELEASE

CASE NUMBER
**GO 50 2016-161740492**

| NARRATIVE |
|---|

| AUTHOR | DATE/TIME |
|---|---|
| DUENAS, TOM (31390) | 06/25/2016 1030 |

**SUBJECT**
VANCE MEAGAN ALYSSA

```
MENTIONED:
Sgt. Sluman         WCSO
Cpl. Schmid         WCSO
Dep. Williams       WCSO
DDA  Atwood         Washington CO.
```

SUMMARY:
Meagan Vance reported that her ex-husband uploaded videos of her on several
porn web sites. She believes this is "Revenge Porn", or unlawful
dissemination of an intimate image.

NARRATIVE:
On 06-22-16 at approximately 11:25am I was dispatched to an harassment call
at ▮▮▮▮▮▮▮ The caller, Meagan Vance, mentioned
"Revenge Porn" to the call taker and requested a phone call. I was able to
contact Meagan by phone. She told me that her ex-husband, Benjamin Barber,
posted videos of her in several Website.

She found the videos on Redtube, PornTube, TNAFlix, EmpFlix, PornHub,
Porn.com, everysextube.com, and Xhampster.com. The accounts or "handle"
that are associated with uploading the videos are barberb or endomorphsis.
She said that Ben has been using those handles for years. She told me that
he had his own Website but it was taken down earlier this year.

Meagan said that she is a teacher at West Sylvan middle school and that the
videos can impact her career. She believed that he did this, to ruin her
career, because he was angry that she did not help him when he was
homeless. This was Meagan's first year of teaching.

There were four videos were made in 2011. They were married in December
2012. She told me that she left him in October 2013 and they were divorce
in April 2015.

Meagan has received a few FACEBOOK messages and texts from Benjamin since
then. There were no threats on them but on 05-30-16 he send an email about
how he loved her and that he also had "contempt" her and was upset. There
is another email on 06-19-16 where he is just telling her about how lonely
his his.

Meagan said she started to search the Internet, a few weeks ago, as she was
curious. She told me that Benjamin had made a threat in January to ruin her
life. She found videos of her and Benjamin on Xhampster.com. She consulted
an attorney and contacted the site. The videos were taken off. On 06-21-16
and found the videos on another site on 06-21-16. According to Meagan the

**(345218) 0002**

Appendix Page 47.

# Washington County Sheriff's Office
## DISTRICT ATTORNEY RELEASE

videos were uploaded in April and Ben used his handle when he uploaded them.

I then spoke with DDA Atwood since this is a fairly new law. I wanted to make sure that I had an understanding of this law, Unlawful dissemination of an intimate image.

I obtained a DMV photo of Meagan as I didn't know what she looked like. I then got together with Deputy Pat Williams to view the sites. I received permission from Sergeant Sluman to view these sites on my county computer. We were able to down load videos from PornTube. The photo and the woman in the video looked like the same person. We were able to view videos on TNAFlix but could not down load them. They were the same videos that were on PornTube. We were able to screen shot the videos on the sites of Porn.com, everysextube.com, pornhub, and porntv. All the screen shots showed the videos that had Meagan in them. The account for the videos, on Porn.com, was barberb.

On 06-24-16 we tried to set up a phone call between Meagan and Benjamin. Benjamin didn't answer his phone. We tried to text him. Benjamin answered the text to say he wanted to communicate via email but did not answer any of the text questions. We tried to the contact Benjamin over the phone, on 06-25-16, but Benjamin didn't answer the phone.

I confirmed with Meagan that she told Benjamin not to post the videos. She said that they did agree back in 2011 that the videos would not be posted.

I then tried to contact Benjamin at ███████████████████ I find this address in the databases available to me. I was not able to locate him. I also called his phone number three times, leaving messages, to call me back. He has not done so at the time of this report.

The videos and screen shots will be placed into evidence.

ACTION RECOMMENDED:

Cleared Pending- contact with suspect

(345218) 0003

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF WASHINGTON

STATE OF OREGON

Case No. 16CR46339

Plaintiff,

**Memorandum in Support of Motion to Acquit. And Notice of Removal to Federal Court**

vs.

BENJAMIN JAY BARBER

Defendant,

    The Defendant had on November 1st filed in the Federal District court, filing a civil suit against the State of Oregon, alleging that the State of Oregon had violated its 1st amendment rights and its copyrights granted under federal law, and the statue that it had charged the defendant with was completely preempted under federal law. The defendant did request a temporary restraining order, a preliminary injunction, and a stay of the state prosecution, and copies of these complaints have been served to the Oregon State Attorney Generals office, the federal case number for the complaints are 3:2016-CV-0215 and are included along with this motion.  The defendant moves for the court to acquit for a failure of to find a cause of action, because the law under which the defendant is being charged, cannot be applied to the defendant who is the copyright holder. The copyright holder is granted exclusive rights as the copyright holder to "consent to the disclosure" under this statue, the state cannot grant the rights to "consent to the disclosure" to any other person other than the copyright holder, as it is explicitly prohibited from doing so under federal copyright law. 17 U.S.C. § 301 preempts the states from passing laws granting equivalent rights to those granted under copyright, 17 U.S.C. § 201(e) prevents the state from transferring rights granted to copyright to others, 17 U.S.C. § 511 prohibits the state from infringing on his exclusive rights and waives its sovereign immunity from suit. In order to prosecute under this statue, the state must grant or transfer to a non copyright holder, a right of consent to disclosure which does not exist  under copyright.

Dated: November 8, 2016                      /s/

                                                   Benjamin Barber

Motion to Acquit. And Notice of Removal to Federal Court 1

Appendix Page 49
Electronic Copyright Office (eCO)

11/30/2016



Case Summary:

| | | |
|---|---|---|
| **Case #:** 1-4108648971 | **Type of Case:** Work of the Visual Arts | **Opened:** 10/25/2016 |
| **Title:** albino porn | | **Contact Name:** benjamin barber |
| **Fee Due:** 55.00 | **Service Fee Paid:** 55.00 | **Claim Status:** Pending |

## Submit Your Work(s)

To complete your submission, please submit the required copy(ies) of your work. You may (1) upload electronic files if the work meets the requirements; otherwise, you must (2) send the work by mail (do not do both).

(1) Upload your work(s): Please perform the following steps for the case(s) in the table below.
**Step 1:** Click the "Select files to upload" button. Using your computer's browser, select your files for the corresponding work then click the "Start upload" button.
**Step 2:** After uploading all files for this work, click the corresponding "Complete Your Submission" button. Files cannot be uploaded later than 5 days after your first file is received.

**Please note: Files cannot be returned or deleted once uploaded. To avoid delays and/or a later effective date of registration, please verify the following before uploading a copy of your work(s):**

- It is a category of work that may be uploaded
- It is an acceptable file type
- It is an acceptable file size

## Upload Your Work(s)

1 - 1 of 1



| Case Details | Step 1: Select & Upload Files | Step 2: Complete Your Submission |
|---|---|---|
| **Case #:** 1-4108648971<br>**Title:** albino porn<br>**Volume:**<br>**Number:**<br>**Issue Date:**<br>**Type of Work:** Work of the Visual Arts | | Claim submission completed; no further action required<br>Click here for more information<br>View Uploaded File Names |

### Updates

1 - 1 of 1

| Comments | Activity Type | Status | Created |
|---|---|---|---|
| Submitted by BARBERB on 10/25/2016 | Upload Deposit | Received | 10/25/2016 10:50:02 AM |

**(2) Send Your Work(s) by Mail:**

- Click the "Create Shipping Slip" button in the table below; a Shipping Slip link will appear in the Attachments column.

- Click the Shipping Slip link and print out and attach the shipping slip(s) to your deposit copy(ies). For multiple cases, be sure to attach shipping slips to the corresponding copies.

- Mail the deposit copy(ies) within 30 days to the Copyright Office address at the bottom of the slip.Note: Your effective date of registration will be based on the date on which we receive the copies **with corresponding shipping slips attached**.

Click "Home" after uploading files(s) or printing shipping slip(s). You may verify the submission in the open Cases table on your eCO Home page.

## Send Your Work(s) by Mail



No Records

| Attachment Name | File Type | Size | Date and Time | Comments |
|---|---|---|---|---|

Privacy Act Notice: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. § 705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

In the Circuit Court of Oregon for Washington County

| Benjamin Barber | Case no 18CV14984 |
| Jay Leatherwood | |
| vs | Petition for Post Conviction |
| Pat Garrett | Relief ORS 138.510 |

Comes now the above named petitioners, and they petition this Court for post Conviction relief pursuant to ORS 138.510-138.680 and alleges

1

Petitioners are imprisoned in the Washington County Jail, 215 SW adams, Hillsboro, OR 97123 and are unlawfully Confined and restrained of liberty by the above named defendant.

2

Petitioner's imprisonment is by virtue of a judgement and sentence imposed by the washington County circuit Court in the cases as follows

(i) The State of Oregon vs Benjamin Jay Barber Case no 16CR46339 on november 9th 2016

(ii) The State of oregon vs Jay David Leatherwood Case no 16CR50631 on October 26th 2016

The Sentensing judges were:

(i) Judge Roberts

(ii) Judge Erwin

who sentenced the petitioners to a period of

(i) 3 years

(ii) 6 months

*[Left margin vertical text:] PETITIONER FILED A FRIVOLOUS PETITION IN THESE MATTERS IN 17CV44670. THIS COURT ENTERED A FINAL JUDGMENT, ALLOWING THESE ISSUES NOW OR SHOULD APPROPRIATELY BEFORE THIS COURT*

*[Left margin:] Andrew R. Ervin Circuit Court Judge*

*[Left margin:] APR 17 2018*

*[Left margin:] DENIED*

*[Right margin:] FILED OREGON JUDICIAL DEPT WASHINGTON COUNTY 2018 APR 13 AB 8:05*

## CERTIFICATE OF COMPLIANCE WITH ORAP 5.05(2)(d)

Brief Length

I certify that (1) this brief complies with the word-count limitation in ORAP

5.05(2)(b) and (2) that the word count of this brief (as described in ORAP

5.05(2)(a)) is 1,046 words.  Section B of the brief is 80 pages in length.

Type Size

I certify that the size of the type in this brief is not smaller than 14 point font

for both the text of the brief and footnotes as required by ORAP 5.05(4)(f).  As

section B was handwritten/scanned I am unable to certify the type size in Section

B.

## NOTICE OF FILING AND PROOF OF SERVICE

I certify that I directed the original Appellant's Opening Brief to be filed with the Appellate Court Administrator, Appellate Courts Records section, 1163 State Street, Salem, OR 97301.

I further certify that, upon receipt of the confirmation email stating that the document has been accepted by the eFiling system, this Appellant's Opening Brief will be eServed pursuant to ORAP 16.45 (regarding electronic service on registered eFilers) on Elmer M. Dickens, Jr., #980484, attorney for Defendant-Respondent.

DATED January 25, 2019.

Respectfully Submitted,

/s/ Jason Weber
_____
Jason Weber, OSB No. 054109
O'Connor Weber LLC
1500 SW First Avenue, Suite 1090
Portland, OR 97201
(503) 226-0923
jason@oconnorweber.com
Attorney for Plaintiff-Appellant
Benjamin Barber